# EXHIBIT J

**Table of Contents**

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

## SCHEDULE 14A

**Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 (Amendment No. )**

Filed by the Registrant ☑

Filed by a Party other than the Registrant ☐

Check the appropriate box:
☐   Preliminary Proxy Statement
☐   Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))
☑   Definitive Proxy Statement
☐   Definitive Additional Materials
☐   Soliciting Material Pursuant to §240.14a-12

### ARCHER-DANIELS-MIDLAND COMPANY

(Name of Registrant as Specified In Its Charter)

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):
☑   No fee required.
☐   Fee computed on table below per Exchange Act Rules 14a-6(i)(1) and 0-11.

(1)   Title of each class of securities to which transaction applies:

(2)   Aggregate number of securities to which transaction applies:

(3)   Per unit price or other underlying value of transaction computed pursuant to Exchange Act Rule 0-11 (set forth the amount on which the filing fee is calculated and state how it was determined):

(4)   Proposed maximum aggregate value of transaction:

(5)   Total fee paid:

☐   Fee paid previously with preliminary materials.
☐   Check box if any part of the fee is offset as provided by Exchange Act Rule 0-11(a)(2) and identify the filing for which the offsetting fee was paid previously. Identify the previous filing by registration statement number, or the Form or Schedule and the date of its filing.

(1)   Amount Previously Paid:

(2)   Form, Schedule or Registration Statement No.:

(3)   Filing Party:

(4)   Date Filed:

Table of Contents

# Executive Stock Ownership

## Executive Officer Stock Ownership

The following table shows the number of shares of our common stock beneficially owned as of March 16, 2020, directly or indirectly, by each of the named executive officers.

| Executive | Common Stock Beneficially Owned(1) | Options Exercisable Within 60 Days | Percent of Class |
|---|---|---|---|
| J. R. LUCIANO | 2,777,280(2) | 1,766,494 | * |
| R. G. YOUNG | 1,312,542(3) | 912,636 | * |
| V. F. MACCIOCCHI | 226,920 | 74,488 | * |
| G. A. MORRIS | 315,246(4) | 130,299 | * |
| J. D. TAETS | 540,601(5) | 319,113 | * |

* Less than 1% of outstanding shares

(1) Includes for each director the following:

| | Unvested RSUs | RSUs that vest within 60 days |
|---|---|---|
| J. R. Luciano | 490,092 | 0 |
| R. G. Young | 171,913 | 0 |
| V. F. Macciocchi | 114,716 | 0 |
| G. A. Morris | 117,257 | 0 |
| J. D. Taets | 113,179 | 0 |

(2) Includes 440,574 shares held in trust, 238 shares held by a family-owned limited liability company, and stock options exercisable within 60 days.

(3) Includes 4,298 shares held in our Dividend Reinvestment Plan and stock options exercisable within 60 days.

(4) Includes 617 shares held in the 401(k) and ESOP and stock options exercisable within 60 days.

(5) Includes 934 shares held in the 401(k) and ESOP and stock options exercisable within 60 days.

Common stock beneficially owned as of March 16, 2020, by all directors, director nominees, and executive officers as a group, numbering 19 persons including those listed above, is 7,121,648 shares representing 1.27% of the outstanding shares, of which 293,037 shares represent stock units allocated under our Stock Unit Plan for Nonemployee Directors, 5,055 shares are held in the 401(k) and ESOP, 4,298 shares are held in our Dividend Reinvestment Plan, 4,124,510 shares are unissued but are subject to stock options exercisable within 60 days, and no shares are subject to pledge.

Table of Contents

**Perquisites.** Consistent with our pay-for-performance philosophy, we limit executive perquisites. Any NEO who receives a perquisite is individually responsible for any associated taxes.

The Compensation/Succession Committee allows our Chairman and CEO to have access to company aircraft for personal use for security and efficiency reasons. See the notes to the Summary Compensation Table for a description of other perquisites provided to the NEOs.

# Compensation Policies and Governance

## EXECUTIVE STOCK OWNERSHIP

The Board of Directors believes it is important for each member of senior management to maintain a significant ownership position in shares of ADM's common stock to further align their interests with the interests of our stockholders. Accordingly, we require each member of senior management to own shares of common stock with a fair market value ranging from one to six times the individual's base salary. Executives may not sell any company securities until the applicable guideline is met. As shown below, each of our NEOs exceeds the applicable ownership guideline by a comfortable margin.

| Executive | Ownership Guideline as a Multiple of Salary | Actual Ownership as of March 16, 2020 |
|---|---|---|
| J. R. Luciano | 6.0x | 23.6x |
| R. G. Young | 3.0x | 15.4x |
| V. F. Macciocchi | 3.0x | 7.4x |
| G. A. Morris | 3.0x | 9.0x |
| J. D. Taets | 3.0x | 10.3x |

## TIMING OF GRANTS

The Compensation/Succession Committee approves all equity awards to NEOs at a meeting during the first quarter of each fiscal year, and awards are issued promptly thereafter. There is no attempt to time these grants in relation to the release of material, non-public information. Under the 2009 Incentive Compensation Plan, fair market value is the closing market price of ADM's common stock on the last trading day prior to the date of grant. In addition to annual awards, NEOs may receive awards when they join the company or change their job status, including promotions.

