# EXHIBIT N

**Table of Contents**

## UNITED STATES SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

# SCHEDULE 14A

**Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934 (Amendment No.      )**

Filed by the Registrant ☑

Filed by a Party other than the Registrant ☐

Check the appropriate box:

☐ Preliminary Proxy Statement
☐ Confidential, for Use of the Commission Only (as permitted by Rule 14a-6(e)(2))
☑ Definitive Proxy Statement
☐ Definitive Additional Materials
☐ Soliciting Material Pursuant to §240.14a-12

## ARCHER-DANIELS-MIDLAND COMPANY

(Name of Registrant as Specified In Its Charter)

(Name of Person(s) Filing Proxy Statement, if other than the Registrant)

Payment of Filing Fee (Check the appropriate box):

☑ No fee required.
☐ Fee paid previously with preliminary materials.
☐ Fee computed on table in exhibit required by Item 25(b) per Exchange Act Rules 14a-6(i)(1) and 0-11.

**Table of Contents**

 **COMPENSATION DISCUSSION AND ANALYSIS** - Compensation Policies and Governance

# Compensation Policies and Governance

## EXECUTIVE STOCK OWNERSHIP

The Board of Directors believes it is important for each member of senior management to maintain a significant ownership position in shares of ADM's common stock to further align their interests with the interests of our stockholders. Accordingly, we require each member of senior management to own shares of common stock with a value at least equal to a specified multiple of his or her annual base salary. Shares that count toward the ownership levels include shares owned outright, shares owned by immediate family members or a related trust if previously owned by the executive, shares held through the 401(k) plan, and unvested time-based RSUs. Stock options, whether exercisable or not, and unvested PSUs do not count toward determining whether the ownership level is met. Executives may not sell any Company securities until the applicable guideline is met. As shown below, each of our NEOs who is a current employee exceeds the applicable ownership guideline by a significant margin.

| Executive | Ownership Guideline as a Multiple of Salary | Actual Ownership as of April 4, 2024 |
|---|---|---|
| J. R. Luciano | 10.0x | 74.4x |
| V. Luthar | 4.0x | 11.0x |
| R. B. Jones | 4.0x | 6.1x |
| G. A. Morris | 4.0x | 25.9x |
| C. M. Cuddy | 4.0x | 28.5x |

## TIMING OF GRANTS

The Compensation and Succession Committee approves all annual equity awards to NEOs at a meeting during the first quarter of each fiscal year, and awards are issued promptly thereafter. There is no attempt to time these grants in relation to the release of material, non-public information. In addition to annual awards, NEOs may receive awards when they join the Company or change their job status, including promotions.

## CLAWBACK POLICY AND PROVISIONS

In 2023, our Board of Directors adopted a new Compensation Recovery Policy (the "Clawback Policy") in accordance with the listing standards of the New York Stock Exchange. The Clawback Policy applies to all incentive-based compensation, which is any compensation that is granted, earned, or vested based wholly or in part upon the attainment of a financial reporting measure, received by our covered current and former executive officers, including our NEOs, during the applicable lookback period beginning October 2, 2023.

The Clawback Policy applies in the case of an accounting restatement due to the material noncompliance of the Company with any financial reporting requirement under the securities laws, including any required accounting restatement to correct an error in previously issued financial statements that is material to the previously issued financial statements, or that would result in a material misstatement if the error were corrected in the current period or left uncorrected in the current period. The Clawback Policy provides that promptly following such an accounting restatement, the Compensation and Succession Committee will determine the amount of the erroneously awarded compensation, which is the excess of the amount of incentive-based compensation received by current and former executive officers during the three completed fiscal years immediately preceding the required restatement date over the amount of incentive-based compensation that otherwise would have been received had it been determined based on the restated amounts. The Company will provide each such executive officer with a written notice of such amount and a demand for repayment or return. If such repayment or return is not made within a reasonable time, the Clawback Policy provides that the Company will recover the erroneously awarded compensation in a reasonable and prompt manner using any lawful method, subject to limited exceptions as permitted by New York Stock Exchange listing standards.

We also include forfeiture and clawback provisions in the Company's long-term incentive award agreements that provide us with the ability to recover this compensation for a broad range of reasons. Specifically, the agreements provide for the recoupment or forfeiture of equity incentive awards made to NEOs and certain other members of senior management if the individual is terminated for cause (which includes engaging in a broad range of prohibited conduct), and, beginning with awards granted in 2024, if the individual engages in any such prohibited conduct, even if his or her employment is not terminated. In addition, our equity award agreements incorporate non-competition, non-solicitation and confidentiality restrictions. Any violation of these provisions could be cause for the awards to be forfeited or the Company to initiate a clawback proceeding post-vesting. Our approach to recoupment of long-term incentive compensation reflects the Company's commitment to protecting stockholder value.

