**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RAYMOND CHOW, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> ARCHER-DANIELS-MIDLAND COMPANY, et al., <br><br> Defendants. | Case No. 1:24-cv-00634 <br><br> District Judge Thomas M. Durkin |

**DEFENDANT RAY YOUNG'S MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS ................................................................................................. 2

ARGUMENT ...................................................................................................................... 3

I.     Plaintiffs Have Failed to State a Claim Under Rule 10b-5. ................................. 3

        A.     Plaintiffs Fail to Properly Plead Actionable Misstatements .................... 4

              1.     Executing certifications is insufficient to allege securities fraud......................................................................................... 4

              2.     Optimistic statements during analyst calls are not actionable. .................................................................................. 5

        B.     Plaintiffs Fail to Properly Plead Scienter................................................. 6

              1.     An executive's role in a company does not establish scienter...................................................................................... 7

              2.     Alleged violations of GAAP are insufficient to allege scienter...................................................................................... 8

               3.     An executive's incentive compensation and stock sales do not support a finding of scienter. ................................................ 9

              4.     The existence of regulatory investigations and conduct *after* the putative class period cannot support an inference of scienter. ................................................................................. 10

II.    Plaintiffs Have Failed to State a Claim Under Section 20(a) of the Exchange Act.............................................................................................. 11

III.   Plaintiffs Have Failed to State a Claim Under Section 20A of the Exchange Act.............................................................................................. 11

CONCLUSION.................................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*AnchorBank, FSB v. Hofer*,
  649 F.3d 610 (7th Cir. 2011) ..............................................................................................3

*Arbitrage Event-Driven Fund v. Trib. Media Co.*,
  No. 18 C 6175, 2020 WL 60186 (N.D. Ill. Jan. 6, 2020), *aff'd sub nom. Water
  Island Event-Driven Fund, LLC v. Trib. Media Co.*, 39 F.4th 402 (7th Cir.
  2022).....................................................................................................................................11

*Chu v. Sabratek Corp.*,
  100 F. Supp. 2d 827 (N.D. Ill. 2000) ...................................................................................8

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*,
  388 F. Supp. 2d 932 (S.D. Ind. 2005) .................................................................................10

*City of Livonia Employees' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*,
  711 F.3d 754 (7th Cir. 2013) ................................................................................................4

*Cornielsen v. Infinium Cap. Holdings, LLC*,
  168 F. Supp. 3d 1033 (N.D. Ill. 2016) .................................................................................3

*Cornielsen v. Infinium Cap. Mgmt., LLC*,
  916 F.3d 589 (7th Cir. 2019) .............................................................................................6, 7

*Davis v. SPSS, Inc.*,
  385 F. Supp. 2d 697 (N.D. Ill. 2005) ...................................................................................9

*Desai v. Gen. Growth Properties., Inc.*,
  654 F. Supp. 2d 836 (N.D. Ill. 2009) ...................................................................................6

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ................................................................................................7

*E. Ohman J:or Fonder AB v. NVIDIA Corp.*,
  81 F.4th 918 (9th Cir. 2023), *cert. granted*, No. 23-970, 2024 WL 3014476
  (U.S. June 17, 2024)..............................................................................................................3

*Friedman v. Rayovac Corp.*,
  295 F. Supp. 2d 957 (W.D. Wis. 2003)..................................................................................7

*Garden City Employees' Ret. Sys. v. Anixter Int'l, Inc.*,
  No. 09-CV-5641, 2011 WL 1303387 (N.D. Ill. Mar. 31, 2011) ............................................4

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) ........................................................................................4, 6, 7

*In re Allscripts, Inc. Sec. Litig.*,
No. 00 C 6796, 2001 WL 743411 (N.D. Ill. June 29, 2001) .................................................2, 11

*In re Bally Total Fitness Sec. Litig.*,
No. 04 C 3530, 2006 WL 3714708 (N.D. Ill. July 12, 2006)...............................................7, 8, 9

