**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAYMOND CHOW, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:24-cv-00634 District Judge Thomas M. Durkin |
| ARCHER-DANIELS-MIDLAND COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANT VIKRAM LUTHAR'S MOTION TO DISMISS PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................................... 1

II.    BACKGROUND ................................................................................................. 2

III.    ARGUMENT...................................................................................................... 4

    A.    Legal Standard ....................................................................................... 4

    B.    Plaintiffs' Section 10(b) Claim Must Be Dismissed............................... 5

        i.    Plaintiffs Fail to Create a Strong Inference of Scienter as to Luthar ......... 5

            1.    Plaintiffs' Group Pleading Must Be Disregarded .......................... 5

            2.    Plaintiffs Do Not Allege Any Specific Information Known by Luthar at The Time of the Alleged Misrepresentations ............ 5

            3.    Luthar's Signing of SEC Filings and Certifications Is Not a Sufficient Basis from Which to Infer Scienter.............................. 6

            4.    Luthar's Role as CFO Does Not Support an Inference of Scienter ..................................................................................... 6

            5.    Luthar's Small Sale of ADM Stock Is Insufficient to Create an Inference of Scienter .................................................. 7

            6.    Luthar's Departure Does Not Support an Inference of Scienter ..................................................................................... 8

        ii.    Plaintiffs Fail to Allege that Luthar's Statements Were Materially False and Misleading ................................................... 9

    C.    Plaintiffs' Section 20(a) Claim Must Be Dismissed.......................... 10

IV.    CONCLUSION............................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arbitrage Event-Driven Fund v. Tribune Media Co.*,
No. 18 C 6175, 2020 WL 60186 (N.D. Ill. Jan. 6, 2020) ...........................................................6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................................................4

*In re Baxter Int'l Inc. Sec. Litig.*,
No. 19 C 7786, 2021 WL 100457 (N.D. Ill. Jan. 12, 2021) .......................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................................4

*In re Campbell Soup Co. Sec. Litig.*,
No. 118CV14385NLHMJS, 2022 WL 6961796 (D.N.J. Oct. 11, 2022)....................................8

*Cornielsen v. Infinium Capital Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) .....................................................................................................5

*In re Cyberonics Inc. Sec. Litig.*,
523 F. Supp. 2d 547 (S.D. Tex. 2007), *aff'd sub nom. Catogas v. Cyberonics,
Inc.*, 292 F. App'x 311 (5th Cir. 2008) .....................................................................................9

*Davis v. SPSS, Inc.*,
385 F. Supp. 2d 697 (N.D. Ill. 2005) .........................................................................................7

*Heavy & Gen. Laborers' Loc. 472 & 172 Pension & Annuity Funds v. Fifth Third
Bancorp*,
No. 20 C 2176, 2022 WL 1642221 (N.D. Ill. May 24, 2022) ...................................................6

*In re Hertz Glob. Holdings Inc.*,
905 F.3d 106 (3d Cir. 2018).......................................................................................................8

*Higginbotham v. Baxter Int'l, Inc.*,
495 F.3d 753 (7th Cir. 2007) .....................................................................................................4

*In re Newell Rubbermaid Inc. Sec. Litig.*,
No. 99 C 6853, 2000 WL 1705279 (N.D. Ill. Nov. 14, 2000)..................................................10

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
673 F. Supp. 2d 718 (S.D. Ind. 2009), *aff'd*, 679 F.3d 952 (7th Cir. 2012)..............................6

*Pugh v. Tribune Co.*,
521 F.3d 686 (7th Cir. 2008) ............................................................................................4, 7, 10

*Searls v. Glasser*,
    64 F.3d 1061 (7th Cir. 1995) ...................................................................................10

*Taubenfeld v. Career Educ. Corp.*,
    No. 03 C 8884, 2005 WL 350339 (N.D. Ill. Feb. 11, 2005)........................................3

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)....................................................................................................5

