**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RAYMOND CHOW, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> ARCHER-DANIELS-MIDLAND COMPANY, et al., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:24-cv-00634 <br> ) District Judge Thomas M. Durkin <br> ) <br> ) <br> ) <br> ) <br> ) |

**MEMORANDUM OF LAW IN SUPPORT**
**OF DEFENDANT VINCENT MACCIOCCHI'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................................ii

I.  Preliminary Statement........................................................................................................... 1

II.  Relevant Background............................................................................................................. 1

III.  The Court Should Dismiss the Complaint as to Mr. Macciocchi........................................ 3

   A.  Applicable Law .............................................................................................................. 3

   B.  The Complaint Fails to Allege Particular Facts that Give Rise to a Strong Inference of
Mr. Macciocchi's Scienter ................................................................................................... 5

     i.  Plaintiffs' Secondary Scienter Arguments Fail ........................................................... 8

   C.  Many of Mr. Macciocchi's Statements Are Not Materially False or Misleading ......... 11

   D.  Count II Against Mr. Macciocchi Fails.......................................................................... 13

CONCLUSION.............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**                                                                                                                                  **Page(s)**

*Bader v. Thilman*,
    2023 WL 8451637 (N.D. Ill. Dec. 6, 2023) ................................................................................. 4

*Cornielsen v. Infinium Capital Mgmt., LLC*,
    916 F.3d 589 (7th Cir. 2019) ....................................................................................................... 6

*Garden City Employees' Ret. Sys. v. Anixter Int'l, Inc.*,
    2012 WL 1068761 (N.D. Ill. Mar. 29, 2012) ........................................................................... 4, 5

*Heavy & Gen. Laborers' Loc. 472 & 172 Pension & Annuity Funds v. Fifth Third Bancorp*,
    No. 20 C 2176, 2022 WL 1642221 (N.D. Ill. May 24, 2022) .................................................... 11

*Higginbotham v. Baxter Int'l, Inc.*,
    495 F.3d 753 (7th Cir. 2007) ....................................................................................................... 8

*In re Allscripts, Inc. Sec. Litig.*,
    No. 00 C 6796, 2001 WL 743411 (N.D. Ill. June 29, 2001) ........................................................ 2

*In re Bally Total Fitness Sec. Litig.*,
    No. 04 C 3530, 2006 WL 3714708 (N.D. Ill. July 12, 2006) ..................................................... 10

*In re Baxter Int'l Inc. Sec. Litig.*,
    No. 19 C 7786, 2021 WL 100457 (N.D. Ill. Jan. 12, 2021) .................................................... 7, 8

*In re Newell Rubbermaid Inc. Sec. Litig.*,
    2000 WL 1705279 (N.D. Ill. Nov. 14, 2000) ............................................................................ 12

*Kurt v. Platinum Supplemental Ins., Inc.*,
    No. 19 C 4520, 2021 WL 3109667 (N.D. Ill. July 22, 2021)……………………………………….13

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
    437 F.3d 588 (7th Cir. 2006)………………………………………………………………...11

*Okla. Firefighters Pension & Reyt. Sys v. Ixia*,
    13-08440 MMM SHX, 2015 WL 1775221 (C.D. Cal. Apr. 14, 2015) ........................................ 7

*Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
    673 F. Supp. 2d 718 (S.D. Ind. 2009) ......................................................................................... 6

*Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*,
    2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) ..........................................................................5-6

ii

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
495 F. Supp. 3d 622 (N.D. Ill. 2020) ................................................................... 6, 11

*Woolgar v. Kingstone Companies, Inc.*,
477 F. Supp. 3d 193 (S.D.N.Y. 2020) ..................................................................... 9

**Statutes**

15 U.S.C. § 78u–4(b)(1) .......................................................................................... 11

**Rules**

Federal Rule of Civil Procedure 9(b) ........................................................................ 4
Federal Rule of Civil Procedure 12(b)(6) ............................................................. 3, 4

