**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAYMOND CHOW, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:24-cv-00634 |
| | ) | District Judge Thomas M. Durkin |
| ARCHER-DANIELS-MIDLAND COMPANY, et al., | ) ) | |
| Defendants. | ) ) ) | |

**<u>REPLY IN SUPPORT OF DEFENDANT VIKRAM LUTHAR'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>**

I.      INTRODUCTION ................................................................................................ 1

II.    ARGUMENT....................................................................................................... 2

        A.     Plaintiffs Have Failed to Raise a Strong Inference of Scienter ............................ 2

            1.     Plaintiffs Have Failed to Allege Any Motive on the Part of Luthar .......... 2

            2.     Allegations About Luthar's Positions Are Insufficient to Raise a Strong Inference of Scienter ....................................................................... 3

            3.     Luthar's Signature on SEC Filings Does Not Support a Strong Inference of Scienter ..................................................................................... 5

            4.     The Core Operations Doctrine Is Inapplicable ......................................... 6

            5.     Plaintiffs' False Assertions Relating to Luthar's Departure Must Be Rejected ................................................................................................ 7

        B.     The Two Specific Statements Attributed to Luthar Are Not Actionable.............. 8

        C.     Plaintiffs' Section 20(a) Claim Fails.................................................................. 10

III.   CONCLUSION................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. Oak St. Health, Inc.*,
2023 WL 1928119 (N.D. Ill. Feb. 10, 2023) ...........................................................................4, 5

*Azar v. Grubhub*,
2021 WL 4077327 (N.D. Ill. Sept. 7, 2021) ................................................................................5

*In re Baxter Int'l Inc. Sec. Litig.*,
2021 WL 100457 (N.D. Ill. Jan. 12, 2021) ..................................................................................7

*In re Campbell Soup Co. Sec. Litig.*,
2022 WL 6961796 (D.N.J. Oct. 11, 2022) ...................................................................................8

*In re CenturyLink Sales Pracs. & Sec. Litig.*,
403 F. Supp. 3d 712 (D. Minn. 2019) ......................................................................................6, 7

*Cornielsen v. Infinium Capital Mgmt., LLC*,
916 F.3d 589 (7th Cir. 2019) .......................................................................................................3

*In re Cyberonics Inc. Sec. Litig.*,
523 F. Supp. 2d 547 (S.D. Tex. 2007) .........................................................................................8

*Fryman v. Atlas Fin. Holdings, Inc.*,
2022 WL 1136577 (N.D. Ill. Apr. 18, 2022) ...........................................................................3, 5

*Hendrick v. Kraft Heinz Co.*,
2021 WL 3566602 (N.D. Ill. Aug. 11, 2021) ..............................................................................6

*Jones v. Corus Bankshares, Inc.*
701 F. Supp. 2d 1014 (N.D. Ill. 2010) .........................................................................................4

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
513 F. 3d 702 (7th Cir. 2008) ......................................................................................................7

*In re Newell Rubbermaid Inc. Sec. Litig.*,
No. 99 C 6853, 2000 WL 1705279 (N.D. Ill. Nov. 14, 2000) .....................................................9

*Pugh v. Tribune Co.*,
521 F.3d 686 (7th Cir. 2008) .......................................................................................................3

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos.,
Inc.*,
75 F.3d 801 (2d Cir. 1996)...........................................................................................................8

*Searls v. Glasser*,
  64 F.3d 1061 (7th Cir. 1995) ....................................................................................9

*Taubenfeld v. Career Educ. Corp.*,
  No. 03 C 8884, 2005 WL 350339 (N.D. Ill. Feb. 11, 2005).......................................9

*In re Ulta Sec. Litig.*,
  604 F. Supp. 2d 1188 (N.D. Ill. 2009) .....................................................................7

**Other Authorities**

Securities Exchange Act, Rule 10b-5 .............................................................................8

Securities Exchange Act §10(b).................................................................................8, 10

