**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RAYMOND CHOW, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No. 1:24-cv-00634 District Judge Thomas M. Durkin |
| ARCHER-DANIELS-MIDLAND COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT**
**OF DEFENDANT VINCENT MACCIOCCHI'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................................ii

    I.    Preliminary Statement..................................................................................................... 1

    II.    Plaintiffs' "Grab Bag" of Scienter Arguments Does Not Create a Strong Inference........... 1

    III.    Mr. Macciocchi's Statements Are Not Actionable ............................................................. 7

CONCLUSION............................................................................................................................. 10

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
  8 F.4th 592 (7th Cir. 2021) ............................................................................................... 10

*Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) ............................................................................................... 8

*Cozzarelli v. Inspire Pharms. Inc.*,
  549 F.3d 618 (4th Cir. 2008) ............................................................................................... 7

*Davis v. SPSS, Inc.*,
  385 F. Supp. 2d 697 (N.D. Ill. 2005) ................................................................................... 3

*Earley v. City of Chicago*,
  2024 WL 774863 (N.D. Ill. Feb. 26, 2024) .......................................................................... 6

*Gavin/Solmonese LLC. v. Kunkel*,
  2016 WL 3612123 (N.D. Ill. July 6, 2016) ........................................................................... 6

*Higginbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) ............................................................................................ 4, 6

*Holwill v. AbbVie Inc.*,
  2020 WL 5235005 (N.D. Ill. Sept. 1, 2020) ..................................................................... 4, 10

*In re Baxter Int'l Inc. Sec. Litig.*,
  No. 19 C 7786, 2021 WL 100457 (N.D. Ill. Jan. 12, 2021*)* ........................................... 4, 5, 6

*In re Bally Total Fitness Sec. Litig.*,
  No. 04 C 3530, 2006 WL 3714708 (N.D. Ill. July 12, 2006) ................................................ 3

*In re Ceridian Corp. Sec. Litig.*,
  542 F.3d 240 (8th Cir. 2008) ............................................................................................... 7

*In re Fifth Third Bancorp Derivative Litig.*,
  No. 20 C 4115, 2023 WL 2429009 (N.D. Ill. Mar. 8, 2023) ................................................. 7

*Last Atlantis Cap. LLC v. AGS Specialist Partners*,
  533 F. Supp. 2d 828 (N.D. Ill. 2008) .................................................................................... 2

*Makor Issues & Rts., Ltd. v. Tellabs, Inc.*,
  437 F.3d 588, 595 (7th Cir. 2006)………………………………………………………………8

ii

*New England Speed Factory, LLC v. Snap-On Equip.*, LLC,
   430 F. Supp. 3d 377 (N.D. Ill. 2019) .................................................................................. 6

*Philips N. Am. LLC v. Glob. Med. Imaging, LLC*,
   No. 21-CV-3615, 2024 WL 4240920 (N.D. Ill. Sept. 19, 2024) .................................................. 2

*Allison v. Oak St. Health, Inc.*,
   2023 WL 1928119 (N.D. Ill. Feb. 10, 2023) .......................................................................... 4, 10

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings*, Inc.,
   673 F. Supp. 2d 718 (S.D. Ind. 2009) .................................................................................. 1

*Premier Cap. Mgmt., L.L.C. v. Cohen*,
   2003 WL 21960357 (N.D. Ill. Aug. 15, 2003)............................................................................ 6

*Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*,
   679 F.3d 952 (7th Cir. 2012)............................................................................................. 2, 3

*W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*,
   495 F. Supp. 3d 622 (N.D. Ill. 2020) .................................................................................. 8, 9

**Statutes**

15 U.S.C. § 78u–4(b)(1) ......................................................................................................... 8

