UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| RAYMOND CHOW, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> ARCHER-DANIELS-MIDLAND COMPANY, et al., <br><br> Defendants. | Case No.  1:24-cv-00634 <br><br> Judge Thomas M. Durkin <br><br> <u>CLASS ACTION</u> |

LEAD PLAINTIFFS' BRIEF REGARDING THE IMPACT OF THE SUPPLEMENT TO THE
COMPLAINT ON DEFENDANTS' MOTIONS TO DISMISS

4896-7167-3363.v1

To sustain Plaintiffs' claim for securities fraud, the Court need only find the inference of scienter is "at least as compelling" as Defendants' competing inference of innocent mistake. *Tellabs, Inc. v. Makor Issues & Rts., Ltd*., 551 U.S. 308, 314 (2007). Plaintiffs have exceeded this standard with facts showing that ADM's six-year accounting scheme could not have occurred by mistake and was directed from the top down because two co-equal segments were donating their profits to a third: Nutrition. *See* ECF 91 at 26-48. The Supplement to Lead Plaintiffs' Complaint for Violations of the Federal Securities Laws (ECF 105) (the "Supplement") boosts the already strong inference of scienter and refutes Defendants' two main arguments in this case: (1) that a "formal restatement of prior period financials . . . did not occur" (ECF 92 at 5); and (2) Plaintiffs' circumstantial allegations of "executive level securities fraud" are insufficient (*id*. at 1).

First, Defendants argued that ADM labeling its restated financials as merely a correction, and not a formal restatement, weighed against scienter. *See, e.g.*, *id.* at 5 (arguing a "formal restatement of prior period financials . . . did not occur here"); ECF 94 at 3 (distinguishing case because "[o]ne glaring fact in *Thomas* is the defendant company had issued a restatement of its financial results, unlike ADM which did not issue a restatement"). However, after discussions with the SEC, ADM formally restated its 2018 through 2023 results, mooting this scienter argument (and Defendants' materiality arguments). Supplement, Supp. ¶¶2-6.[1]

Second, Plaintiffs established a strong inference of scienter as to each Defendant because, among other allegations, Nutrition's profitability was the most important driver of ADM's stock price, the scheme lasted six years and involved simple accounting, each Individual Defendant

---

[1] Defendants suggested a correction rather than restatement negated materiality. *See* ECF 80 at 6; ECF 82 at 1. However, ADM's restatement confirmed Nutrition profits were inflated every year and in seven of eight quarters in 2022 and 2023, by as much as 24.8%. Supplement, Supp. ¶¶6-7. Although ADM disclosed Nutrition's 3Q22 profits were understated by 1%, those results were still materially misleading for failing to disclose the accounting scheme and ineffective internal controls. *See* ECF 67, ¶¶111, 115.

4896-7167-3363.v1

monitored and spoke about or signed the financials regarding Nutrition profits and the accounting policy, each financially benefited through Nutrition-based compensation and large and suspicious stock sales, and nearly all were terminated or suspiciously departed amidst federal investigations. *See generally* ECF 91 at 26-48. Defendants countered that there were no direct "allegations suggesting that any of the Individual Defendants had involvement" and the more plausible inference was the errors were a "mistake[]" because assessing market prices was purportedly complex. ECF 92 at 2, 13-14; *see also* ECF 80 at 2 (similar); ECF 93 at 3 (similar); ECF 95 at 3 (similar). The claim that determining the market prices of their products (*i.e.* the prices charged to other customers) was complex, rather than simple, was both unsupported and unpersuasive.

Moreover, the Supplement further supports scienter and refutes Defendants' claim of innocent mistake. Specifically, journalists reporting on the DOJ investigation of "securities fraud" by ADM and its senior executives – who interviewed "15 current and former ADM employees familiar with the transactions under scrutiny," spoke "with four other individuals with knowledge of the [DOJ] probe," and reviewed "hundreds of pages of documents" – reported:

- "Several ADM employees told Reuters that senior executives pressured them to . . . help Nutrition mask costs or meet profit forecasts" and "[t]wo of the employees said they were told to 'pull levers' so that Nutrition could reach growth targets that ADM executives had set, but which the employees themselves saw as unrealistic."

- A 2019 internal email "shows that ADM's two other corporate divisions were 'asked to donate to Nutrition' by offering it millions of dollars in cost breaks."

- An ADM manager said "'[i]t's exhausting'" and "'[y]ou're working feverishly just to basically spin things to hit the number.'"