## CLAWBACK PROVISIONS

We include clawback provisions in the company's long-term incentive award agreements that provide us with the ability to recover this compensation for a broad range of reasons. Specifically, this policy provides for the recoupment of any cash or equity incentive awards made to NEOs and certain other members of senior management for a period of three years from the vesting date in the event of a financial restatement or ethical misconduct. In 2015 and in 2017, we added language to our equity awards to incorporate post-vesting non-competition and non-solicitation restrictions. Any violation of these provisions could be cause for the company to initiate a clawback

proceeding. Our aggressive approach to recoupment of long-term incentive compensation reflects the company's commitment to protecting stockholder value.

## PROHIBITION ON INSIDER TRADING AND HEDGING

Pursuant to ADM's Insider Trading Policy, employees and directors may not engage in short selling, speculative trading, or hedging transactions involving the company's stock, including writing or trading in options, warrants, puts and calls, prepaid variable forward contracts, or equity swaps or collars; or enter into other transactions that are designed to hedge or offset decreases in the price of the company's securities. In addition, employees and directors are required to review any pledge of company securities with ADM's General Counsel before committing to a pledge transaction.

Our Insider Trading Policy also provides that all transactions in ADM securities by directors, NEOs, and certain other officers and employees must be pre-cleared by the law department.

## SECTION 162(M) OF THE INTERNAL REVENUE CODE EFFECTS ON THE COMPANY

Section 162(m) of the Internal Revenue Code precludes the company from taking a federal income tax deduction for compensation paid in

**Table of Contents**

# Submission of Stockholder Proposals and Other Matters

## Deadline for Submission of Stockholder Proposals

Proposals of stockholders, including nominations for director, intended to be presented at the next annual meeting and desired to be included in our proxy statement for that meeting must be received by the company's Secretary, addressed to ADM, Attn: Secretary, 77 West Wacker Drive, Suite 4600, Chicago, Illinois 60601, no later than November 25, 2020, and, in the case of nominations for director, no earlier than October 26, 2020, in order to be included in such proxy statement. These proposals and nominations must also meet all the relevant requirements of our bylaws in order to be included in our proxy statement. Generally, if written notice of any stockholder proposal intended to be presented at the next annual meeting, and not included in our proxy statement for that meeting, is not delivered to the Secretary at the above address between February 6, 2021 and March 8, 2021 (or, if the next annual meeting is called for a date that is not within the period from April 7, 2021 to June 6, 2021, if such notice is not so delivered by the close of business on the tenth day following the earlier of the date on which notice of the date of such annual meeting is mailed or public disclosure of the date of such annual meeting is made), or if such notice does not contain the information required by Section 1.4(c) of our bylaws, the chair of the annual meeting may declare that such stockholder proposal be disregarded.

### STOCKHOLDERS WITH THE SAME ADDRESS

Individual stockholders sharing an address with one or more other stockholders may elect to "household" the mailing of the proxy statement and our annual report. This means that only one annual report and proxy statement will be sent to that address unless one or more stockholders at that address specifically elect to receive separate mailings. Stockholders who participate in householding will continue to receive separate proxy cards. Also, householding will not affect dividend check mailings. We will promptly send a separate annual report and proxy statement to a stockholder at a shared address on request. Stockholders with a shared address may also request us to send separate annual reports and proxy statements in the future, or to send a single copy in the future if we are currently sending multiple copies to the same address.

Requests related to householding should be made in writing and addressed to Investor Relations, ADM, 4666 Faries Parkway, Decatur, Illinois 62526-5666, or by calling our Investor Relations at 217-424-5656. If you are a stockholder whose shares are held by a bank, broker, or other nominee, you can request information about householding from your bank, broker, or other nominee.

### OTHER MATTERS

It is not contemplated or expected that any business other than that pertaining to the subjects referred to in this proxy statement will be brought up for action at the meeting, but in the event that other business does properly come before the meeting calling for a stockholders' vote, the named proxies will vote thereon according to their best judgment in the interest of our company.

By Order of the Board of Directors

ARCHER-DANIELS-MIDLAND COMPANY

D. C. Findlay, Secretary

March 25, 2020