Table of Contents

# Executive Stock Ownership

## Executive Officer Stock Ownership

The following table shows the number of shares of our common stock beneficially owned as of April 4, 2024, directly or indirectly, by each of the named executive officers.

| Executive | Common Stock Beneficially Owned[1] | Options Exercisable Within 60 Days | Percent of Class |
|---|---|---|---|
| J. R. LUCIANO | 2,398,947[2] | 905,920 | * |
| V. LUTHAR | 141,459[3] | 28,366 | * |
| R. B. JONES | - | - | * |
| G. A. MORRIS | 253,021[4] | - | * |
| C. M. CUDDY | 268,329[5] | - | * |
| V. F. MACCIOCCHI | 255,598 | - | * |

\* Less than 1% of outstanding shares

(1) Includes for each named executive officer stock options exercisable within 60 days. Does not include the following number of unvested RSUs since none of these RSUs vest within 60 days:

| | Unvested RSUs |
|---|---|
| J. R. Luciano | 265,210 |
| V. Luthar | 22,214 |
| R. B. Jones | 70,308 |
| G. A. Morris | 49,015 |
| C. M. Cuddy | 47,364 |
| V. F. Macciocchi | 27,164 |

(2) Includes 1,310,288 shares held in trust and 238 shares held by a family-owned limited liability company.

(3) Includes 40,336 shares held in trust and 2,008 shares held in the 401(k) and ESOP.

(4) Includes 679 shares held in the 401(k) and ESOP.

(5) Includes 2,345 shares held in the 401(k) and ESOP.

Common stock beneficially owned as of April 4, 2024, by all directors, director nominees, and current executive officers (as of April 4, 2024) as a group, numbering 19 persons, is 3,473,635 shares representing 0.7% of the outstanding shares, of which 273,333 shares represent stock units allocated under our Stock Unit Plan for Nonemployee Directors, 5,965 shares are held in the 401(k) and ESOP, 934,286 shares are unissued but are subject to stock options exercisable within 60 days, and no shares are subject to pledge.

Table of Contents

 **ADM**    **SUBMISSION OF STOCKHOLDER PROPOSALS AND OTHER MATTERS** - Principal Holders of Voting Securities

## Principal Holders of Voting Securities

Based upon filings with the SEC, we believe that the following stockholders are beneficial owners of more than 5% of our outstanding common stock shares:

| Name and Address of Beneficial Owner | Amount | Percent of Class |
|---|---|---|
| The Vanguard Group<br>100 Vanguard Blvd., Malvern, PA 19355 | 60,505,871(1) | 12.06 |
| BlackRock, Inc.<br>50 Hudson Yards, New York, NY 10001 | 45,312,186(2) | 9.03 |
| State Farm Mutual Automobile Insurance Company and related entities<br>One State Farm Plaza, Bloomington, IL 61710 | 34,018,681(3) | 6.78 |
| State Street Corporation<br>One Congress Street, Suite 1, Boston, MA 02114 | 30,944,674(4) | 6.17 |

(1)   Based on a Schedule 13G/A filed with the SEC on February 13, 2024, The Vanguard Group has sole dispositive power with respect to 58,183,949 shares, shared voting power with respect to 708,988 shares, and shared dispositive power with respect to 2,312,922 shares.

(2)   Based on a Schedule 13G/A filed with the SEC on January 25, 2024, BlackRock, Inc. has sole voting power with respect to 40,654,339 shares and sole dispositive power with respect to 45,312,186 shares.

(3)   Based on a Schedule 13G/A filed with the SEC on February 12, 2024, State Farm Mutual Automobile Insurance Company and related entities have sole voting and dispositive power with respect to 33,884,596 shares and shared voting and dispositive power with respect to 134,085 shares.

(4)   Based on a Schedule 13G/A filed with the SEC on January 25, 2024, State Street Corporation has shared voting power with respect to 21,742,455 shares and shared dispositive power with respect to 30,911,722 shares.

## Other Matters

It is not contemplated or expected that any business other than that pertaining to the subjects referred to in this proxy statement will be brought up for action at the meeting, but in the event that other business does properly come before the meeting calling for a stockholders' vote, the named proxies will vote thereon according to their best judgment in the interest of our Company.

By Order of the Board of Directors

ARCHER-DANIELS-MIDLAND COMPANY

Regina B. Jones, Corporate Secretary

April 10, 2024