*In re Bally Total Fitness Sec. Litig.*,
No. 04 C 3530, 2007 WL 551574 (N.D. Ill. Feb. 20, 2007)....................................................... 10

*In re Newell Rubbermaid Inc. Sec. Litig.*,
No. 99 C 6853, 2000 WL 1705279 (N.D. Ill. Nov. 14, 2000)...................................................... 5

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y. 2007)........................................................................................ 12

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
513 F.3d 702 (7th Cir. 2008) ...................................................................................................... 6

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
No. 02 C 4356, 2008 WL 2178150 (N.D. Ill. May 22, 2008) .............................................11, 12

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000) ....................................................................................................... 9

*Pension Tr. Fund for Operating Eng'rs. v. Kohl's Corp.*,
266 F. Supp. 3d 1154 (E.D. Wis. 2017), *aff'd*, 895 F.3d 933 (7th Cir. 2018)............................4

*Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
679 F.3d 952 (7th Cir. 2012) ...................................................................................................... 9

*Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v.*
*Allscripts-Misys Healthcare Sols., Inc. et al.*,
778 F. Supp. 2d 858 (N.D. Ill. 2011) ...................................................................................... 7, 8

*Pugh v. Trib. Co.*,
521 F.3d 686 (7th Cir. 2008) ...............................................................................................6, 9, 11

*Roth v. OfficeMax, Inc.*,
527 F. Supp. 2d 791 (N.D. Ill. 2007) ......................................................................................... 4

*S.E.C. v. Steffes*,
805 F. Supp. 2d 601 (N.D. Ill. 2011) ....................................................................................... 12

*Searls v. Glasser*,
    64 F.3d 1061 (7th Cir. 1995) ................................................................................................ 5

*Shah v. Zimmer Biomet Holdings, Inc.*,
    348 F. Supp. 3d 821 (N.D. Ind. 2018) ............................................................................... 12

*Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*,
    No. 17 CV 1713, 2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) ................................................. 8

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*,
    552 U.S. 148 (2008) ............................................................................................................ 3

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ......................................................................................................6, 10

*Van Noppen v. InnerWorkings, Inc.*,
    136 F. Supp. 3d 922 (N.D. Ill. 2015) ...............................................................................4, 5

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
    495 F. Supp. 3d 622 (N.D. Ill. 2020), *aff'd sub nom. Nat'l. Elevator Indus.*
    *Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th
    Cir. May 9, 2022) ............................................................................................................... 5

**STATUTES**

15 U.S.C. § 78t-1(a) ................................................................................................................. 11

15 U.S.C. § 78u-4 .................................................................................................................... 3

15 U.S.C. § 78u-4(b)(2)(A) ..................................................................................................3, 6

Private Securities Litigation Reform Act .......................................................................... 3, 4, 6, 7

Securities Exchange Act of 1934 ...................................................................................... 1, 3, 11, 12

**RULES**

Fed. R. Civ. P. 9(b) ................................................................................................................. 3

Fed. R. Civ. P. 12(b)(6) ........................................................................................................... 3

**INTRODUCTION**

As discussed in greater detail in Archer-Daniels-Midland Company's ("ADM" or "the Company") and Juan Luciano's Motion to Dismiss (ECF No. 79) and Memorandum of Law in Support of ADM's and Juan Luciano's Motion to Dismiss ("Supporting Memorandum") (ECF No. 80), Plaintiffs' strained attempt to recast adjustments to intersegment sales as securities fraud fails to state a claim. Plaintiffs admit, as they must, that no restatement of ADM's consolidated financials occurred. As the Company determined, the adjustments were "not material to the Company's consolidated financial statements taken as a whole for any period," (Compl. ¶ 249) and thus provide no colorable support for any claim of securities fraud.[1] Moreover, Plaintiffs fail to assert facts showing that any Defendant knew or had reason to know that any of the alleged misstatements were false at the time they were made, and the vast majority of the alleged misstatements are not actionable anyway.