**Statutes**

15 U.S.C. § 78u-4(b)(2) ...................................................................................................4

Private Securities Litigation Reform Act........................................................................4

Section 10(b) and Rule 10b-5 under the Securities Exchange Act of 1934......................4, 5, 9, 10

Section 20(a) under the Securities Exchange Act of 1934 .......................................10, 11

Defendant Vikram Luthar ("Luthar") respectfully submits this memorandum of law in support of his motion to dismiss the amended complaint (the "Complaint" or "Compl.")[1] filed by Plaintiffs KBC Asset Management NV, Ethenea Independent Investors S.A., and the National Elevator Industry Pension Fund ("Plaintiffs").

## I.      **INTRODUCTION**

Despite containing a hefty 120 pages and nearly 350 paragraphs, Plaintiffs' Amended Complaint fails to meet the basic requirements to make out a securities fraud claim against Luthar.  The crux of Plaintiffs' claims is that a patchwork of statements pieced together from certain public filings for Archer-Daniels-Midland Company ("ADM" or the "Company") falsely stated that intersegment transactions would be recorded at amounts approximating market.  But completely absent from the Complaint are any factual  allegations demonstrating that Luthar had *any knowledge* of the purported falsity of those statements when he signed the Company's filings or at the time the allegedly false statements were made.

Luthar was the Chief Financial Officer ("CFO") of ADM, a global corporation with thousands of employees, three reportable segments, and numerous subsegments, for less than half of the 45-month Class Period alleged in the Complaint.[2]  The Complaint contains no allegation that Luthar was personally involved in negotiating any of the intersegment transactions at issue or that he was involved in any meetings or reviewed any information specifically discussing whether those transactions were recorded at amounts approximating market.  Instead, Plaintiffs rely on vague, general allegations that Luthar "had access" to internal corporate documents and conversations with other ADM employees, attended Board and

---

[1] The "Complaint" refers to Plaintiffs' Complaint for Violations of the Federal Securities Laws, ECF No. 67.

[2] As alleged, the Class Period includes purchasers of ADM stock between April 30, 2020 through January 21, 2024.  (Compl. ¶ 1.).

committee meetings, and received reports in connection with those meetings. (Compl. ¶ 257.) Based on these general allegations of access, Plaintiffs leap to the conclusion that Luthar "*must have known*" that the statements contained in ADM's filings were false. As explained in the Memorandum of Law in Support of the Motion to Dismiss filed by ADM and its President and Chief Executive Officer, Juan Luciano (the "ADM Motion"), these allegations fall well-short of the exacting requirements needed for raising a "strong inference" of scienter.[3]

Unable to allege that Luthar knew, at the time, that the Company incorrectly recorded certain intersegment sales, Plaintiffs attempt to use impermissible group pleading allegations and allegations relating to Luthar's role as an ADM executive, his *de minimis* stock sales, and his resignation from the Company to cobble together a narrative purportedly demonstrating the requisite scienter on the part of Luthar. However, Plaintiffs make no attempt to link these allegations to any plausible inference that Luthar either knew about the allegedly false statements contained in the Company's filings or that Luthar recklessly disregarded a substantial risk that the statements were false. As such, Plaintiffs' inability to allege facts supporting a strong inference of scienter is fatal to both of their claims against Luthar. Finally, with respect to the *two* statements attributable solely to Luthar in the Complaint, Plaintiffs fail to allege how these statements are materially false or misleading. Plaintiffs' claims against Luthar must be dismissed for this additional reason as well.

## II.    BACKGROUND

ADM is a global corporation that serves as an agricultural supply chain manager and processor and "one of the world's leading producers of ingredients for sustainable nutrition."

---

[3] Luthar hereby joins and incorporates the arguments made in the ADM Motion to the extent those arguments are consistent with dismissal of the claims against Luthar. *See* [ECF Nos. 79-80.]