## I.    Preliminary Statement

Defendant Vincent Macciocchi fully joins in the memorandum of law submitted by Archer-Daniels-Midland Company ("ADM" or the "Company") and Juan Luciano in Support of their Motion to Dismiss the Complaint filed by Plaintiffs KBC Asset Management NV, Ethenea Independent Investors S.A., and the National Elevator Industry Pension Fund (the "Complaint") or "Compl.").[1] (ECF No. 67.)  In addition to joining in ADM's Motion, Mr. Macciocchi writes separately to emphasize the paucity of allegations about his involvement, including his scienter, regarding the alleged fraud, and to underscore the weaknesses in Plaintiffs' scattershot pleading.

## II.    Relevant Background[2]

Plaintiffs' Complaint alleges a wide-ranging scheme to defraud investors through materially false or misleading statements made by ADM executives during the Class Period.

Central to the Plaintiffs' allegations is ADM's own public disclosure that the Company made several accounting errors relating to intersegment transfers from 2018 to 2023.  (Compl. ¶ 2.)  Specifically, after publicly stating that it was conducting its own internal investigation, the Company on March 12, 2024 released its 2023 10-K, which disclosed and corrected past accounting errors in ADM's financial statements relating to certain transfers between ADM's business units.  (*Id*. ¶ 188.)  The intersegment transfers at issue were "between the Company's Nutrition reporting segment and the Company's Ag Services and Oilseeds and Carbohydrate Solutions reporting segments," and involved transactions "that were not recorded at amounts

---

[1]     The Company and Juan Luciano's Motion to Dismiss (ECF No. 79) and Memorandum of Law in Support of their Motion to Dismiss (ECF No. 80) are referred to as "ADM's Motion to Dismiss" or "ADM's Motion."

[2]     For a full statement of all relevant facts, Mr. Macciocchi refers the Court to the "Background" section of ADM's Motion.  (ADM Motion at 3-7.)

approximating market." (*Id*. ¶ 189.) While the 2023 10-K disclosed the Company's accounting errors, it also explained that, "[b]ecause each sale to be adjusted occurred between the Company's reporting segments, the adjustments ha[d] no impact on the Company's consolidated balance sheets and statements of earnings, comprehensive income (loss), or cash flows . . . and [were] not material to the Company's consolidated financial statements taken as a whole for any period." (2023 10-K at 8.)[3] Because the impact on the Company's consolidated balance sheets was not material, no restatement of ADM's consolidated financial statements was warranted.

Despite the minimal impact of these corrections, the Plaintiffs in this case have latched onto these self-disclosed, non-material errors as evidence of wide-ranging fraud among ADM's executives. With respect to Mr. Macciocchi, who was previously head of ADM's Nutrition business (in addition to serving as Vice President and Chief Sales and Marketing Officer), Plaintiffs claim that his access to Company information and knowledge of Nutrition's business operations means he *must have known*: (i) that ADM's intersegment transfers were not recorded at prices approximating market, and (ii), that ADM's financial reporting was not GAAP compliant.[4] (Compl. ¶¶ 30, 266, 271, 273.) From this, the Plaintiffs allege that Mr. Macciocchi committed securities fraud when he made public statements about Nutrition's business.

But that conclusion does not follow from Plaintiffs' premise. Plaintiffs have put forth no allegations that remotely suggest that Mr. Macciocchi—an individual with no accounting experience, who had no involvement in ADM's audit process, and who did not sign any public

---

[3]     As stated in ADM's Motion to Dismiss, courts may take judicial notice of documents filed with the SEC. *In re Allscripts, Inc. Sec. Litig.*, No. 00 C 6796, 2001 WL 743411, at *2 n.2 (N.D. Ill. June 29, 2001); (ADM's Motion to Dismiss at 1 n. 2.) ADM's 2023 10-K is attached to ADM's Motion as Exhibit B. (*See* ECF No. 80-3 at 6.)