Securities Exchange Act §20(a)....................................................................................10

## I.     INTRODUCTION

Plaintiffs' Opposition ("Opp.") (ECF No. 91) fails to adequately address the arguments for dismissal put forth by Defendant Vikram Luthar ("Luthar") and the other Defendants in their respective Motions to Dismiss.[1]  Instead, Plaintiffs' "omnibus" response attempts to muddy the waters in hopes that the Court will conclude that Plaintiffs have lodged enough generalized allegations to survive the pleading stage.  However, Plaintiffs have not done so here, and they certainly cannot do so by relying on improper group pleading and by circumventing their obligation to plead the necessary elements as to Luthar.

Fatal to Plaintiffs' Complaint is their inability to raise a strong inference of scienter. Plaintiffs' arguments that their allegations relating to ADM's compensation structure and Luthar's stock sales establish a strong inference of scienter are unpersuasive where the Complaint itself fails to allege that Luthar had *any* involvement in the decision to link executive compensation to ADM's Nutrition segment and given the *de minimis* amount of Luthar's trading.  Further, Plaintiffs make no effort to rely on any other facts beyond Luthar's position as CFO and his signature on SEC filings to support their contention that Luthar *must have known* about the alleged intersegment accounting issues.  Notably, Plaintiffs' Opposition fails to respond to Luthar's position in his Motion to Dismiss that the only two allegedly false and misleading statements attributed to Luthar are non-actionable under the law.  For these reasons, and those articulated in Luthar's Motion to Dismiss, this Court should grant Luthar's Motion to Dismiss.[2]

---

[1] Capitalized terms not defined herein have the same meanings as in Luthar's Memorandum in Support of his Motion to Dismiss ("Motion to Dismiss").  (*See* ECF No. 84.)

[2] Luthar joins and incorporates the arguments made by Defendants Archer-Daniels-Midland Company ("ADM") and Juan Luciano in their Reply Briefs in Support of Their Motion to Dismiss (the "ADM Reply") to the extent those arguments are consistent with dismissal of the claims against Luthar. (*See* ECF No. 92.)

1

## II.    ARGUMENT

### A.    Plaintiffs Have Failed to Raise a Strong Inference of Scienter

Having already conceded that they cannot allege direct knowledge on the part of Luthar (Opp. at 26), Plaintiffs also have not sufficiently alleged *circumstantial* allegations of scienter. Plaintiffs ask the Court to consider the totality of their allegations when determining whether Plaintiffs have adequately pleaded scienter, but their attempt to combine multiple *insufficient* allegations of scienter does not properly sum up to the requisite strong inference of scienter. Moreover, as explained in the ADM Motion and the ADM Reply, Plaintiffs cannot rely on generic allegations that the Individual Defendants were motivated to commit fraud to achieve profitability for the Company because that motive is indistinguishable from the general motives of executives at any other company.  (*See* ECF No. 80, at 17-18; ECF No. 92, at 8-10.)

### 1.    Plaintiffs Have Failed to Allege Any Motive on the Part of Luthar

Plaintiffs cannot add to the scienter puzzle by pointing to motive whether based on ADM's compensation plan or Luthar's modest stock sales.  As an initial matter, Plaintiffs baselessly assert in their Opposition that ADM revised its compensation plan "with the input of the Individual Defendants," and that the "Individual Defendants" attended compensation meetings. (Opp. at 3, 30.)  Yet, Plaintiffs' sole supporting allegation in their Complaint simply states that "members of management attend meetings" of the compensation committee based on generic language in ADM's 2020 Proxy Statement, which was issued *prior* to Luthar serving as CFO.  (*See* Compl. ¶ 282.)  Tellingly, Plaintiffs do not (and cannot) allege that *Luthar* was one of these individuals in management.  Thus, there are no plausible allegations in the Complaint that Luthar had any involvement in designing ADM's executive compensation plan.