**Rules**

Federal Rule of Civil Procedure 9(b)……………………………………………………………...6, 7

Federal Rule of Civil Procedure 12(b)(6) ……………………………………………………...9

## I.    Preliminary Statement

Despite the length of their brief and the number of arguments presented, Plaintiffs cannot avoid the inescapable fact that their allegations of scienter rise and fall with a single premise: that because Mr. Macciocchi was President of the Nutrition division, he "must have known" about the intersegment transfers at issue in this litigation, and therefore must have known that certain public statements were false or misleading.  But serving as president of a business and making statements about that business do not amount to knowledge of every transaction that the business has entered into—let alone knowledge that certain transactions were not recorded at amounts approximating market in accordance with relevant accounting methodologies and GAAP.  Courts in the Seventh Circuit acknowledge this principle and routinely reject allegations of scienter premised on an individual's senior position, as such allegations "'prove nothing about fraud or knowledge thereof,'" and are "'exactly the type of generalized allegations the court must disregard under the PSLRA.'" *Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings*, Inc., 673 F. Supp. 2d 718, 747 (S.D. Ind. 2009).

Apart from not being able to establish scienter, Plaintiffs also attempt to impose securities fraud liability on Mr. Macciocchi for general statements about Nutrition's growth and the sources of that growth.  Such statements, however, are too vague and non-specific to be material to any reasonable investor's investment decision, and are not actionable for fraud.  For other statements, Plaintiffs fail to establish that the statements were false or misleading in the first place.

The Complaint should be dismissed in its entirety against Mr. Macciocchi and the other Defendants for the reasons stated herein and in Mr. Macciocchi's opening brief.

## II.    Plaintiffs' "Grab Bag" of Scienter Arguments Does Not Create a Strong Inference

Despite spanning over 50 pages and presenting a "grab bag" of different scienter

1

arguments, Plaintiffs fail to create a strong inference of scienter as to the Company or any Individual Defendant, including Mr. Macciocchi.

Tellingly, point one of Plaintiffs' scienter section is a discussion of motive (Opp. at 29), a weak indicator of fraudulent intent that courts routinely recognize as insufficient, without more, to establish a strong inference of scienter.[1]  *See, e.g.*, *Last Atlantis Cap. LLC v. AGS Specialist Partners*, 533 F. Supp. 2d 828, 831 (N.D. Ill. 2008) ("general allegations concerning defendants' financial motive and opportunity to mishandle plaintiffs' trades—alone—are not enough to establish a strong showing of scienter.").  Realizing this deficiency pervades this and other arguments, Plaintiffs promise more substance, and repeatedly ask the Court to consider the "totality of allegations" in ruling on the Motions to Dismiss.  (Opp. at 26-27.)  But simply cobbling together a series of weak, unsupported arguments does not create a single, stronger argument, let alone a strong inference of scienter.  *See Philips N. Am. LLC v. Glob. Med. Imaging, LLC*, No. 21-CV-3615, 2024 WL 4240920, at \*10 (N.D. Ill. Sept. 19, 2024) ("sometimes a collection of bad arguments simply adds up to one big bad argument.").  Plaintiffs must come forward with specific allegations of Mr. Macciocchi's state of mind *at the time each statement* in the Complaint was made.  They have not done so.

Turning to the merits of Plaintiffs' motive arguments, those arguments can be distilled down to the unremarkable assertion that ADM provided Mr. Macciocchi, as President of Nutrition, with financial incentives to improve Nutrition's performance and increase its operating profits.  These generic allegations, however, cannot be used to establish scienter, as a similar assertion "could be made about every firm in the world." *Plumbers & Pipefitters Loc. Union 719*

---

[1]      "Opp." refers to Plaintiffs' opposition brief.  "Macciocchi Motion" refers to the opening brief for Mr. Macciocchi's Motion to Dismiss.  "ADM Motion" refers to the Company and Juan Luciano's opening brief for their Motion to Dismiss.  "ADM Reply" refers to the Company and Juan Luciano's reply brief.