- "As early as 2019 . . . managers of the other two units [ASO and Carb Solutions] faced pressure to subsidize Nutrition. In September of that year, Rachel Hudson, then [CFO] of [Carb Solutions], emailed . . . that she had spoken with Dan Nisser, her counterpart at [ASO], because both had been asked to 'donate to Nutrition.'"

- "One employee familiar with intersegment transactions told Reuters" that "some Nutrition products were eroding profits" and that "ADM executives found

- 2 -

workarounds, including one transaction in 2021 through which the company transferred about $20 million from the oilseeds division to Nutrition."

- According to two other employees and documents reviewed by *Reuters*, "the carbohydrates division was ramping up discounts for Nutrition on some products," that "helped Nutrition's metrics for 2021."

- The federal investigation has looked at "whether the oilseeds unit cut favorable deals to nutrition for 'white flake,'" and "[s]ome oilseed employees were so concerned . . . they began to refer to the transactions as 'white flakegate.'"

- "[F]our people who worked with Luciano told *Reuters* that in meetings he repeatedly mentioned that stock of companies specializing in higher-value food products traded at a premium to that of companies focused on agricultural commodities."

Supplement, Supp. ¶¶8-12; *see also, e.g.*, *In re JPMorgan Chase & Co. Sec. Litig.*, 2007 WL 4531794, at \*5 (N.D. Ill. Dec. 18, 2007) (citing cases and finding allegations based on an article published following "an independent investigation" that included "interview[s] [of] several individuals with personal knowledge" and reported "details of the deal" were reliable and "satisfy the heightened pleading requirements under the PSLRA").

In short, the Supplement further demonstrates that the errors were not mistakes by lower-level employees, but were deliberate manipulations directed from the top – *i.e.*, Defendants. *See Makor Issues & Rts., Ltd. v. Tellabs Inc.*, 513 F.3d 702, 709-11 (7th Cir. 2008) (finding scienter inference more compelling where inference that executives were simply fed misinformation was "plausible" but "exceedingly unlikely").[2] Thus, the motions to dismiss should be denied.

DATED:  January 30, 2025                                ROBBINS GELLER RUDMAN
                                                                        & DOWD LLP


                                                                        /s/ James E. Barz
                                                                        JAMES E. BARZ

---

[2]      The Supplement also adds a loss causation disclosure and expands the Class Period. *See* Supplement, Supp. ¶¶3-4, 13-18.  Defendants did not seek dismissal on loss causation grounds, so those allegations would have no "impact . . . on the pending motions to dismiss."  ECF 103; *see also*, *e.g.*, *Hedick v. Kraft Heinz Co.*, 2021 WL 3566602, at \*16 (N.D. Ill. Aug. 11, 2021) (holding that "loss causation may be pled on a theory of partial disclosures" and "ought not place unrealistic burdens on the plaintiff at the initial pleading stage").

- 3 -

JAMES E. BARZ (IL Bar # 6255605)
FRANK A. RICHTER (IL Bar # 6310011)
CAMERAN M. GILLIAM (IL Bar # 6332723)
MICHAEL J. STRAMAGLIA (IL Bar # 6336821)
200 South Wacker Drive, 31st Floor
Chicago, IL  60606
Telephone:  630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
cgilliam@rgrdlaw.com
mstramaglia@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER D. STEWART
JENNIFER N. CARINGAL
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
cstewart@rgrdlaw.com
jcaringal@rgrdlaw.com

MOTLEY RICE LLC
GREGG S. LEVIN
CHRISTOPHER F. MORIARTY
MEGHAN S.B. OLIVER
CHARLOTTE E. LOPER
28 Bridgeside Blvd.
Mount Pleasant, SC  29464
Telephone:  843/216-9000
glevin@motleyrice.com
cmoriarty@motleyrice.com
moliver@motleyrice.com
cloper@motleyrice.com

MOTLEY RICE LLC
WILLIAM H. NARWOLD
20 Church Street, 17th Floor
Hartford, CT  06103
Telephone:  860/882-1676
860/882-1682 (fax)
bnarwold@motleyrice.com

Lead Counsel for Lead Plaintiffs

- 4 -

- 5 -

O'DONOGHUE & O'DONOGHUE LLP
JOHN M. McINTIRE
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC  20015
Telephone:  202/362-0041
jmcintire@odonoghuelaw.com

Additional Counsel

- 5 -