As to Ray Young, ADM's now-retired former Chief Financial Officer ("CFO") who left the Company more than a year before the end of the putative class period, Plaintiffs' claims fail for the additional reason that Plaintiffs fail to allege any actionable purported misstatements or allege scienter with regard to *any* of Mr. Young's alleged misstatements. Courts regularly reject the sufficiency of scienter allegations based on the theories proffered by Plaintiffs here.

As to "control person" liability, Plaintiffs fail to plead a primary violation of securities laws by the allegedly controlled entity, ADM. With regard to the insider trading claim, the Complaint also fails to properly plead an underlying violation of the Securities Exchange Act of 1934 ("Exchange Act") for trading securities while in possession of material nonpublic information. The claims brought against Mr. Young should be dismissed with prejudice for failure to state a claim.

---

[1] The "Complaint" refers to the Lead Plaintiffs' Complaint for Violations of the Federal Securities Laws, ECF No. 67.

**STATEMENT OF FACTS**

ADM trades agricultural commodities, including corn, wheat, soybeans, and other oilseeds and is engaged in food processing. Compl. ¶¶ 4, 34. ADM has three reportable business segments: (1) Ag Services and Oilseeds ("AS&O"), (2) Carbohydrate Solutions ("Carb Solutions"), and (3) Nutrition. *Id.* ¶ 47. The three business segments engage in intersegment transactions. *Id.* ¶ 9.

Mr. Young was the CFO of ADM for a limited portion of the time in which Plaintiffs allege securities violations. Compl. ¶¶ 1, 29. Specifically, Mr. Young was CFO from before the start of the putative class period, April 30, 2020, until April 2022. *Id.* After April 2022, Mr. Young was Vice Chairman of ADM until his retirement in December 2022. *Id.*

On January 21, 2024, ADM disclosed in a press release that its then-CFO and Senior Vice President, Vikram Luthar, was placed on administrative leave "pending an ongoing investigation being conducted by outside counsel for ADM and the Board's Audit Committee regarding certain accounting practices and procedures with respect to ADM's Nutrition reporting segment, including as related to certain intersegment transactions." *Id.* ¶ 179. The press release further stated that ADM's investigation was initiated in response to inquiries from regulators. *Id.*

In ADM's 2023 Form 10-K, filed on March 12, 2024, ADM disclosed that the Company had determined that certain intersegment sales between Nutrition and other segments had not been recorded at amounts approximating market, as stated in previous filings, for the years ended December 31, 2021 through 2023. *Id.* ¶¶ 188-89; *See* Ex. A, selected portion of ADM's 2023 Form 10-K ("2023 10-K") at 8, 34-35, 107.[2] Importantly, ADM's correction of "certain segment-specific historical financial information" did not impact ADM's consolidated financials. *See* 2023 10-K at 34-36, 107-08.

In Count I, Plaintiffs allege violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. In Count II, Plaintiffs allege "control person" liability under

---

[2] Courts may take judicial notice of documents filed with the U.S. Securities and Exchange Commission ("SEC"). *In re Allscripts, Inc. Sec. Litig.*, No. 00 C 6796, 2001 WL 743411, at *2 n.2 (N.D. Ill. June 29, 2001).

Section 20(a) of the Exchange Act. In Count III, Plaintiffs allege violations of Section 20A of the Exchange Act.

## ARGUMENT

Plaintiffs' Complaint fails to meet the pleading standards of Federal Rules of Civil Procedure 12(b)(6) and 9(b), and those of the Private Securities Litigation Reform Act ("the PSLRA"), 15 U.S.C. § 78u-4.[3] In particular, a party alleging fraud must plead with particularity the "'who, what, when, where, and how' of the fraud." *Cornielsen v. Infinium Cap. Holdings, LLC*, 168 F. Supp. 3d 1033, 1040 (N.D. Ill. 2016) (citing *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)). Plaintiffs have not done so here. Even if Plaintiffs had satisfied the required pleading standard (and they have not), Plaintiffs fail to state a claim with regard to any of the causes of action against Mr. Young as a matter of law.[4]

## I.  PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER RULE 10b-5.

To state a claim under Rule 10b-5, a plaintiff must allege that: (1) the defendant made a misstatement or omission of material fact; (2) with scienter, or fraudulent intent; (3) in connection with the purchase or sale of securities; (4) on which the plaintiff justifiably relied; (5) causing the plaintiff economic loss; and (6) loss causation. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008). In 1995, Congress enacted the PSLRA, which imposes exacting pleading requirements, including that plaintiffs "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). Plaintiffs have not alleged and cannot allege sufficient facts to sustain a claim of securities fraud against Mr. Young.