(Ex. B to ADM Motion, ECF No. 80-3 (2023 10-K at 5).)[4]  The Company is organized into three reportable business segments:  Ag Services and Oilseeds, Carbohydrate Solutions, and Nutrition. (*Id.* at p. 6.)  ADM operates in multiple locations throughout the globe, including the United States, Western Europe, Canada and Brazil.  (*Id.* at p. 24.)  For the year ended December 31, 2023, ADM reported over $93 billion in revenues on its consolidated statements of earnings.  (*Id.* at p. 59.)

Luthar joined ADM in 2004 as vice president and treasurer and served in a variety of positions throughout his 19-year career with the Company.  (Compl. ¶ 28.)  From January 2020 to April 2022, Luthar served as the CFO of ADM's Nutrition segment.  (*Id.*)  In April 2022, Luthar was appointed CFO of ADM.  (*Id.*)  In January 2024, Luthar was placed on administrative leave "pending an ongoing investigation . . .  regarding certain accounting practices and procedures with respect to the Company's Nutrition reporting segment, including as related to certain intersegment transactions."  (*Id.* ¶ 305.)  While the investigation identified certain intersegment transactions that had to be corrected, the Company reported that the errors were "not material to the Company's consolidated financial statements taken as a whole for any period."  (Ex. B to ADM Motion, ECF No. 80-3 (2023 10-K at 8).)  In April 2024, Luthar and ADM entered into a transition agreement, "under which Mr. Luthar will resign effective September 30, 2024," and "[u]ntil such resignation date, Mr. Luthar will be available to assist the

---

[4] The Court "may examine documents that a defendant attached to a motion to dismiss . . . if they are referred to in plaintiff's complaint and are central to her claim."  *Taubenfeld v. Career Educ. Corp.*, No. 03 C 8884, 2005 WL 350339, at *2 (N.D. Ill. Feb. 11, 2005).  The Court may also "take judicial notice of SEC filings without converting a motion to dismiss to a motion for summary judgment."  *Id.*

Company and provide transitional support as needed, as a non-executive employee." (Ex. A., Apr. 22, 2024 8-K.)[5]

## III. ARGUMENT

### A. Legal Standard

To withstand a Rule 12(b)(6) motion to dismiss, Plaintiffs are required to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (noting that a plaintiff's obligation to provide the grounds of his entitlement to relief requires "more than labels and conclusions").[6] Further, Plaintiffs must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). An additional layer of pleading requirements must be met to adequately state a securities fraud claim under the Private Securities Litigation Reform Act ("PSLRA"). To state a claim under Section 10(b) and Rule 10b-5 under the Securities Exchange Act of 1934 (the "Exchange Act"), plaintiffs must prove: (1) a material misrepresentation or omission by Luthar; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Pugh v. Tribune Co.*, 521 F.3d 686, 693 (7th Cir. 2008).

With respect to the element of scienter, Plaintiffs must "state with particularity facts giving rise to a strong inference" that Luthar acted with scienter. 15 U.S.C. § 78u-4(b)(2). Specifically, Plaintiffs must adequately plead Luthar's "knowledge of the statement's falsity or reckless disregard of a substantial risk that the statement is false." *Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 756 (7th Cir. 2007). Plaintiffs' complaint must be dismissed unless "a

---

[5] For the Court's convenience, a copy of any public filing cited herein is attached as an exhibit to the Declaration of Rachel T. Copenhaver, filed contemporaneously herewith.

[6] For all case cites, internal citations are omitted and emphasis is supplied unless otherwise stated.

reasonable person would deem the inference of scienter cogent and at least as compelling as any plausible opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).