[4]     GAAP stands for Generally Accepted Accounting Principles.

filings—knew of ADM's accounting errors when he made the public statements referenced during the Complaint's Class Period. Instead, the Plaintiffs ask the Court to accept their "must have known" logic and *presume* that Mr. Macciocchi knew of the now-corrected accounting errors because of his very position within the Company. The law of the Seventh Circuit, however, is squarely against such "must have known" reasoning.

Perhaps realizing that simply pointing to Mr. Macciocchi's position within the Company cannot serve as an end-run around the PSLRA's requirements that fraud allegations, including allegations regarding scienter, be pled with specificity, Plaintiffs allege a host of other scienter theories, including claims that the Individual Defendants engaged in insider trading and that the timing of several executive departures was suspicious. But for these theories to give rise to a strong inference of scienter requires a logical leap that is simply too great, especially when one considers the countervailing, and far more likely, non-fraudulent explanations for these events.

As for the alleged Class Period statements, many of the statements made by Mr. Macciocchi are optimistic statements about Nutrition's business and growth prospects. The law in the Seventh Circuit is clear that such statements cannot give rise to fraud claims because they are too vague and non-specific for any reasonable investor to consider them material. For other statements, Plaintiffs have failed to allege adequate facts to conclude that the statements were in fact false or misleading when made.

The Complaint should be dismissed for the reasons stated below and in ADM's Motion.

### III. The Court Should Dismiss the Complaint as to Mr. Macciocchi

#### A. Applicable Law

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to survive a motion to dismiss, the complaint's factual allegations "must be sufficient to raise the

possibility of relief above the 'speculative level . . . .'" *Garden City Employees' Ret. Sys. v. Anixter Int'l, Inc.*, No. 09-CV-5641, 2012 WL 1068761, at *2 (N.D. Ill. Mar. 29, 2012) (citation omitted). And, while a court in deciding a Rule 12(b)(6) motion must construe the complaint in the light most favorable to the plaintiff, "the court need not accept as true 'statements of law or unsupported conclusory factual allegations.'" *Bader v. Thilman*, No. 1:22-CV-05628, 2023 WL 8451637, at *3 (N.D. Ill. Dec. 6, 2023). "[M]ere labels and conclusions or a formulaic recitation of the elements of a cause of action" will not suffice. *Id.* (internal quotation marks omitted).

When, as here, the complaint makes a securities fraud claim, the complaint is subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b). Pursuant to Rule 9(b), to survive a motion to dismiss, the plaintiffs "must plead the circumstances constituting fraud with particularity"—specifically, "[t]hey must identify the person who made the misrepresentation; the time, place, and content of the misrepresentation; and the method by which the misrepresentation was communicated." *Garden City*, 2012 WL 1068761, at *2.

The heightened pleading standard required by Rule 9(b) is further elevated by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). The PSLRA was enacted "[a]s a check against abusive litigation by private parties" and to "screen out frivolous suits." *Id.* (internal quotation marks and citations omitted). The PSLRA accomplishes this, in part, through "[e]xacting pleading requirements." *Id.* Specifically, in alleging misrepresentations or omissions of material fact, the PSLRA requires plaintiffs not only to "'specify each statement alleged to have been misleading,'" but also to provide "'the reason or reasons why the statement is misleading.'" *Id.* As for scienter, plaintiffs "'must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,'" and must adequately allege that the defendant had "intent to deceive, demonstrated by knowledge of the statement's

4

falsity or reckless disregard of a substantial risk that the statement is false." *Id.* Accordingly, a complaint will survive a motion to dismiss under the PSLRA "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as an opposing inference that could be drawn from the facts alleged." *Id.*

  **B.**   **The Complaint Fails to Allege Particular Facts that Give Rise to a Strong Inference of Mr. Macciocchi's Scienter**

Despite spanning over 100 pages, the Complaint's allegations regarding Mr. Macciocchi's scienter are few and far between. Broadly, the Complaint purports to establish scienter as to Mr. Macciocchi primarily through non-specific allegations regarding Mr. Macciocchi's role as the President of Nutrition at ADM.