Additionally, Plaintiffs continue to engage in classic improper group pleading when discussing the Defendants' stock sales, arguing that the "Individual Defendants . . . collectively

2

receiv[ed] tens of millions of dollars from incentive compensation and stock sales." (Opp. at 2.) As explained in Luthar's Motion to Dismiss, Luthar sold a *de minimis* amount of stock during the Class Period ($670,000 over a four-year period), which is insufficient to rise to the level of "unusual or suspicious" sales found to be evidence of scienter. *Pugh v. Tribune Co.*, 521 F.3d 686, 695 (7th Cir. 2008). Plaintiffs' reliance on *Fryman II* is unavailing when applied to Luthar. While the defendants in *Fryman II* sold their stock for lower amounts than the Individual Defendants in this case, the court found the *Fryman II* defendants' stock sales unusual and suspicious because those defendants sold "substantial amounts" of their stock within a short, ***two-month*** time period, and those sales could be credibly linked to significant adverse events affecting the company. *Fryman v. Atlas Fin. Holdings, Inc.*, 2022 WL 1136577, at *29 (N.D. Ill. Apr. 18, 2022). In contrast, Luthar sold $670,000 worth of ADM stock over a ***four-year*** period, and Plaintiffs have not alleged that his selling patterns during the Class Period were otherwise unusual. This does not rise to the level of suspicious and unusual sales that persuaded the *Fryman II* court to conclude that defendants' stock sales contributed to a strong inference of scienter.

### 2. Allegations About Luthar's Positions Are Insufficient to Raise a Strong Inference of Scienter

Plaintiffs put much stock in the fact that Luthar served as CFO of the Nutrition segment and later CFO of ADM during the Class Period, but they make no attempt to plead any facts that plausibly allow the Court to infer that Luthar had any knowledge of the intersegment accounting issues. A "complaint fails to satisfy the PSLRA's particularity requirements by making conclusory allegations of scienter derived from a defendant's mere access to information." *Cornielsen v. Infinium Capital Mgmt., LLC*, 916 F.3d 589, 602 (7th Cir. 2019). Plaintiffs simply, and impermissibly, assert that, because of Luthar's positions at ADM, he must have had "direct control over the concealed matters." (Opp. at 34.) Those alleged concealed matters relate to ADM's

3

purported engagement in improper accounting relating to ADM's intersegment transactions. However, the Complaint is utterly devoid of allegations that Luthar played *any* role in the negotiations or in the recording of those transactions on ADM's books.

Plaintiffs rely on *Jones v. Corus Bankshares, Inc.* 701 F. Supp. 2d 1014 (N.D. Ill. 2010) to bolster their argument that Luthar's position alone contributes to a strong inference of scienter, but Plaintiffs crucially overstate any similarities to the allegations here. In *Jones*, the court found that the CEO's position and access to information supported a strong inference of scienter, specifically because the "[CEO] himself admitted to being 'deeply involved in every major aspect of the lending process'" at issue. *Id*. at 1029. Plaintiffs do not allege that Luthar has made any such statement implying or admitting to that level of control and influence over how intersegment transactions were recorded on ADM's books, nor do Plaintiffs allege Luthar exerted such influence and control over the recording of ADM's intersegment transactions.

Importantly, Plaintiffs ignore that the *Jones* court did not find that the plaintiff adequately pleaded scienter as to the CFO. In its analysis, the *Jones* court found that, while the CFO, like Luthar, was responsible for signing the company's SEC filings, "plaintiff's complaint alleges no facts that would support a strong inference that [the CFO] had the requisite scienter in making the statements." *Id*. And plaintiff's bare allegations that "[a]s the top officer in charge of [the company's] financial statements, defendants cannot reasonably argue that [the CFO] was not in a position to know these facts" were insufficient to support a strong inference of scienter. Here, Plaintiffs pursue the same generalized, unsuccessful approach against Luthar, and the Court should reject Plaintiffs' argument that Luthar's position as CFO adds anything to the scienter analysis.