2

*Pension Fund v. Zimmer Holdings, Inc.*, 679 F.3d 952, 956 (7th Cir. 2012).  For this reason, courts routinely reject such allegations as "too common among corporations and their officers to be considered evidence of scienter." *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2006 WL 3714708, at *9 (N.D. Ill. July 12, 2006).

Nor can Plaintiffs manufacture a claim of securities fraud from Mr. Macciocchi selling some (but not all) of his ADM stock during the Class Period.  Not only did Mr. Macciocchi sell a modest amount of stock in relation to his entire ADM holdings during the Class Period, his ownership interest in ADM increased during the Class Period, and he continues to hold ADM stock today, but Mr. Macciocchi can hardly be faulted for declining to sell ADM stock at a loss or insubstantial gain before the Class Period.  Buying low, holding, and selling high is a nearly universal practice—essentially "stock ownership 101"—employed by everyone from corporate executives (paid in company stock) to retail investors, yet Plaintiffs ask the Court to treat this as evidence of securities fraud.  Because "most corporate executives would be subject to such allegations," thus rendering the "heightened pleading requirements for these claims . . . meaningless," Plaintiffs' invitation must be declined.  *Davis v. SPSS, Inc.*, 385 F. Supp. 2d 697, 714 (N.D. Ill. 2005).[2]

As for Plaintiffs' remaining scienter arguments, Plaintiffs fall back to their central position that Defendants "must have known" of the alleged fraud due to their high-ranking corporate positions.  Plaintiffs admit as much when they tout their own decision not to "indiscriminately sue individuals or lower-level employees without any role in monitoring and

---

[2]    That Mr. Macciocchi eventually came into compliance with ADM's corporate policy that "each member of senior management . . . maintain a significant ownership position in shares of ADM's common stock" before the Class Period began, does not mean that the policy did not impact his decision to not sell stock from 2014 (when he joined ADM) and onward.  (*See* Opp. at 33 n.16.)

3

reporting on the Nutrition segment's operating results." (Opp. at 34.) While Mr. Macciocchi appreciates Plaintiffs' decision not to "indiscriminately" sue ADM employees, suing executives solely because of their "role" at the Company is not much better, and such allegations cannot be used to establish scienter. Indeed, as stated in Mr. Macciocchi and the Company's opening briefs, (*see* Macciocchi Motion at 5-7; ADM Motion at 12), it is settled law in the Seventh Circuit that a defendant's high-level corporate position cannot serve as an end-around of the PSLRA's requirement that scienter be pleaded with specificity. *See, e.g.*, *Societe Generale Sec. Servs., GbmH v. Caterpillar, Inc.*, No. 17 CV 1713, 2018 WL 4616356, at *8 (N.D. Ill. Sept. 26, 2018) ("The individual defendants' senior positions within Caterpillar also do not suggest scienter without additional support from internal documents or communications.").

Nevertheless, Plaintiffs' scienter allegations do just that, relying principally on Mr. Macciocchi's position as President of Nutrition, which (unsurprisingly) required him to monitor its performance, (Opp. at 34-35), and make public statements about the business, (Opp. at 35-36). That Mr. Macciocchi performed these duties ably and effectively in no way establishes that he knew of the specific subset of intersegment sales that were the subject of ADM's corrections, or that he knew that those sales did not approximate "market" in accordance with relevant accounting methodologies and GAAP. *See Higginbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 758 (7th Cir. 2007) ("[T]here is a big difference between knowing about the reports . . . and knowing that the reports are false."); *In re Baxter Int'l Inc. Sec. Litig.*, No. 19 C 7786, 2021 WL 100457, at *14 (N.D. Ill. Jan. 12, 2021) (explaining that at most, the court could infer defendants' knowledge that a "core" accounting convention was employed, but not that "[the convention] violated GAAP or that there was a risk this was the case").[3] Plaintiffs gloss over the