---

[3] The U.S. Supreme Court recently granted *certiorari* in a case addressing the pleading standards under the PSLRA, which may impact this case. *See E. Ohman J:or Fonder AB v. NVIDIA Corp.*, 81 F.4th 918 (9th Cir. 2023), *cert. granted*, No. 23-970, 2024 WL 3014476 (U.S. June 17, 2024).

[4] Mr. Young joins in the arguments made in ADM's and Juan Luciano's Motion to Dismiss and Supporting Memorandum and incorporates them by reference herein. The arguments set forth herein apply separately and/or with additional weight to Mr. Young, and thus are addressed in further detail herein.

### A.      Plaintiffs Fail to Properly Plead Actionable Misstatements

Under Section 4(b)(1) of the PSLRA, a complaint asserting securities fraud must specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading. It is insufficient to merely plead fraud by hindsight. *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759-60 (7th Cir. 2007); *City of Livonia Employees' Ret. Sys. & Loc. 295/Loc. 851 v. Boeing Co.*, 711 F.3d 754, 758 (7th Cir. 2013). The facts must show that the statements allegedly made by the defendants were false when made and not simply incorrect in retrospect. *Van Noppen v. InnerWorkings, Inc.*, 136 F. Supp. 3d 922, 933 (N.D. Ill. 2015) (citing *Higginbotham*, 495 F.3d at 759-60; *Garden City Employees' Ret. Sys. v. Anixter Int'l, Inc.*, No. 09-CV-5641, 2011 WL 1303387, at *20 (N.D. Ill. Mar. 31, 2011)). Here, none of the alleged misstatements which Plaintiffs attempt to tie to Mr. Young are actionable.

### 1.      Executing certifications is insufficient to allege securities fraud.

A certification alone does not give rise to securities fraud unless the executive defendant actually knew or should have known at the time the certifications were executed that they were false. *Pension Tr. Fund for Operating Eng'rs. v. Kohl's Corp.*, 266 F. Supp. 3d 1154, 1166 (E.D. Wis. 2017), *aff'd*, 895 F.3d 933 (7th Cir. 2018). In *Roth*, the court dismissed a complaint alleging securities fraud against a company and its current and former executives that was largely based on similar signed certifications. *Roth v. OfficeMax, Inc.*, 527 F. Supp. 2d 791, 795-96, 803-05 (N.D. Ill. 2007). In short, the court found that a "[Defendant's] signature on the SEC filings and Sarbanes Oxley certifications stating he had personally evaluated and certified the effectiveness of the Company's disclosure controls and procedures does not suffice to allege scienter [...]." *Id.* at 805. Instead, there must be particularized allegations that a defendant "was aware of the material weaknesses in its internal controls over financial reporting at the time he signed those statements or that such weaknesses were obvious." *Id.*

Here, as in *Roth*, Plaintiffs merely allege that Mr. Young executed certifications. Because Plaintiffs do not (and cannot) allege specific facts that raise a plausible inference that Mr. Young

knew or had reason to know of any misstatements in the certifications at the time the certifications were executed, the Court should dismiss the claims against him.