### B. Plaintiffs' Section 10(b) Claim Must Be Dismissed

#### i. Plaintiffs Fail to Create a Strong Inference of Scienter as to Luthar

##### 1. Plaintiffs' Group Pleading Must Be Disregarded

In attempting to plead scienter as to Luthar, Plaintiffs rely heavily on group pleading. *See, e.g.*, Compl. ¶ 256 (alleging that the "Individual Defendants" participated in the drafting, preparation, and/or approval of public statements and were responsible for ensuring the accuracy of such statements); ¶ 257 (alleging that the "Individual Defendants" knew or recklessly disregarded the "adverse facts" alleged). However, the Seventh Circuit has rejected the group pleading doctrine as being inconsistent with "the PSLRA's clear statutory prerequisites 'that the untrue statements or omissions be set forth **with particularity as to 'the defendant'** and that scienter be pleaded with regard to 'each fact or omission' sufficient to give 'rise to a strong inference that the defendant acted with the required state of mind.'" *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 600 (7th Cir. 2019) (emphasis added). Accordingly, Plaintiffs' group pleading must be rejected here as to Luthar.

##### 2. Plaintiffs Do Not Allege Any Specific Information Known by Luthar at the Time of the Alleged Misrepresentations

As demonstrated in detail in the ADM Motion, the Complaint is devoid of any allegations demonstrating that Luthar possessed information about the improper accounting of intersegment sales *at the time* of the purported misstatements. For this reason alone, Plaintiffs' Section 10(b) claim against Luthar should be dismissed. (*See* ADM Motion, pp. 9-10.)

5

3.    Luthar's Signing of SEC Filings and Certifications Is Not a
      Sufficient Basis from Which to Infer Scienter

Plaintiffs allege that Luthar's "signing" of ADM's SEC filings and  SOX certifications supports an inference that he had the requisite scienter.  (Compl. ¶¶ 255, 257.)  Plaintiffs are wrong.  "[S]ignatures on SEC filings and certifications, without additional details supporting knowledge that the statements were false, 'add nothing substantial to the scienter calculus.'" *Heavy & Gen. Laborers' Loc. 472 & 172 Pension & Annuity Funds v. Fifth Third Bancorp,* No. 20 C 2176, 2022 WL 1642221, at *22 (N.D. Ill. May 24, 2022).  Aside from conclusory allegations, Plaintiffs offer no facts that show that Luthar knew that any of the purported false statements in ADM's public filings were false at the time that they were made. Accordingly, Luthar's signatures on those filings fail to raise any inference of scienter.  (*See* ADM Motion at p. 15.)

4.    Luthar's Role as CFO Does Not Support an Inference of Scienter

In continuing to grasp at straws  Plaintiffs  suggest that simply pointing to Luthar's role as an executive of ADM is sufficient to raise an inference of scienter.  However, as set forth more fully in ADM's Motion (*see* ADM Motion at p. 12), "pleading of scienter may not rest on the inference that defendants must have been aware of the misstatement based on their positions within the company." *Arbitrage Event-Driven Fund v. Tribune Media Co.*, No. 18 C 6175, 2020 WL 60186, at *10 (N.D. Ill. Jan. 6, 2020); *accord Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 747 (S.D. Ind. 2009) ("[R]espective positions within the company prove nothing about fraud or knowledge thereof but rather are exactly the type of generalized allegations the court must disregard under the PSLRA."), *aff'd*, 679 F.3d 952 (7th Cir. 2012).   Plaintiffs' claim that, as CFO, Luthar had a "deep understanding of ADM's business having served in leadership roles throughout our

6

finance organization" and was required to keep himself "informed of the Company's day-to-day business and operations" (Compl. ¶¶ 259, 270) are the exact type of vague assertions that are routinely rejected by courts as insufficient to raise inferences of scienter. *See, e.g., Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 713 (N.D. Ill. 2005) (rejecting an argument that presupposed scienter because the CEO and CFO "must have been aware [of the fraud] since they were privy to the finances."). Without tying Luthar's position as an executive to any specific, concrete facts that demonstrate his knowledge of any alleged misrepresentations, Plaintiffs' Complaint fails to support a "strong" inference of scienter.