The Complaint, in sum and substance, suggests that through his executive roles, Mr. Macciocchi had access to information, including information about costs, and thus *must have known* that the Company was engaged in intersegment transfers that did not approximate market, and that this led to accounting errors in ADM's financial reporting. But aside from these general details regarding Mr. Macciocchi's positions, the Complaint is devoid of allegations demonstrating that Mr. Macciocchi had specific knowledge of ADM's accounting practices, that he had specific knowledge that intersegment transfers were occurring at prices that did not approximate market, or that he had any specific background and/or training in accounting or GAAP-compliance issues that would be relevant here.

These non-specific, "must have known" allegations, which are based exclusively on Mr. Macciocchi's executive positions within the Company, fall well short of the required scienter showing under the PSLRA. Indeed, courts within the Seventh Circuit routinely reject attempts to establish scienter through the defendant's position within the company. *See, e.g.*, *Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*, No. 17 CV 1713, 2018 WL 4616356, at *8

(N.D. Ill. Sept. 26, 2018) ("The individual defendants' senior positions within Caterpillar also do not suggest scienter without additional support from internal documents or communications.").[5]

And for good reason, too. Focusing exclusively on an individual's "'respective position[ ] within the company prove[s] nothing about fraud or knowledge thereof,'" and is "'exactly the type of generalized allegations the court must disregard under the PSLRA.'" *Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 673 F. Supp. 2d 718, 747 (S.D. Ind. 2009). Accordingly, courts within the Seventh Circuit have repeatedly rejected "'must have known'" allegations (such as those alleged here) as "'an end-run around the requirement that plaintiffs set forth particularized facts to suggest that defendants acted knowingly or recklessly.'" *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 659 (N.D. Ill. 2020), *aff'd sub nom. Nat'l Elevator Indus. Pension Fund v. Conagra Brands, Inc.*, No. 21-1155, 2022 WL 1449184 (7th Cir. May 9, 2022).

Applying these principles here, Plaintiffs' effort to establish scienter by merely pointing to Mr. Macciocchi's general knowledge of the Nutrition business, or the fact that (as President) he monitored its costs, must fail. For one, such general, "must have known" allegations do not establish that Mr. Macciocchi was aware of the pricing for the specific set of intersegment transfers that were the subject of ADM's corrections—let alone that he knew that the prices on those intersegment transfers did not approximate market, or that they could lead to accounting errors and financial reporting that was not GAAP compliant. (*See* ADM Motion at 9-10.) Nor do these allegations establish that Mr. Macciocchi knew any of this information *at the time* the Class Period statements were made. Plaintiffs must come forward with specific allegations regarding Mr.

---

[5] *See also Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 602 (7th Cir. 2019) ("[A] complaint fails to satisfy the PSLRA's particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information.")

Macciocchi's scienter (at the time the statements were made) that go beyond his position in the Company and the information he would have necessarily had access to as a result of his position. They have not done so.

Nor can Plaintiffs rely on the so-called "core operations" doctrine to establish that Mr. Macciocchi had specific knowledge of ADM's accounting errors. Pursuant to that theory, officers of a company are presumed to have knowledge of facts critical to a business's core operations. The core-operations theory, however, only extends so far; and it typically applies only where the operation in question "constitute[s] nearly all of a company's business." *In re Baxter Int'l Inc. Sec. Litig.*, No. 19 C 7786, 2021 WL 100457, at \*13 (N.D. Ill. Jan. 12, 2021). Critically, the core-operations doctrine generally cannot be used as a stand-alone basis for establishing a strong inference of scienter. *Id.*

In relation to accounting issues specifically, multiple courts have recognized that such issues are typically outside of a business's core operations. *See, e.g.*, *Okla. Firefighters Pension & Ret. Sys. v. Ixia*, No. CV 13-08440 MMM SHX, 2015 WL 1775221, at \*31 (C.D. Cal. Apr. 14, 2015) ("[n]umerous courts have found that accounting . . . determinations are not part of a company's core operations," and holding the same). And while courts in the Seventh Circuit have allowed plaintiffs to proceed under the core-operations theory in the context of an accounting issue, those courts have found that the issue must concern a "'significant part'" of a company's financial picture for the theory to apply. *See Baxter*, 2021 WL 100457, at \*13.