For similar reasons, Plaintiffs' heavy reliance on *Allison v. Oak St. Health, Inc.* is inapposite. 2023 WL 1928119 (N.D. Ill. Feb. 10, 2023). There, the executives disclosed that Oak

Street "paid insurance agents for referrals," but omitted that it did so "on a per-patient basis," which allegedly violated the law. *Id*. at *6. The court held that Oak Street's omission made the statement materially misleading because Oak Street was obligated to disclose the material details that made the practice illegal. In contrast, Plaintiffs' claims that Defendants made similar, intentional omissions while reporting about the Nutrition segment are unsupported. Luthar made general statements about Nutrition's financial performance and the factors contributing to that, and the statements attributed to him were not highly specific statements about Nutrition's intersegment transactions that would give rise to an inference that Luthar had knowledge about the details of those transactions or related accounting practices. *Azar v. Grubhub* is similarly inapplicable. 2021 WL 4077327 (N.D. Ill. Sept. 7, 2021). In *Grubhub*, the defendants made specific statements about their ability to "monitor diner quality and analyze trends" while actively concealing information known at the time about a decrease in diner quality and other information that undermined their statements that their strategy was otherwise successful. *Id*. at *5-6. Again, Plaintiffs do not attribute any statements with this level of specificity to Luthar or otherwise plead facts that would suggest that Luthar had contemporaneous access to information that would have informed him that his statements were false when he made them.

### 3. Luthar's Signature on SEC Filings Does Not Support a Strong Inference of Scienter

Plaintiffs cannot sustain a strong inference of scienter by pointing to financial statements signed by Luthar. Their reliance on *Tellabs* and *Atlas Air* fail because as Plaintiffs' own citations indicate, the requisite scienter exists when defendants "knew or had access to information suggesting that their public statements were materially inaccurate" or "ignore[d] reasonably available data" that would have indicated the falsity of the statements. (Opp. at 35.) Plaintiffs have failed to allege that Luthar knew or had access to information demonstrating the falsity of the SEC

documents that he signed. To support their argument that Luthar should have known the statements were false at the time they were made, Plaintiffs claim that "ADM admitted that its internal records showed Nutrition profits were materially overstated" (Opp. at 36), but this is a vast overstatement of ADM's public statement. ADM has never stated that its ***contemporaneous internal records*** showed that Nutrition's profits were overstated, and there is no allegation that ***Luthar*** would have had access to those records even if they did exist. This is unlike the defendants in *Kraft* who admitted that employees "intentionally manipulat[ed] the timing of rebates . . . in order to 'influence the achievement of internal financial targets.'" *Hendrick v. Kraft Heinz Co.*, 2021 WL 3566602, at \*12–13 (N.D. Ill. Aug. 11, 2021). There are no such admissions from ADM, and Plaintiffs have no other basis for alleging that Luthar knowingly made misrepresentations when signing SOX certifications.

### 4. The Core Operations Doctrine Is Inapplicable

As explained in the ADM Motion and the ADM Reply (ECF No. 80, at 14-15; ECF No. 92, at 4-5), the core operations theory peddled by Plaintiffs fails to support a strong inference of scienter because the Nutrition intersegment sales at issue were not a significant part of ADM's financial picture, and therefore, are not subject to the core operations doctrine. In an effort to shoehorn the facts into the core operations doctrine, Plaintiffs rely upon cases with companies in completely different circumstances than ADM. For example, in *In re CenturyLink* the alleged fraud related to the "historical core of CenturyLink's business" that "accounted for more than one-third of its revenue." *In re CenturyLink Sales Pracs. & Sec. Litig.*, 403 F. Supp. 3d 712, 721, 731 (D. Minn. 2019). In contrast, Plaintiffs acknowledge that "ADM's historical business has been driven by two segments: (i) Ag Services and Oilseeds ("ASO"), and (ii) Carbohydrate Solutions ("Carb Solutions")." (Compl. ¶ 32.) Plaintiffs do not allege any facts that support their conclusion that the Nutrition segment ever usurped ASO or Carb Solutions in order to become the core of