---

[3] Plaintiffs' reliance on *Allison v. Oak St. Health, Inc.*, 2023 WL 1928119, at *10 (N.D. Ill. Feb. 10, 2023) and *Holwill v. AbbVie Inc.*, 2020 WL 5235005, at *5 (N.D. Ill. Sept. 1, 2020) for the proposition

4

fact that determining "market" for any intersegment sale requires an analysis of what a hypothetical third party would pay in an arm's length transaction, taking into account supply and demand and historical price data, among other factors. Plaintiffs have not alleged that Mr. Macciocchi conducted such analysis for the intersegment transfers at issue, that he had accounting experience that would enable him to do so in accordance with GAAP, or that he was otherwise made aware of the results of such analysis. These scienter arguments thus fail.

As for Plaintiffs' core-operations argument, that argument is premised on the incorrect and unsupported assumption that because the Nutrition business was an important part of ADM, the Individual Defendants must have known about virtually every aspect of Nutrition, including that Nutrition was involved in several intersegment transfers that were not recorded at amounts approximating market. As explained in Mr. Macciocchi's opening brief, however, courts have found that accounting issues are typically outside of a business's core operations; for them to be included, they must concern a "significant part" of a company's total financial picture. (Macciocchi Motion at 7-8 (citing *Baxter*, 2021 WL 100457, at *13).) Here, there are no allegations that the discrete and since-corrected accounting errors concerned a "significant part" of ADM's, or even Nutrition's, overall business. Rather, the accounting errors were immaterial, had zero impact on the Company's consolidated balance sheets, and only a marginal impact (2.9%-10.2%) on Nutrition's reported profits. And even if the core-operations doctrine applied to some of these (immaterial and since-corrected) accounting errors, the doctrine would do no more than establish that Mr. Macciocchi may have known about some of the affected intersegment sales; it would *not* establish that he knew the prices for those transactions did not

---

that Defendants' statements constitute evidence of scienter is misplaced. Those decisions concerned specific statements regarding a particular practice or initiative. By contrast, Mr. Macciocchi did not make any public statements regarding the accounting policy applicable to intersegment sales. (*See* ADM Reply at 3-4.)

reflect "market," as that term is understood from an accounting and GAAP perspective; or that the transactions could lead to financial reporting that was not compliant with GAAP; or that there was a risk of those things occurring. *See Higginbotham*, 495 F.3d at 758; *see also Baxter*, 2021 WL 100457, at \*14.

Regarding Mr. Macciocchi's retirement, Plaintiffs ask the Court to ignore Mr. Macciocchi's reasoned explanation for his leaving the Company—namely, that Mr. Macciocchi was engaged in discussions regarding another opportunity months before the SEC's voluntary request, that he decided to pursue that opportunity, and that he maintains a good relationship with and is still an investor in ADM today—in favor of Plaintiffs' own litigation-driven conclusion—*i.e.*, that he was fired as a result of the alleged accounting fraud. While it is true that the Court must generally accept the allegations in a well-pleaded complaint, the Court need not accept conclusory factual allegations. *See Earley v. City of Chicago*, No. 23 C 801, 2024 WL 774863, at \*3 (N.D. Ill. Feb. 26, 2024). This is true of any motion to dismiss, but is especially relevant in a securities fraud action where Rule 9(b) and the PSLRA's heightened pleading standards apply. *Gavin/Solmonese LLC. v. Kunkel*, No. 16-CV-1086, 2016 WL 3612123, at \*9 (N.D. Ill. July 6, 2016) ("mere conclusory allegations 'do not satisfy the requirements of Rule 9(b) and subject the pleader to dismissal'"); *New England Speed Factory, LLC v. Snap-On Equip.*, LLC, 430 F. Supp. 3d 377, 380 (N.D. Ill. 2019) ("At best, the plaintiff's conclusory allegations are sketchy, yet, under Rule 9(b), sketchy is not good enough"); *Premier Cap. Mgmt., L.L.C. v. Cohen*, No. 02 C 5368, 2003 WL 21960357, at \*5 (N.D. Ill. Aug. 15, 2003) ("Conclusory allegations that defendants acted with knowledge that the representations were false and misleading do not satisfy the PSLRA's pleading requirements"). Plaintiffs' theory that ADM fired Mr. Macciocchi and then, for reasons unknown and unaddressed by

6

Plaintiffs, chose to characterize his departure as a retirement, is nothing more than sheer speculation that the Court should reject.