### 2. Optimistic statements during analyst calls are not actionable.

While Plaintiffs purport to allege other misstatements attributed to Mr. Young during analyst calls, none of them give rise to a viable claim against him. In particular, Mr. Young's alleged statements that the Nutrition business has "grown," is a "significant contributor," has "very predictable, robust earnings," and that there was "organic growth" (Compl. ¶ 130) are inactionable puffery because these "loosely optimistic statements that are so vague, so lacking in specificity, or so clearly constituting the opinions of the speaker, that no reasonable investor could find them important to the total mix of information available." *Van Noppen*, 136 F. Supp. 3d at 940 (collecting cases); *In re Newell Rubbermaid Inc. Sec. Litig.*, No. 99 C 6853, 2000 WL 1705279, at *7 (N.D. Ill. Nov. 14, 2000) ("Some of the statements that plaintiffs allege were misleading are too vague to be actionable; they are, in the words of the Seventh Circuit, mere 'puffery,' lacking 'the requisite specificity to be considered anything but optimistic rhetoric.'") (quoting *Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir. 1995)). As discussed in more detail in ADM's and Juan Luciano's separately filed Motion to Dismiss and Supporting Memorandum, Plaintiffs also generally fail to allege facts that demonstrate they were untrue. Supporting Memorandum at 24-28.

This same reasoning applies to Mr. Young's statements during ADM's "Global Investor Day" (Compl. ¶¶ 141(a), 141(d)) that Nutrition has grown through "organic growth," is "growing," and has "a very stable earnings base." In fact, these statements are plainly "'indefinite predictions of 'growth' [and] are better described as puffery rather than as material statements of fact.'" *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 651 (N.D. Ill. 2020), *aff'd sub nom. Nat'l. Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th Cir. May 9, 2022) (quoting *Searls*, 64 F.3d at 1066).

### B.       Plaintiffs Fail to Properly Plead Scienter

Plaintiffs also fail to allege that Mr. Young made any alleged false statements or omissions with scienter. Under the PSLRA, Plaintiffs are required to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "The required state of mind" in the Rule 10b-5 context "is an intent to deceive, demonstrated by knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Higginbotham*, 495 F.3d at 756.

A court must dismiss the complaint unless "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007) ("*Tellabs I*"). The court must weigh the strength of the inferences pled in the complaint as compared to plausible non-culpable explanations for defendants' conduct. *Id.* Plaintiffs "must create a strong inference of scienter with respect to each individual defendant." *Pugh v. Trib. Co.*, 521 F.3d 686, 693-94 (7th Cir. 2008) (citing *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 513 F.3d 702, 710 (7th Cir. 2008) ("*Tellabs II*")). Moreover, in the Seventh Circuit, Plaintiffs cannot invoke "group pleading" because it fails to satisfy "the PSLRA's clear statutory prerequisites 'that the untrue statements or omissions be set forth with particularity as to 'the defendant' and that scienter be pleaded with regard to 'each fact or omission' sufficient to give 'rise to a strong inference that the defendant acted with the required state of mind.'" *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 600 (7th Cir. 2019) (citations omitted). Plaintiffs' repeated insertion of the phrase "strong inference" throughout the Complaint cannot mask deficient allegations of scienter as to Mr. Young. *See* Compl. ¶¶ 268-309.[5] The court should not and cannot presume scienter. *Desai v. Gen. Growth Properties., Inc.*, 654 F. Supp. 2d 836, 860 (N.D. Ill. 2009).

---

[5] A "strong inference" is one that is "powerful or cogent," so the use of "strong inference," as Plaintiffs do, does not make it so. *Tellabs I*, 551 U.S. at 310.

### 1.    An executive's role in a company does not establish scienter.

Plaintiffs allege by virtue of Mr. Young's role as CFO of ADM until early 2022 that he, along with Juan Luciano, Vikram Luthar, and Vincent Macciocchi (collectively, "Individual Defendants"), "[c]ontrolled the Company's [m]essaging to the [i]nvesting [p]ublic" through SEC filings and public statements. Compl. ¶¶ 255-58. Plaintiffs allege that Mr. Young and the other Individual Defendants were "privy to confidential and proprietary information concerning ADM's Nutrition segment and intersegment sales," "had access to . . . internal corporate documents, and conversations with corporate officers and employees," "attended management and Board meetings and committees," and "reviewed reports and other information provided to them in connection therewith." *Id.* ¶ 257. But summarily pointing to "possession" (*id.*) of information is not enough to infer scienter. *See Higginbotham*, 495 F.3d at 758 (holding that access to corporate materials does not establish scienter because "there is a big difference between knowing about the reports . . . and knowing that the reports are false" and a "complaint [that] documents the former but not the latter" fails). Indeed, the Seventh Circuit has made it clear that "a complaint fails to satisfy the PSLRA's particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information." *Cornielsen*, 916 F.3d at 602.