5.      Luthar's Small Sale of ADM Stock Is Insufficient to Create an Inference of Scienter

Plaintiffs allege that the "Individual Defendants" sold "over 1.3 million shares of ADM common stock at artificially inflated prices . . . reaping over $107 million in personal proceeds." (Compl. ¶ 294.)  But, in regard to Luthar, Plaintiffs are forced to admit that he sold only 7,500 shares during the Class Period, netting a mere $400,000 in profits.  (*Id.* ¶ 289.)  Allegations relating to "stock sales must generally be unusual or suspicious to constitute circumstantial evidence of scienter." *Pugh,* 521 F.3d at 695.  Here, Plaintiffs have utterly failed to allege any facts even suggesting that Luthar's small volume of sales was somehow "unusual" or "suspicious," let alone any facts suggesting any motive by Luthar to commit fraud.  This "failure to provide any context showing that the [trading during the] applicable time period was unusual undercuts a 'strong' demonstration of scienter." *Id.*[7]

---

[7] Moreover, as discussed in the ADM Motion, Plaintiffs' attempt to support an inference of scienter via the existence of the Company's compensation plan as it relates to Luthar also fails. (*See* ADM Motion at p. 18.)

6.          <u>Luthar's Departure Does Not Support an Inference of Scienter</u>

Without any support in their Complaint, Plaintiffs contend that Luthar was "forced out" of ADM, since he was placed on administrative leave in January 2024 and subsequently agreed to resign, as further purported evidence of scienter. (Compl. ¶¶ 303, 305-06, 308.) Yet, Luthar's current status with the Company has no bearing on whether he made misrepresentations with the requisite scienter *during* the Class Period. "Corporate resignations do not strengthen an inference of scienter, when, as here, allegations do not cogently suggest that the resignations resulted from relevant executives' knowing or reckless involvement in fraud." *In re Hertz Glob. Holdings Inc.*, 905 F.3d 106, 119 (3d Cir. 2018). That Luthar's administrative leave and impending resignation occurred after any accounting adjustments were identified is of no consequence. Courts have held that the departure of "an executive after an announcement of so-called bad news requires more than pleading a link between bad news and an executive's resignation . . . because changes in leadership is only expected when leadership fails." *In re Campbell Soup Co. Sec. Litig.*, No. 118CV14385NLHMJS, 2022 WL 6961796, at \*9 (D.N.J. Oct. 11, 2022). Plaintiffs are still required to provide "allegations which cogently suggest that the resignations resulted from the relevant executives' knowing or reckless involvement in a fraud." *Id.* (*See also* ADM Motion at pp. 15-17.)

Plaintiffs have failed to satisfy this burden. The sole assertion Plaintiffs make regarding Luthar's departure is that he was put on administrative leave during the time in which the Company commenced an internal investigation in connection with its intersegment transactions. (Compl. ¶ 16.) However, this bare assertion fails to link Luthar's placement on leave to his knowledge of misstatements, as opposed to investor optics or a desire for a change in management. *See, e.g.*, *In re Baxter Int'l Inc. Sec. Litig.*, No. 19 C 7786, 2021 WL 100457, at \*20 (N.D. Ill. Jan. 12, 2021) (noting that departures may occur "'simply because the optics of

8

changing management are better for investors and regulators'" and finding that plaintiffs did not allege any facts "refuting the reasonable assumption" that a departure occurred for alternative reasons as "opposed to any culpable state of mind"). Further, the fact that Luthar remains an employee of ADM directly cuts against Plaintiffs' attempt to plead scienter. *See In re Cyberonics Inc. Sec. Litig.*, 523 F. Supp. 2d 547, 553 (S.D. Tex. 2007), *aff'd sub nom. Catogas v. Cyberonics, Inc.*, 292 F. App'x 311 (5th Cir. 2008) (finding that the existence of executives' resignation agreements that contained "no particularized details" failed to support a strong inference of scienter and noting that the retention of the executives as short-term consultants undermined claim that their resignations were "forced"). Thus, Plaintiffs have failed to demonstrate that Luthar's departure raises a strong inference of scienter.