Here, there are no allegations that the intersegment transfers and the adjustments made as a result of them concerned a "significant part" of ADM's financial picture, including when considered at the segment level, as stated in ADM's Motion. (ADM Motion at 14.)

Moreover, even assuming the Court were to infer that Mr. Macciocchi had some

7

knowledge under the core-operations doctrine, that inference still would not support a strong inference of scienter in this case. At best, such an inference could establish that Mr. Macciocchi knew about some of the affected intersegment sales between the other business units and Nutrition. That inference, however, *would not* establish that Mr. Macciocchi knew that the prices did not reflect market value, or that the transactions could lead to non-GAAP compliant evaluations of Nutrition's operating profits—an accounting issue outside of Mr. Macciocchi's purview. As explained by the Seventh Circuit in *Higginbotham*, there is a tremendous difference between receiving information, and knowing that the information received is false or inaccurate. *See Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 758 (7th Cir. 2007) ("[T]here is a big difference between knowing about the reports . . . and knowing that the reports are false."); *see also Baxter*, 2021 WL 100457, at *14 (explaining that at most, the court could infer defendants' knowledge that a "core" accounting convention was employed, but not that "[the convention] violated GAAP or that there was a risk this was the case"). That principle applies equally here; there are simply no allegations to support the inference that Mr. Macciocchi knew of any accounting errors and their effect on the Company's reporting when he made the Class Period statements.

### i.      Plaintiffs' Secondary Scienter Arguments Fail

Understanding that simply pointing to Mr. Macciocchi's executive positions is likely insufficient to survive a motion to dismiss, Plaintiffs have attempted to buttress the Complaint with additional scienter arguments. These arguments, however, are equally specious, and their inclusion does not meet the PSLRA's exacting pleading requirements.

***Mr. Macciocchi's Retirement.*** The timing of Mr. Macciocchi's retirement does not establish that any of his statements were made with intent to deceive.[6] Plaintiffs allege that Mr.

---

[6]      Because of Mr. Macciocchi's age and service to the Company, ADM classified his departure as a retirement in good standing.

Macciocchi was forced out of ADM as a result of the alleged accounting fraud, as evidenced by Mr. Macciocchi forfeiting a retention grant, and statements he made about the future of Nutrition several months before his retirement.  From this, Plaintiffs ask the Court to surmise that Mr. Macciocchi somehow must have known about the alleged accounting fraud when he made the allegedly false statements referenced in the Complaint.  (Compl. ¶ 304.)

These arguments are sheer conjecture.  First, Mr. Macciocchi was not fired, and in fact left the Company on good terms for a different opportunity—an opportunity that he initially engaged in discussions for in April 2023, months before the SEC's voluntary request.  Second, the fact that Mr. Macciocchi chose to forgo the retention grant for another opportunity was not suspicious or unusual, as forgoing compensation is a factor executives regularly have to grapple with when considering leaving one company for another.  *See Woolgar v. Kingstone Companies, Inc.*, 477 F. Supp. 3d 193, 240 (S.D.N.Y. 2020) (allegation that defendant's "resignation was 'highly suspicious' because [defendant] was 'only seven months into his lucrative three-year employment agreement'" was "insufficient to establish an inference of scienter").  Third, that Mr. Macciocchi spoke about Nutrition's future several months before leaving, and then took another job after leaving, is not evidence of anything other than that Mr. Macciocchi continued to effectively perform his duties as President of Nutrition up until his retirement.  Put simply, these non-fraudulent explanations are far more plausible than the conclusion the Plaintiffs are attempting to draw regarding Mr. Macciocchi's retirement.