6

ADM's business. In fact, the Nutrition segment only "reach[ed] as high as 17% of the Company's total operating profits," nowhere near as staggering or impactful as the one-third alleged in *CenturyLink*. (Compl. ¶ 62.) Similarly, the court in *Tellabs III* found it was "exceedingly unlikely" that executive management did not know their statements were misleading regarding Tellabs' "most important products," likening them to being as important as Windows XP is to Microsoft. *Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F. 3d 702, 709 (7th Cir. 2008). There are no plausible allegations that a segment that has been a part of ADM for less than a decade could be as important and central to ADM's business as the examples cited to by Plaintiffs.[3] Even if the Nutrition segment was a core operation, Plaintiffs still fail to plead any facts to show that Luthar knew or should have known that GAAP or internal accounting policies were violated. There are no facts beyond Luthar generally serving as the CFO to allow the Court to infer that Luthar was "intimately familiar" with Nutrition's accounting processes. *In re Baxter Int'l Inc. Sec. Litig.*, 2021 WL 100457, at *12 (N.D. Ill. Jan. 12, 2021). Based on the facts alleged by Plaintiffs, "it is not reasonable for the Court to impute knowledge of everything that occurs at [ADM's] corporate headquarters (or, specifically, in [Nutrition])" to Luthar. *Id.*

### 5. Plaintiffs' False Assertions Relating to Luthar's Departure Must Be Rejected

Plaintiffs make verifiably false assertions that Luthar was "terminated" by ADM. (Opp. at 1, 42-43.) These assertions are belied by the very public documents Plaintiffs rely on, which clearly state that Luthar resigned and entered into a transition agreement for multiple months. (*See*

---

[3] Plaintiffs' reliance on *In re Ulta* to support their core operations theory is unsuccessful. The plaintiffs there alleged that Ulta failed to disclose that its selling, general, and administrative expenses and its merchandise inventory levels had risen sharply right before an IPO, causing plaintiffs to purchase shares at inflated prices. 604 F. Supp. 2d 1188 (N.D. Ill. 2009). Since Ulta's business was arguably solely focused on these two areas, the core operations doctrine was aptly applied. Plaintiffs make no effort to make a similar argument as to ADM and the Nutrition segment.

ECF No. 86.) Plaintiffs' reference to the provision in the transition agreement prohibiting Luthar from returning to the workplace "in the same manner as applied immediately prior to the Transition Date" is completely irrelevant. The very nature of the agreement demonstrates that he was transitioning into a different, non-executive position. As such, he obviously would not be returning to the workplace "in the same manner" as before.

Further, Plaintiffs fail to convincingly distinguish *Cyberonics*. No matter how many times the Plaintiffs mischaracterize the facts, their argument that Luthar or any other executive was "terminated" or "forced-out" is inherently flawed because "there is no evidence in the record that the resignations were indeed forced." *In re Cyberonics Inc. Sec. Litig.*, 523 F. Supp. 2d 547, 553–554 (S.D. Tex. 2007). Indeed, Plaintiffs make no effort to acknowledge, let alone distinguish, *In re Campbell Soup Co. Sec. Litig.*, which states that plaintiffs must provide "allegations which cogently suggest that the resignations resulted from the relevant executives' knowing or reckless involvement in a fraud." 2022 WL 6961796, at *9 (D.N.J. Oct. 11, 2022). Plaintiffs have not satisfied this burden and should not be permitted to add to the scienter puzzle with unsubstantiated characterizations of Luthar's departure from ADM. As such, Luthar's departure from ADM does not establish the requisite scienter.