As for the alleged government investigation, Plaintiffs would have the Court accept the mere existence of an alleged investigation, without any allegations that the government has made findings in relation to that investigation, as evidence that the Individual Defendants acted with scienter. Multiple courts, however, have found that the existence of an "an investigation by itself without adverse findings does not support an inference of scienter." *See, e.g.*, *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 249-50 (8th Cir. 2008) (holding that an SEC investigation with no adverse findings did not show scienter); *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 628 n.2 (4th Cir. 2008) (finding that an ongoing SEC investigation alone is "too speculative to add much, if anything, to an inference of scienter"). And while courts in the Seventh Circuit have said that such investigations may "reinforce" allegations of scienter—that is, provide further support once strong evidence of scienter has already been put forth—relying on the existence of an investigation alone "amounts to improperly inferring fraud by hindsight." *In re Fifth Third Bancorp Derivative Litig.*, No. 20 C 4115, 2023 WL 2429009, at *20 (N.D. Ill. Mar. 8, 2023). Because, for the reasons discussed above, Plaintiffs have failed to put forth a legitimate theory of scienter, there is nothing for Plaintiffs to "reinforce," and this secondary scienter argument fails.

### III. Mr. Macciocchi's Statements Are Not Actionable

In an effort to avoid Rule 9(b) and the PSLRA's stringent pleading requirements, Plaintiffs claim that if they are able to establish one false and misleading statement, that the "falsity element is therefore established and Defendants' motion on that ground should be denied," without ruling on the remaining statements. (Opp. at 13-14.) Plaintiffs' statement is contrary to black-letter law and the PSLRA. As stated by the Seventh Circuit, a securities fraud

7

complaint must "*specify each statement* that is allegedly misleading, the reasons why it is so, and, if based on information and belief, what specific facts support that information and belief." *See Makor Issues & Rts., Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 595 (7th Cir. 2006), *rev'd on other grounds*, 551 U.S. 308 (2007) (citing 15 U.S.C. § 78u–4(b)(1)) (emphasis added).  Plaintiffs have not done so, and their alternative reading of the PSLRA's requirements should be rejected.

Next, Plaintiffs give short shrift to the fact that multiple statements made by Mr. Macciocchi, including, for instance, his statements that Nutrition has a "*very good organic growth story*," (*Id.* ¶ 137(a)), and that "*we are predicated on organic growth*," (*Id.* ¶ 141(b)), are quintessential examples of puffery, as they are not sufficiently definite and specific to be material to a reasonable investor's investment decision.  (Macciocchi Motion at 11-13.) Contrary to Plaintiffs' assertions, (*see* Opp. at 21-22), the *sine qua non* of puffery is that the statement is sufficiently non-specific—not the importance of the subject matter of the statement, or that disclosure of certain information after the statement was made led to a drop in the stock price.[4]  (*See* ADM Reply at 11-13 (citing *W. Palm Beach Firefighters' Pension Fund v. Conagra Brands, Inc.*, 495 F. Supp. 3d 622, 651-653 (N.D. Ill. 2020)).)  Plaintiffs also argue that it is "premature" for this Court to rule on the puffery issue, but this argument is specious and runs counter to a host of decisions from this and other circuits around the country.  *See, e.g.*, *Conagra* at 651 (citing cases where courts decided materiality as a matter of law at the pleading stage); *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 245 (9th Cir. 1990) ("District courts often resolve whether a statement is puffery when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)").  Accordingly, the statements

---

[4]  As stated in ADM's Reply, the fact that the disclosure of the accounting corrections led to a drop in the stock price does not establish the materiality "*of these particular statements*."  (*See* ADM Reply at 12 (citing *Conagra*, 495 F. Supp. 3d at 653) (emphasis added).)

identified as puffery in Mr. Macciocchi's opening brief (along with the rest of the Complaint) should be dismissed. (*See* Macciocchi Motion at 11-13.)