Further, courts regularly hold that this "must have known" approach fails to establish scienter. *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2006 WL 3714708, at *9 (N.D. Ill. July 12, 2006) ("*Bally I*"); *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990); *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 995 (W.D. Wis. 2003). It is not enough for Plaintiffs to allege that because of Mr. Young's role as CFO, he is "presumed to know facts critical to a company's core operations" as this is an improper "end-run around" of the scienter requirement. *Bally I*, 2006 WL 3714708, at *9. [6]

---

[6] *See Plumbers & Pipefitters Loc. Union No. 630 Pension-Annuity Tr. Fund v. Allscripts-Misys Healthcare Sols., Inc. et al.*, 778 F. Supp. 2d 858, 884 (N.D. Ill. 2011) ("Conclusory allegations regarding an executive's position within the corporate hierarchy do not satisfy the PSLRA's particularity requirement, and therefore contribute very little, if anything, to a strong inference of scienter.").

Plaintiffs also argue that ADM and the Individual Defendants "[c]losely [m]onitored Nutrition [o]perating [p]rofits," Compl. ¶¶ 259-67, but this too fails to establish any scienter on the part of Mr. Young. More specifically, Plaintiffs fail to connect any of Mr. Young's alleged "monitoring" of Nutrition profits with actual knowledge or recklessness. *Id.* ¶¶ 259-67. Plaintiffs' conclusory arguments fail because "senior positions . . . do not suggest scienter without additional support from internal documents or communications." *Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*, No. 17 CV 1713, 2018 WL 4616356, at *8 (N.D. Ill. Sept. 26, 2018).

Similarly, Plaintiffs' allegation that Mr. Young's statement that he "'helped negotiate the largest acquisition in the company's history'" related to the Nutrition segment several years *before* the alleged corrections is vague, disconnected from the relevant time period, and does not support any inference of scienter. Compl. ¶ 269. Plaintiffs' allegations simply pointing out that Mr. Young was the CFO at various points in time, without *any* additional allegations related to scienter, fail to meet the high burden to adequately plead a fraud claim. *Plumbers & Pipefitters*, 778 F. Supp. 2d at 884.

### 2. Alleged violations of GAAP are insufficient to allege scienter.

Plaintiffs have not pled the requisite state of mind as to Mr. Young in connection with their assertions that the violations of generally accepted accounting principles ("GAAP") and ADM's accounting policy regarding the recording of certain intersegment sales amount to securities fraud. Compl. ¶¶ 274-79. The fact Mr. Young signed SEC filings that stated these intersegment sales were recorded "at amounts approximating market" fails, on its own, to show Mr. Young acted with scienter. *Id.* ¶ 277. Rather, Plaintiffs must allege facts showing the requisite state of mind. *Chu v. Sabratek Corp.*, 100 F. Supp. 2d 827, 838 (N.D. Ill. 2000). Plaintiffs cannot simply rely on "the number and repetitiveness of the [alleged] GAAP violations and the purported simplicity of the pertinent accounting principles" to establish scienter. *Bally I*, 2006 WL 3714708, at *8. In fact, without corresponding fraudulent intent (absent from

Plaintiffs' Complaint), "allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim." *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).