### ii. Plaintiffs Fail to Allege that Luthar's Statements Were Materially False and Misleading

Plaintiffs' Section 10(b) claim is also deficient because the only two unique statements attributed to Luthar are not false or misleading. For the reasons more fully explained in the ADM Motion, Plaintiffs have failed to adequately plead that the vast majority of these statements are materially false and misleading. (*See* ADM Motion at pp. 21-28.) Aside from these allegedly false statements contained in ADM's SEC filings signed by Luthar, Plaintiffs attribute two other statements to him alone:

- A statement made during a Barclays Global Consumer Staples Conference in which Luthar, when he was the CFO of the Nutrition segment, stated that ADM was "driving synergies across the various businesses that Nutrition is capitalized on, to drive earnings growth . . . ." (Compl. ¶ 139.)

- A statement made during an earnings call discussing ADM's 1Q22 results in which Luthar stated that one reason why Nutrition's profits were stronger is

because of "smart pricing and active supply chain collaboration with our AS&O Carb Solutions teams . . . ." (Compl. ¶ 146.)[8]

Neither of these statements is actionable as materially false and misleading. As explained in the ADM Motion, courts have consistently held that statements regarding "synergies" and "growth," such as the two above, are non-actionable. *See In re Newell Rubbermaid Inc. Sec. Litig.*, No. 99 C 6853, 2000 WL 1705279, at *7 (N.D. Ill. Nov. 14, 2000) (noting that references to synergies were "puffery"); *Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir. 1995) (finding statements relating to "growth" were "puffery" rather than material statements of fact).

Further, Plaintiffs have failed to allege facts demonstrating that Luthar's statement relating to Nutrition's profits in Paragraph 146 was materially false. Instead, Plaintiffs suggest that the statement was misleading because it was not accompanied by a disclosure regarding inaccurate pricing for certain intersegment sales. (Compl. ¶ 152(c).) However, as noted in the ADM Motion, Plaintiffs have failed to support their claim with *any* facts suggesting a nexus between Luthar's statement and the alleged omission. (*See* ADM Motion at pp. 25-26.) Accordingly, Plaintiffs' claim that Luthar made any false and materially misleading statements must be dismissed.

### C. Plaintiffs' Section 20(a) Claim Must Be Dismissed

A Section 20(a) claim under the Exchange Act is a derivative claim. To state a claim, Plaintiffs "must first adequately plead a primary violation of securities laws—here, a violation of § 10(b)[.]" *Pugh*, 521 F.3d at 693. As demonstrated in the ADM Motion, Plaintiffs have failed to state a primary Section 10(b) violation against ADM. (*See* ADM Motion at pp. 8-28.) Consequently, Plaintiffs' Section 20(a) claim against Luthar in Count II fails as well.

---

[8] Plaintiffs allege that false statements were made during ADM's Global Investor Day presentations, for which Luthar was present, but Plaintiffs do not allege that Luthar made any false statements during these presentations. (Compl. ¶ 141.)

10

## IV.     CONCLUSION

For the foregoing reasons, Luthar respectfully requests that the Court dismiss the Amended Complaint with prejudice.


Dated: August 23, 2024

        Respectfully submitted,

        */s/   Junaid A. Zubairi*

        VEDDER PRICE P.C.
        Junaid A. Zubairi
        Rachel T. Copenhaver
        Thomas P. Cimino, Jr.
        Nusra Ismail
        222 N. LaSalle St, Ste. 2400
        Chicago, Illinois 60601
        T: (312) 609-7500
        F: (312) 609-5005
        jzubairi@vedderprice.com
        rcopenhaver@vedderprice.com
        tcimino@vedderprice.com
        nismail@vedderprice.com

        *Attorneys for Defendant Vikram Luthar*