*Mr. Macciocchi's Compensation*.  The Complaint also points to ADM's compensation structure, and the fact that Mr. Macciocchi received compensation tied to Nutrition's performance, as evidence of scienter.  But a compensation structure that incentivizes executives to improve their business is hardly suspicious, let alone evidence of fraudulent intent.  Indeed,

courts in the Seventh Circuit have repeatedly held that "the motive to earn bonuses and awards . . . [is] too common among corporations and their officers to be considered evidence of scienter." *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2006 WL 3714708, at *9 (N.D. Ill. July 12, 2006) (collecting cases). This Court should as well.

***Mr. Macciocchi's Sale of Stock.*** Plaintiffs' reference to Mr. Macciocchi's sale of shares as evidence of scienter also fails. On this point, Plaintiffs' *own* allegations rebut any inference that Mr. Macciocchi's actions were nefarious. As the Complaint makes clear, ADM's stock performed poorly prior to the Class Period, (*see, e.g.*, Compl. ¶¶ 36, 44, 294), and so there was little reason for Mr. Macciocchi to sell during that time. In addition, as stated in ADM's Motion, Mr. Macciocchi was required "to own shares of common stock with a fair market value within a range of one to six times [his] base salary," and could not sell any units of stock until this requirement was met. (*See, e.g.*, 2020 14-A Proxy, at 41; ADM Motion at 20.)[7] Having only joined ADM in 2014, the most plausible explanation for Mr. Macciocchi's lack of trading prior to the Class Period is not insider trading, but that he was building stock reserves to come into compliance with ADM's policy that "each member of senior management . . . maintain a significant ownership position in shares of ADM's common stock." (*See id.*)

***The Federal Investigation.*** Plaintiffs also reference the existence of a federal investigation as evidence of Mr. Macciocchi's scienter. This, however, is little more than a thinly veiled attempt to improperly establish "fraud by hindsight," as the fact of a federal investigation alone says nothing about Mr. Macciocchi's state of mind when he made the Class

---

[7] ADM's 2020 14-A Proxy Statement is attached to ADM's Motion to Dismiss at Exhibit J. (*See* ECF No. 80-11 at 4.)

10

Period statements. *See Heavy & Gen. Laborers' Loc. 472 & 172 Pension & Annuity Funds v. Fifth Third Bancorp*, No. 20 C 2176, 2022 WL 1642221, at *22 (N.D. Ill. May 24, 2022).

The remaining scienter arguments are equally specious and addressed in ADM's Motion.

### C.     Many of Mr. Macciocchi's Statements Are Not Materially False or Misleading

Plaintiffs point to several statements by Mr. Macciocchi that they claim are false or misleading and thus actionable under the securities laws. To survive a motion to dismiss under the PSLRA's exacting pleading requirements, however, Plaintiffs must allege an untrue statement or omission of material fact, and specify each statement that they claim was misleading and the reason or reasons why each statement was misleading. *See* 15 U.S.C. § 78u–4(b)(1). Here, the alleged statements by Mr. Macciocchi referenced by Plaintiffs are not actionable because they are mere puffery or were not actually false or misleading when made.

It is settled law in the Seventh Circuit that "indefinite predictions of growth are better described as puffery rather than as material statements of fact." *W. Palm Beach Firefighters' Pension Fund*, 495 F. Supp. 3d at 651. That is because, in order for a statement to be actionable, it must be one that an "investor would reasonably rely on . . . as . . . reflecting a consequential fact about the company." *Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 596 (7th Cir. 2006), *rev'd on other grounds*, 551 U.S. 308 (2007). Aspirational statements regarding a company's business or growth prospects do not meet this standard because they are too vague and non-specific to be material to a reasonable investor's decision to invest. *See W. Palm Beach Firefighters' Pension Fund*, 2022 WL 1449184, at *651.

Applying these principles, it is clear that the following statements, all of which are optimistic statements about Nutrition's business and growth prospects by Mr. Macciocchi during the Class Period, are mere puffery and not actionable.