**B.** **The Two Specific Statements Attributed to Luthar Are Not Actionable**

As noted in Luthar's Motion to Dismiss, Plaintiffs only attribute two statements specifically to Luthar, and neither of them is actionable. (*See* ECF No. 84, at 9-10.) A violation of Section 10(b) and Rule 10b-5 premised on misstatements cannot occur unless an alleged material misstatement was false at the time it was made. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Cos., Inc.*, 75 F.3d 801, 812–13 (2d Cir. 1996). Plaintiffs fail to rebut the argument that Luthar's statements about ADM "driving synergies across the various businesses that Nutrition is capitalized on, to drive earning growth" is anything more than non-

8

actionable puffery. *See, e.g., In re Newell Rubbermaid Inc. Sec. Litig.*, No. 99 C 6853, 2000 WL 1705279, at \*7 (N.D. Ill. Nov. 14, 2000) (noting that references to synergies were "puffery"); *Searls v. Glasser*, 64 F.3d 1061, 1066 (7th Cir. 1995) (finding statements relating to "growth" were "puffery" rather than material statements of fact).  Instead, Plaintiffs make the argument that determining whether statements about synergies and growth are puffery is context-specific. (Opp. at 23.)  However, they make no attempt to explain why the context in this case makes Luthar's statement anything more than puffery. At best, Plaintiffs note that the cases cited by Luthar were focused on predicted or aspirational beliefs of growth.  Yet, that is exactly what Luthar's statement is, as his statement concluded by predicting earnings growth "from about $250 million . . . *to what we would anticipate close to $700 million this year.*"

As for the second statement attributed to Luthar, Plaintiffs have failed to show a nexus between the statement Luthar made about "smart pricing and active supply collaboration" being one of the drivers of Nutrition's profits for the first quarter of 2022 and the alleged omission. Plaintiffs claim that when this statement was made, Luthar concealed "that a material contributor was the undisclosed accounting scheme that violated GAAP and stated Company policy." (Opp. at 18.)  But Plaintiffs' selective citation of Luthar's quote omits key facts.  During the earnings call for the first quarter of 2022, Luthar explained that the Nutrition segment "anticipated inflationary cost pressures and supply disruptions." (Ex. 1 at 9.)[4]  He then noted: "[h]owever, with the smart pricing and active supply collaboration with our AS&O and Carb Solutions teams, we manage these very well across all the Nutrition businesses." (*Id.*)  Rather than there being a nexus between Luthar's statement and the alleged omission, Luthar's statement was clearly addressing

---

[4]  Attached as Exhibit 1 is ADM's transcript for the Q1 2022 earnings call, available publicly at investors.adm.com.  The Court "may examine documents that a defendant attached to a motion to dismiss . . . if they are referred to in plaintiff's complaint and are central to her claim." *Taubenfeld v. Career Educ. Corp.*, No. 03 C 8884, 2005 WL 350339, at \*2 (N.D. Ill. Feb. 11, 2005).

cost pressures and supply disruptions.  Plaintiffs have failed to demonstrate that the two specific statements attributed to Luthar are actionable in any way under Section 10(b).

### C.     Plaintiffs' Section 20(a) Claim Fails

As asserted in Luthar's Motion to Dismiss, since Plaintiffs fail to state a primary securities fraud claim against ADM, their Section 20(a) claim against Luthar fails.  (*See* ECF No. 84, at 10.)

## III.    CONCLUSION

For the foregoing reasons and the reasons set forth in his Motion to Dismiss, Luthar respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice.

Dated: October 23, 2024

Respectfully submitted,

*/s/   Junaid A. Zubairi*

VEDDER PRICE P.C.
Junaid A. Zubairi
Rachel T. Copenhaver
Thomas P. Cimino, Jr.
Nusra Ismail
222 N. LaSalle St, Ste. 2400
Chicago, Illinois 60601
T: (312) 609-7500
F: (312) 609-5005
jzubairi@vedderprice.com
rcopenhaver@vedderprice.com
tcimino@vedderprice.com
nismail@vedderprice.com

*Attorneys for Defendant Vikram Luthar*

10