Plaintiffs instead focus their Opposition on the argument that the positive statements Mr. Macciocchi made regarding Nutrition's performance during the Class Period had to be accompanied by a disclosure that certain intersegment transfers were not recorded at amounts approximating market. Despite failing to adequately allege that Mr. Macciocchi knew of the intersegment transfers at issue (much less that they did not approximate market), the lack of a simultaneous disclosure does not make Mr. Macciocchi's statements about Nutrition's growth and operating profits false or misleading. For one, the fact that ADM issued corrections regarding certain intersegment transfers does not also mean, for example, that Mr. Macciocchi's statements about Nutrition experiencing organic growth were false. As stated in ADM's opening brief (ADM Motion at 26-27), even accepting that Nutrition experienced *less* growth than reported, that does not mean that Nutrition did not grow organically during the Class Period, and Plaintiffs have not alleged that Nutrition did not grow organically. *See Conagra*, 495 F. Supp. 3d at 645 (dismissing claim that statement about company's "ongoing growth" was misleading because of promotional practices that were harming the growth rate).

Second, Plaintiffs have offered no support for their sweeping theory that any and all positive statements regarding Nutrition's profits and performance needed to be coupled with a simultaneous disclosure of ADM's accounting errors. In order for an omission to be actionable as false or misleading, there needs to be a close nexus between the omitted information and the statement being challenged. (*See* ADM Motion at 24-28.) Here, the cases that Plaintiffs rely on prove this point; they each involve omissions of material information regarding a practice or initiative when the statement at issue was specifically addressing that practice or initiative. *See*

9

*Oak St. Health*, 2023 WL 1928119, at *6 (statements regarding practice of paying insurance agents for referrals actionable for failing to disclose that payment was on a "per-patient basis," which was alleged to be illegal); *AbbVie Inc.*, 2020 WL 5235005, at *3 (statements regarding marketing practices were actionable for failing to disclose kickback scheme relevant to marketing practices).[5] Contrary to these decisions, Plaintiffs' theory—if accepted—would open up every executive to securities fraud liability for making statements about the company's profits and performance whenever the company was also experiencing some difficulty that impacted company profits and performance—even if the impact was immaterial. Because any difficulty a company experiences is bound to have *at least some* impact on profits or performance, it cannot be the law that any statement made thereafter on those general topics amounts to securities fraud. *See City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592, 595 (7th Cir. 2021) ("A corporation need not couple each piece of good news with disclosure of some tangential difficulty."). Accordingly, the Court should reject Plaintiffs' sweeping position.

## CONCLUSION

For the foregoing reasons and the for the reasons stated in Mr. Macciocchi's opening brief, and in any other motions filed by the Defendants, the Complaint should be dismissed with prejudice as to Mr. Macciocchi.

Respectfully submitted,

MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO P.C.

By: */s/ Elkan Abramowitz*
　　 Elkan Abramowitz
　　 Brian A. Jacobs

---

[5] As stated in Mr. Macciocchi's opening brief, Plaintiffs cannot state a claim against Mr. Macciocchi under § 20(a) of the Exchange Act for control liability because Plaintiffs have failed to state a primary securities fraud claim against him. (*See* Macciocchi Motion at 13; ADM Motion at 29.)

Joseph P. Klemme

565 Fifth Avenue
New York, New York 10017
(212) 880-9500 (phone)
(212) 856-9494 (fax)
eabramowitz@maglaw.com

*Attorneys for Defendant*
*Vincent Macciocchi*

11