### 3. An executive's incentive compensation and stock sales do not support a finding of scienter.

Plaintiffs' attempt to establish scienter through allegations regarding Mr. Young's incentive compensation and stock sales also fails. *See* Compl. ¶¶ 280, 284-94, 297, 299. "[T]he motive to earn bonuses and awards . . . are too common among corporations and their officers to be considered evidence of scienter." *Bally I*, 2006 WL 3714708, at \*9-10 (collecting cases). This argument is "too generic" to infer scienter. *Plumbers & Pipefitters Loc. Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 956 (7th Cir. 2012). Plaintiffs' attempt to emphasize that performance-based compensation was tied to a legitimate corporate goal of growing the Nutrition segment also is not enough. Compl. ¶¶ 281, 284-89, 293. "The desire to increase the value of a company and attain the benefits that result, such as meeting analyst expectations and reaping higher compensation, are basic motivations not only of fraud, but of running a successful corporation." *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005). If an inference of scienter was permissible from such allegations, "the heightened pleading requirements for these claims would be meaningless." *Id.*

Similarly, Plaintiffs do not articulate why Mr. Young's alleged failure to sell stock in the four years leading up to the putative class period is unusual or suspicious, and the fact that he sold some stock in the putative class period does not establish scienter. Compl. ¶ 297. "[B]ecause executives sell stock all the time, stock sales must generally be unusual or suspicious to constitute circumstantial evidence of scienter." *Pugh*, 521 F.3d at 695.[7] In fact, far from unusual or suspicious, Mr. Young's ownership significantly increased as a multiple of his salary while he was CFO during the putative class period. Mr. Young's actual ownership was "15.4x" his salary

---

[7] *See Davis*, 385 F. Supp. 2d at 714-15 ("[T]he strength of an inference depends on how closely it follows from a fact. Without more, an executive's sale of stock does not lead to the conclusion that he engaged in fraud. The sale must be suspicious in scope or timing to support an inference of scienter.").

as of March 16, 2020. *See* Ex. B, selected portion of ADM's 2020 Proxy Statement. Then, Mr. Young's ownership increased to "32.5x" his salary as of March 15, 2021. *See* Ex. C, selected portion of ADM's 2021 Proxy Statement. In 2022, Mr. Young's ownership increased to "51.2x" his salary as of March 14, 2022. *See* Ex. D, selected portion of ADM's 2022 Proxy Statement. As such, Plaintiffs have failed to allege that there was anything unusual or suspicious about Mr. Young's sales.

### 4.    The existence of regulatory investigations and conduct *after* the putative class period cannot support an inference of scienter.

Finally, Plaintiffs cannot establish scienter by attempting to connect the existence of regulatory investigations to Mr. Young's departure from his positions on the boards of directors of three companies after the alleged misconduct. Compl. ¶¶ 186-87, 300-03, 307-08. "The fact that an investigation was opened does not support an inference of scienter on the part of anyone." *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2007 WL 551574, at *5 (N.D. Ill. Feb. 20, 2007). Further, the "mere existence" of an investigation "cannot support any inferences of wrongdoing or fraudulent scienter […]." *City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 942 (S.D. Ind. 2005). For similar reasons, Mr. Young's more recent decisions to depart certain board positions without any connection to ADM, *after* he retired from ADM and *after* the alleged end of the putative class period, cannot establish scienter for alleged wrongdoing during the class period. Plaintiffs fail to cogently articulate how the status of Mr. Young's board positions unrelated to ADM bears any relationship to any inference of scienter years earlier, much less a "'strong'–*i.e.*, a powerful or cogent–inference" of scienter. *Tellabs I*, 551 U.S. at 310. Consequently, for the reasons discussed above, Plaintiffs' claim under Section 10(b) and Rule 10b-5 promulgated thereunder against Mr. Young (Count I) must be dismissed with prejudice.

## II. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER SECTION 20(a) OF THE EXCHANGE ACT.

A Section 20(a) control person liability claim requires Plaintiffs to adequately plead a primary violation of securities laws by the allegedly controlled entity. *Pugh*, 521 F.3d at 693. Here, for the reasons discussed above, and those in ADM's and Juan Luciano's Motion to Dismiss and Supporting Memorandum, Plaintiffs have failed to allege a primary violation of Section 10(b) of the Exchange Act. Absent a primary violation, there cannot be an action under Section 20(a) and therefore, Plaintiffs' claim under Section 20(a) against Mr. Young (Count II) must be dismissed with prejudice. *Pugh*, 521 F.3d at 693; *In re Allscripts, Inc.*, 2001 WL 743411, at *12.