11

- "[I]t's a good growth story and a good growth trajectory from an organic basis. And *what we've done is we've really taken the approach of let's grow organically*." (Compl. ¶ 128(b).)

- Defendant Macciocchi emphasized Nutrition's "*very good organic growth story*." (*Id.* ¶ 137(a).)

- "[A]lternative protein *margins are quite strong*," "[i]n [ADM's] Health and Wellness products, *the margins are quite strong*," and "where there's an opportunity to continue to *margin up this business is in the animal side*," which is "*really about this mix shift* in this transformation and *making sure we margin up this business*." (*Id.* ¶ 137(b).)

- "*M&A is a spoke in our strategic wheel. We're focused on our organic growth* and how we'll continue to drive our business," adding that "*we are predicated on organic growth*." (*Id.* ¶ 141(b).)

- "*[W]e've identified significant opportunities to margin up this portfolio.*" (*Id.* ¶ 141(c).)

In addition to the above optimistic statements, Plaintiffs claim that Mr. Macciocchi's statement regarding the synergies between the various business units was also misleading:

> When asked by an analyst how the Nutrition business "benefit[s] from or complement[s] the traditional ag and processing business of ADM," Macciocchi highlighted intersegment sales, including that *"[w]e manufacture our own white flake"* at ADM, and also emphasized ADM's "*centers of excellence*," "*pending ERP implementation*," "*nutrition customers from the various parts of our business that have come together*" and "*advanced key account management program*." (*Id.* ¶ 137(c).)

But this statement, like those above, is also non-actionable puffery. Courts in the Seventh Circuit have likewise held that statements regarding a company's synergies (and resulting benefits) are too indefinite, and thus immaterial, to serve as a basis for a securities fraud claim. *See, e.g.*, *In re Newell Rubbermaid Inc. Sec. Litig.*, 2000 WL 1705279, at *7 (N.D. Ill. Nov. 14, 2000) ("references to synergies" are immaterial puffery); (ADM Motion at 24.) Nor have Plaintiffs alleged sufficient facts to demonstrate that this and the other above statements were in fact false or misleading when made. For example, there are no allegations that suggest that Mr. Macciocchi's statement that *"[w]e manufacture our own white flake*," and that this led to

12

synergistic benefits to ADM, is false or misleading.  And as for Plaintiffs' assertion that these statements were misleading because they did not include a simultaneous disclosure that certain intersegment sales were not priced at market, that argument also fails because Plaintiffs have not adequately alleged a close nexus between these statements and the alleged omissions, as stated in the Company's Motion.  (*See* ADM Motion at 24-28.)

### D.      Count II Against Mr. Macciocchi Fails

For the reasons stated in ADM's Motion to Dismiss, Plaintiffs cannot state a claim against Mr. Macciocchi under § 20(a) of the Exchange Act for control liability because Plaintiffs have failed to state a primary securities fraud claim against him.  (*See* ADM Motion at 29.)

### CONCLUSION

The Court should dismiss the Complaint in its entirety and with prejudice as to Defendant Vincent Macciocchi for the reasons stated herein, in ADM's Motion to Dismiss, and in any other motions filed by the Individual Defendants, to the fullest extent applicable, including but not limited to those portions of the other Defendants' motions specifically referenced above.[8]

Respectfully submitted,

MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO P.C.

By:  */s/ Elkan Abramowitz*
       Elkan Abramowitz
       Brian A. Jacobs
       Joseph P. Klemme

       565 Fifth Avenue
       New York, New York 10017
       (212) 880-9500 (phone)
       (212) 856-9494 (fax)

---

[8]      Courts in the Seventh Circuit have permitted co-defendants to join in, and incorporate by reference, arguments made in their co-defendants' motions.  *See, e.g.*, *Kurt v. Platinum Supplemental Ins., Inc.*, No. 19 C 4520, 2021 WL 3109667, at *7 n.3 (N.D. Ill. July 22, 2021).

13

eabramowitz@maglaw.com

*Attorneys for Defendant*
*Vincent Macciocchi*

14