## III. PLAINTIFFS HAVE FAILED TO STATE A CLAIM UNDER SECTION 20A OF THE EXCHANGE ACT.

Plaintiffs allege Mr. Young violated Section 20A of the Exchange Act based on his October 12, 2020 sale of 49,020 shares of ADM stock and his February 8, 2022 sales of 31,503 shares and 123,763 shares of ADM stock. Compl. ¶¶ 341-44, 346-49. But this claim also fails.

Section 20A creates a private right of action for shareholders who "contemporaneously" trade with "[a]ny person who violates any provision of [the Exchange Act] or the rules or regulations thereunder by purchasing or selling a security while in possession of material, nonpublic information […]." 15 U.S.C. § 78t-1(a). "Section 20A claims are derivative, requiring proof of a separate underlying violation of the Exchange Act." *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, No. 02 C 4356, 2008 WL 2178150, at *2 (N.D. Ill. May 22, 2008) ("*Tellabs III*"). Specifically, "Section 20A provides a derivative cause of action for an underlying insider trading violation while in possession of material, nonpublic information." *Arbitrage Event-Driven Fund v. Trib. Media Co.*, No. 18 C 6175, 2020 WL 60186, at *11 (N.D. Ill. Jan. 6, 2020), *aff'd sub nom. Water Island Event-Driven Fund, LLC v. Trib. Media Co.*, 39 F.4th 402 (7th Cir. 2022). Put simply, "a Defendant may be liable under Section 20A only if he violates a provision of the Exchange Act *by* trading securities while in possession of material, nonpublic information."

*Tellabs III*, 2008 WL 2178150, at \*2 (citing *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 664 (S.D.N.Y. 2007)).

Plaintiffs have failed to allege that Mr. Young violated a provision of the Exchange Act by trading securities while in possession of material nonpublic information ("MNPI"). "A person is liable for insider trading when he obtains (a) material, (b) nonpublic information intended to be used solely for a proper purpose, and then (c) misappropriates or otherwise misuses that information (d) with scienter, (e) in breach of a fiduciary duty, or other duty arising out of a relationship of trust and confidence, to make 'secret profits.'" *S.E.C. v. Steffes*, 805 F. Supp. 2d 601, 608 (N.D. Ill. 2011).

Here, Plaintiffs merely allege that Mr. Young used MNPI to trade during the putative class period. Compl. ¶ 343. Specifically, the alleged MNPI includes "ADM's operations, reporting, financial results, and future business prospects, including, but not limited to, *the false statements and omissions disseminated to the investing public*." *Id.* (emphasis added). This does not come close to meeting the pleading requirement, because Plaintiffs "must allege actual knowledge by the defendant, not some second-hand belief that such knowledge existed." *Shah v. Zimmer Biomet Holdings, Inc.*, 348 F. Supp. 3d 821, 849 (N.D. Ind. 2018). As such, Plaintiffs' claim under Section 20A (Count III) must be dismissed with prejudice because Plaintiffs have failed to plead an underlying violation of the Exchange Act by trading securities while in possession of MNPI.

## CONCLUSION

For all of the foregoing reasons, Ray Young respectfully requests that this Court enter an Order dismissing the Complaint in its entirety with prejudice.

Dated: August 23, 2024

Respectfully submitted,

/s/ *Jose A. Lopez*

Jose A. Lopez
Pravin B. Rao
Katherine Pokorny
Perkins Coie LLP
110 North Wacker Drive, Suite 3400
Chicago, Illinois 60606-1511
(312) 324-8400
jlopez@perkinscoie.com
prao@perkinscoie.com
kpokorny@perkinscoie.com

*Attorneys for Defendant Ray Young*

-13-