**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RAYMOND CHOW, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>ARCHER-DANIELS-MIDLAND COMPANY, et al.,<br><br>        Defendants. | Case No. 1:24-cv-00634<br>Judge Thomas M. Durkin<br><br>Hon. Keri L. Holleb Hotaling<br><br><u>CLASS ACTION</u> |

**LEAD PLAINTIFFS' MOTION TO COMPEL**
**THE PRODUCTION OF DOCUMENTS PRODUCED TO SEC AND DOJ**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... iii

I. INTRODUCTION ..................................................................................................1

II. FACTUAL BACKGROUND.................................................................................2

    A. The Accounting Fraud ..............................................................................2

    B. The SEC and DOJ investigations...............................................................3

    C. Plaintiffs' First Set of Requests for Production .......................................4

III. ADM SHOULD PRODUCE THE REQUESTED DOCUMENTS ...................................6

    A. The requests seek relevant information and ADM has not shown that they are overbroad or disproportionate to the needs of the case.....................................6

    B. ADM's "cloned discovery" objection is meritless...................................10

        1. There is significant factual and legal overlap with the investigations. ...............................................................................11

        2. Production of the investigation documents will make document discovery more efficient and advance the litigation. ...............................12

        3. ADM's production of just 1% of the Requested Documents by the substantial completion deadline further supports the requested relief. ..................................................................................15

IV. CONCLUSION..................................................................................................15

# TABLE OF AUTHORITIES

### CASES

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*,
  2022 WL 17339035 (E.D. Pa. Nov. 30, 2022) ........................................................................ 12

*Costa v. Wright Med. Tech., Inc.*,
  2019 WL 108884 (D. Mass. Jan. 4, 2019) ............................................................................. 13

*DR Distribs., LLC v. 21 Century Smoking, Inc.*,
  513 F. Supp. 3d 839 (N.D. Ill. 2021) .................................................................................... 15

*Epic Games, Inc. v. Apple Inc.*,
  2024 U.S. Dist. LEXIS 175943 (N.D. Cal. Sept. 27, 2024) ................................................. 15

*Feenix Payment Sys., LLC v. Steel Cap. Mgmt., LLC*,
  2021 WL 3862008 (D. Del. Aug. 24, 2021) .......................................................................... 15

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  2017 WL 10775410 (S.D. Fla. Mar. 14, 2017) ..................................................................... 12

*Forth v. Walgreen Co.*,
  2019 WL 10255628, (N.D. Ill. July 10, 2019) ...................................................................... 12

*Illinois ex rel. Raoul v. Monsanto Co., Solutia Inc.*,
  345 F.R.D. 459 (N.D. Ill. 2023) ............................................................................................. 6

*In re Atl. Fin. Fed. Sec. Litig.*,
  1991 WL 153075 (E.D. Pa. Aug. 6, 1991) .............................................................................. 8

*In re New Century*,
  2009 WL 9568860 (C.D. Cal. Jul. 8, 2009) .......................................................................... 11

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.*,
  2023 WL 4181198 (N.D. Ill. June 26, 2023) ................................................................... 11, 12

*In re Royal Ahold N.V. Sec. & Erisa Litig.*,
  220 F.R.D. 246 (D. Md. 2004) .............................................................................................. 10

*In re Spiegel, Inc. Sec. Litig.*,
  382 F. Supp. 2d 989 (N.D. Ill. 2004) .................................................................................... 14

*Mendez v. City of Chicago*,
  2020 WL 4736399 (N.D. Ill. Aug. 14, 2020) .......................................................................... 6

*Schneider v. Chipotle Mexican Grill, Inc.*,
  2017 WL 1101799 (N.D. Cal. Mar. 24, 2017) ...................................................................... 11

*Singer v. Nicor, Inc.*,
  2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) ...................................................................... 14

*Urb. 8 Fox Lake Corp. v. Nationwide Affordable Housing Fund 4, LLC*,
  334 F.R.D. 149 (N.D. Ill. 2020) ............................................................................................. 7

iii

**RULES**

Fed. R. Civ. P. 1 ............................................................................................................. 13

Fed. R. Civ. P. 26(b)(1) ...................................................................................................... 6

## I.    INTRODUCTION

Lead Plaintiffs KBC Asset Management NV, Ethenea Independent Investors S.A., and the National Elevator Industry Pension Fund (together, "Lead Plaintiffs" or "Plaintiffs"), respectfully seek an order compelling Defendant Archer-Daniels-Midland Company ("ADM" or the "Company") to produce documents previously produced to the SEC and DOJ in ongoing investigations (the "Requested Documents") as outlined in Lead Plaintiffs' First Set of Requests for Production of Documents ("First RFPs"), attached as Exhibit A. Production is appropriate because there is nearly complete factual and legal overlap between this lawsuit and the government investigations and because it will expedite and streamline discovery in this case. ADM's counter-proposal to negotiate search terms for the approximately 291,000 documents already reviewed and produced as relevant and non-privileged in the overlapping government investigations, and then re-review such documents before producing here, would serve only to delay production of relevant documents and obstruct efficient discovery. Indeed, although this Court required that ADM's production in response to the First RFPs be "substantially complete" by May 23, 2025, ADM's needless proposal resulted in the production of just 3,005 documents, *i.e.*, 1% of responsive documents, by that deadline. *See* ECF No. 137 at 2-3.

Pursuant to Local Rule 37.2, the parties met and conferred via videoconference on May 8, May 15, and May 28, 2025.[1] Despite the parties' good faith attempts to resolve this dispute through

---

[1] The following individuals attended the May 8, 2025 meeting: Counsel for Plaintiffs (Meghan Oliver, Charlotte Dougherty, Neli Hines, Chris Stewart, and Jen Caringal); counsel for Defendant ADM (Jesse Bernstein, Tyler Murray, Michael Carlinsky, and Heather Christenson); counsel for Defendant Vincent Macciocchi (Joseph Klemme and Tyler Good-Cohn); counsel for Defendant Vikram Luthar (Rachel T. Copenhaver and Nusra Ismail); and counsel for Defendant Ray Young (Kathryn Campbell). The following individuals attended the May 15, 2025 meeting: Counsel for Plaintiffs (Meghan Oliver, Charlotte Dougherty, Neli Hines, Chris Stewart, and Jen Caringal); counsel for Defendant ADM (Jesse Bernstein, Tyler Murray, and Heather Christenson); counsel for Defendant Vincent Macciocchi (Brian Jacobs and Joseph Klemme); counsel for Defendant Vikram Luthar (Rachel T. Copenhaver and Nusra Ismail); and

the meetings and subsequent correspondence, they have been unable to reach agreement. Thus, Plaintiffs respectfully file this Motion to Compel.

## II.     FACTUAL BACKGROUND

### A.  The Accounting Fraud

Plaintiffs' Amended Complaint and Supplement (collectively, the "Complaint") against ADM, its current CEO, two previous CFOs, and the head of ADM's Nutrition reporting segment alleges that Defendants engaged in a years-long accounting fraud designed to misrepresent and overstate the success of the Nutrition segment. Specifically, the Complaint alleges, *inter alia*, that certain sales to Nutrition by other ADM reporting segments (Ag Services and Oilseeds, and Carbohydrate Solutions) were falsely reported to be at fair market value even though they were discounted to below fair market value. ¶¶ 53, 83, 188-191.[2] This artificially reduced Nutrition's costs, and falsely inflated its operating profits. ¶¶ 54, 84, 188-191. The Complaint further alleges that this false reporting of intersegment sales was a material violation of GAAP, *see, e.g.*, ¶¶ 201-08, and a result of ineffective internal controls over financial reporting, ¶¶ 209-216. As ADM explained, "The absence of adequate controls with respect to the reporting of intersegment sales impacted the accuracy of the Company's segment disclosures and review controls over projected financial information utilized in goodwill and other long-lived asset impairment tests." ¶ 214.

---

counsel for Defendant Ray Young (Kathryn Campbell). The following individuals attended the May 28, 2025 meeting: Counsel for Plaintiffs (Meghan Oliver, Charlotte Dougherty, Neli Hines, Chris Stewart, and Jen Caringal); counsel for Defendant ADM (Tyler Murray and Heather Christenson); counsel for Defendant Juan Luciano (Eric Swibel); counsel for Defendant Vincent Macciocchi (Brian Jacobs and Joseph Klemme); counsel for Defendant Vikram Luthar (Rachel T. Copenhaver and Nusra Ismail); and counsel for Defendant Ray Young (Kathryn Campbell).

[2] Unless otherwise noted, capitalized terms have the meaning defined in the Amended Complaint, emphasis is added, and internal quotations and citations are omitted. In addition, references to "¶ __" are to the Amended Complaint (ECF No. 67) and references to "Supp. ¶ __" are to the Supplement to Lead Plaintiffs' Complaint for Violations of the Federal Securities Laws (ECF No. 105).

The ripple effects of the deficiencies in internal controls were widespread. Following "ongoing dialogue with the staff of the [SEC]," ADM announced on November 4, 2024 further restatements resulting from "newly identified errors" in its intersegment sales. These errors did not further inflate the operating profits of Nutrition, but they did reveal the scope of ADM's internal control failures and the development of new controls designed to remediate those internal control deficiencies. Supp. ¶¶ 2-3. Yet during the Class Period, in addition to reporting inflated financial results, Defendants made false and misleading statements that the Company had effective internal controls, ¶¶ 82, 158-166, and complied with GAAP, *e.g.*, ¶¶ 82, 85, 87, 108, 110, 112.

### B. The SEC and DOJ investigations

The accounting fraud came to light in January 2024 when ADM disclosed that its CFO had been placed on leave "pending an ongoing [internal] investigation . . . regarding certain accounting practices and procedures with respect to ADM's Nutrition reporting segment, including as related to certain intersegment transactions." ¶ 179. The Company disclosed that the internal investigation "was initiated in response to its receipt of a voluntary document request by the U.S. Securities and Exchange Commission (SEC)" and that "ADM [wa]s "cooperating with the SEC." *Id.*

Subsequently, ADM reiterated in its Form 10-K filed in March 2024 that in June of 2023, ADM had "received a voluntary document request from the [SEC] *relating to intersegment sales between the Company's Nutrition reporting segment* and the Company's Ag Services and Oilseeds and Carbohydrate Solutions reporting segments." ¶¶ 74, 192. ADM also disclosed in its Form 10-K that, "[f]ollowing the Company's January 21, 2024 announcement of the Investigation, the Company received voluntary document requests from the Department of Justice (the DOJ) *focused primarily on the same subject matter*, and the DOJ directed grand jury subpoenas to

3

certain current and former Company employees. The Company is cooperating with the DOJ." Archer-Daniels-Midland Co., Annual Report (Form 10-K) (Mar. 12, 2024) at 8; ¶ 192.

A December 2024 article by Reuters, attached as Exhibit B, confirms the near complete overlap between the government investigations and this lawsuit. Reuters conducted an extensive investigation, which included "review[ing] hundreds of pages of documents – including the grand jury subpoenas and internal ADM communications," "interview[ing] 15 current and former ADM employees familiar with the transactions under scrutiny," and "sp[eaking] with four other people with knowledge of the probe." *Id.* at 6 of 9. The article confirmed that "[t]he investigation, like the accounting revisions, is related to internal company transactions that could have inaccurately inflated financial results for ADM's 'Nutrition' division. . . . At root, the interviews and the documents show, investigators want to know if ADM deliberately boosted Nutrition's performance by providing it with below-cost goods from other company units." *Id.* at 3-4 of 9.[3]

### C. Plaintiffs' First Set of Requests for Production

In order to simplify and expedite discovery, Lead Plaintiffs requested the materials produced in the related government investigations. Specifically, on March 21, 2025, Lead Plaintiffs served their First RFPs, which sought Defendants' production of "[a]ll Documents You Produced or will Produce to the SEC [and/or DOJ] in connection with the SEC Investigation." Ex. A, Request Nos. 1 & 2.[4]

On April 21, 2025, Defendants served Responses and Objections to Lead Plaintiffs' First RFPs, attached as Exhibit D ("R&O"). ADM objected to the requests as improper "cloned

---

[3] In February 2024, Bloomberg similarly reported that, "according to people with direct knowledge of the matter," the DOJ had "launched an investigation into the accounting practices at [ADM] . . . focused on the company's nutrition business." ¶ 184.

[4] ADM has produced approximately 291,000 documents to the SEC. Ex. C at 1. Counsel for ADM confirmed that the productions to the SEC and the DOJ have been identical, and that "[t]he production of documents is nearly complete." *Id.*

discovery," but offered to meet and confer "regarding the appropriate scope of a re-production of documents that the ADM Defendants have Produced or will Produce" to the SEC and DOJ. *Id.* at 6, 7. On April 22, 2025, counsel for Lead Plaintiffs contacted counsel for Defendants to schedule a meet-and-confer. Ex. E at 1. The following day, counsel for Lead Plaintiffs requested the SEC's document requests, which counsel explained "would likely facilitate discussions." *Id.* at 1. After the substitution of counsel for ADM, the parties held three meet-and-confers regarding the First RFPs. Initially, ADM refused to provide any of the SEC requests to Plaintiffs. Then, on the second meet-and-confer, and in a follow-up letter, ADM agreed to provide the SEC requests about "intersegment transactions," which ADM unilaterally deemed as the only "relevant" requests, and a "few examples that demonstrate that the scope of the Governmental Requests exceed what is relevant to this action." Ex. F at 2. However, ADM continues to refuse to produce a complete set of the requests themselves.

ADM has agreed to produce limited "documents produced in response to certain Governmental Requests either in full without any additional review or, at minimum, on an expedited basis without the use of search terms to cull the universe of documents reviewed for production, including, but not limited to" the following government requests:



5

█████████████████████████████████

*Id.* at 2-3. Beyond these documents, ADM claims it will only produce certain "materials concerning intersegment transactions" produced in the government investigations if they are responsive to search terms yet to be negotiated between the parties. *Id.* at 2. On May 23, 2025, the deadline for ADM's substantial completion of production in response to the First RFPs, ADM produced 3,005 documents, despite having produced 291,000 documents to the government. ADM's position serves only to delay and obstruct production of relevant and discoverable documents that would allow the parties to proceed with efficient discovery.

## III. ADM SHOULD PRODUCE THE REQUESTED DOCUMENTS

A party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Relevance is broadly construed to encompass any matter that relates to, or could reasonably lead to a matter that relates to, an issue in the case. *Illinois ex rel. Raoul v. Monsanto Co., Solutia Inc.*, 345 F.R.D. 459, 462 (N.D. Ill. 2023). "The party requesting discovery bears the initial burden to establish its relevancy," and if the discovery appears relevant, "the party objecting to the discovery request bears the burden of showing why that request is improper." *Mendez v. City of Chicago*, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14, 2020).

### A. The requests seek relevant information and ADM has not shown that they are overbroad or disproportionate to the needs of the case.

Plaintiffs' First RFPs seek the documents produced to the SEC, whose investigation was the subject of the first corrective disclosure in this case, brought about the second corrective disclosure in this case, and prompted the DOJ investigation. ¶¶ 178-181, 192; Supp. ¶ 2.

Both ADM's descriptions of the investigations and independent analysis by Reuters (and Bloomberg) confirm that there is near complete overlap between the governmental investigations

and Plaintiffs' allegations. The investigations "relat[e] to intersegment sales between the Company's Nutrition reporting segment and the Company's Ag Services and Oilseeds and Carbohydrate Solutions reporting segments," ¶ 74, and seek information about whether "ADM deliberately boosted Nutrition's performance by providing it with below-cost goods from other company units," Ex. B at 4 of 9; *see also* ¶¶ 184-185. Plaintiffs' requests seek the documents produced in the investigations referenced in, and at the core of, Plaintiffs' Complaint. Ex. A at 4. Because the same documents produced in those investigations are facially relevant to questions of fact in this litigation, they should be produced. *See, e.g.*, *In re Broiler Chicken Antitrust Litig.*, 2017 WL 4417447, at *6 (N.D. Ill. Sept. 28, 2017) (finding "Plaintiffs would be prejudiced by delaying production of [documents previously produced to the Florida AG]"). ADM has not and cannot show how and why the requests are overbroad or disproportionate to the needs of the case.

ADM commits its first error in arguing that Plaintiffs' requests are "overbroad" because "the governmental investigations extend beyond intersegment transactions." Ex. F at 1. But "saying so doesn't make it so," *Urb. 8 Fox Lake Corp. v. Nationwide Affordable Hous. Fund 4, LLC*, 334 F.R.D. 149, 159 (N.D. Ill. 2020), and ADM has yet to identify any subject covered by the government investigations that is irrelevant to this case. As discussed above, the Company and independent journalists reporting on the government investigations have confirmed that the investigations relate directly to the issues in this case. And, ADM's description of this case improperly mischaracterizes and narrows Plaintiffs' allegations. Plaintiffs have alleged not just improper accounting for intersegment sales, but also broader internal control weaknesses, false and misleading statements in ADM's financial statements and conference calls, contextual allegations establishing the significance of Nutrition results to the Company's financial results and guidance, executive compensation, insider trading based on material non-public information,

7

allegations of scienter based on the totality of circumstances surrounding Defendants' conduct, and that executives imposed overall profitability goals and pressures that may have caused the improper accounting. *See, e.g.*, ¶¶ 3, 8-12, 73-167, 226-234, 255-309, 344-347; Supp. ¶¶ 9-11.

ADM's second misstep occurs because it offers only three unpersuasive "examples" of SEC requests that it claims "demonstrate that the scope of the Governmental Requests exceed what is relevant to this action." Ex. F at 2. However, none of ADM's three examples demonstrate that Plaintiffs' requests are overbroad. First, ADM claims the following SEC request is broader than Plaintiffs' allegations because it seeks ███████████████████████████████████

████████████████████████████████████████████████████████████████████

██████ *Id.* at 2. This time period is relevant to this lawsuit because Plaintiffs allege that Defendants executed the accounting scheme "from 2018 through 2023," ¶¶ 12, 48-54, and the subject matter of the documents is relevant because Plaintiffs allege that the Nutrition segment was critical to ADM's operational and financial strategy and "senior executives," █████████████

█████ "pressured" ADM employees, such as the "Chief Financial Officers of the ASO and Carb Solutions segments," "to conduct internal sales to help Nutrition mask costs or meet profit forecasts . . . ." Supp. ¶¶ 9-10.[6] As such, ████████████████████████████████ are related to Nutrition's performance, intersegment sales, "costs" and "profit forecasts," all of which are relevant in this lawsuit.

---

[5] Although ADM has not defined ████████████████████████████████

[6] Even where such documents were not produced in directly related investigations, courts have deemed them relevant in securities actions. *See, e.g.*, *In re Atl. Fin. Fed. Sec. Litig.*, 1991 WL 153075, at *3 (E.D. Pa. Aug. 6, 1991) (compelling board meeting minutes because they provided context to understand misleading statements "against the background of facts concerning other aspects of the company").

The second example ADM offers further highlights its unreasonably constrained view of Plaintiffs' allegations. That SEC request seeks ███████████████████████████ ████████████████████████████████████████████████ █████████████████████████████████████████ Ex. F at 2. Those documents are relevant, however, because Plaintiffs allege that, despite public statements to the contrary, ADM violated its stated accounting policies and revenue recognition GAAP (*i.e.*, ASC 606) by not recording intersegment sales of goods at fair market value. ¶¶ 50-54; *see also* Supp. ¶ 3 (ADM disclosing certain intersegment transactions "were not accounted for consistently in accordance with revenue recognition and segment reporting standards"). The ████████████ ███████████████████████████ directly relate to the question of how the raw materials involved in the intersegment sales were priced and recorded. How all of these metrics were priced and recorded is also relevant to Plaintiffs' allegations that ADM's internal controls over financial reporting were ineffective.

In ADM's third example, the SEC seeks:



Ex. F at 2 (alteration in original). ███████████████████████████████

████████████████████████████████████████████████



[7] Moreover, ███████████ Ex. I at 444 ███████████ Ex. J at 762. A request for ███████████ in response to an investigation into the very subject matter of this litigation, is relevant, not overbroad. Thus, ADM's three examples fail to refute that the government investigations relate to topics at issue in this lawsuit.

In addition, ADM has failed to establish that the requests are unduly burdensome or disproportionate. *See, e.g.*, *In re Royal Ahold N.V. Sec. & Erisa Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004) (finding the "burden of producing" such materials "should be slight, considering that the defendants have previously produced them to other entities"). The documents have already been reviewed for privilege, and can simply be reproduced with minimal burden on ADM.

Moreover, the size of the production (291,000 documents) is modest compared to the stakes in this litigation. Ex. C at 1. Plaintiffs allege a widespread six-year accounting fraud scheme that affected the financial results of all three of ADM's reporting divisions, resulting in billions of dollars in market losses. Thus, the documents are relevant, there is no undue burden in producing them, and the production will not be disproportionate to the needs of the case.

### B. ADM's "cloned discovery" objection is meritless.

Contrary to ADM's suggestion (Ex. F at 1), courts often require the reproduction to civil plaintiffs of documents produced in related proceedings. In assessing requests like Plaintiffs',

---

[7] Indeed, ███████████ *See* Ex. G. And, ███████████ *See, e.g.*, Ex. K ███████████



courts typically consider factors such as the degree of "factual and legal overlap" between the two proceedings and whether the reproduction will create efficiencies in the case in which the discovery is sought. *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 1101799, at *4 (N.D. Cal. Mar. 24, 2017) (granting motion to compel documents produced in another lawsuit because of "significant factual and legal overlap" between the cases); *Broiler Chicken*, 2017 WL 4417447, at *6 (ordering production of documents previously produced to the Florida Attorney General in part to remedy "an informational asymmetry between the parties [in early discovery] that hampers Plaintiffs' ability to discuss meaningfully key words and search methodologies, and to understand and discuss with Defendants the appropriate universe of document custodians and other discovery parameters").[8]

These factors support compelling production of the Requested Documents.

### 1. There is significant factual and legal overlap with the investigations.

This action and the government investigations arise from the same misconduct and share "significant factual and legal overlap." *See supra* at 6-10. Both concern the same restatement involving "intersegment sales between the Company's Nutrition reporting segment and the Company's Ag Services and Oilseeds and Carbohydrate Solutions reporting segments," and whether "ADM deliberately boosted Nutrition's performance by providing it with below-cost goods from other company units." *Supra* at 6-7. Plaintiffs also allege that the fraud was a result of and enabled by deficiencies in internal controls over financial reporting. *Supra* at 9. Under these circumstances, ADM should produce the documents it has already produced in the overlapping government investigations. *In re New Century*, 2009 WL 9568860, at *5 (C.D. Cal. Jul. 8, 2009)

---

[8] Cases cited by ADM likewise support that "the appropriateness of cloned discovery depends upon the circumstances of each case" and recognize that courts have compelled production where proceedings "had significant factual and legal overlap." *E.g.*, Ex. D at 6-7 & Ex. F at 1 (citing *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 2023 WL 4181198, at *7 (N.D. Ill. June 26, 2023)).

(compelling production where "the SEC and DOJ investigations pertained to the same restatement and accounting errors that are alleged in the Complaint"); *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2022 WL 17339035, at *6 (E.D. Pa. Nov. 30, 2022) (ordering production of documents produced in government investigation of pipeline explosion given the "substantial overlap" between the investigation and plaintiffs' claims, and "the corrective disclosure specifically related to that explosion"); *Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2017 WL 10775410, at *1 (S.D. Fla. Mar. 14, 2017) (compelling production where "there [wa]s a substantial relationship between th[e] FINRA inquiry and the issues raised in th[e] action").

None of the cases ADM cites compels a different result. For example, ADM's R&O cited *Outpatient Medical Center*, an antitrust litigation alleging a conspiracy not to solicit competitors' employees, where the court found plaintiffs' request for all documents certain defendants produced to the DOJ to be "facially overbroad" because it sought documents related to "a separate charged conspiracy" involving different conduct and participants. 2023 WL 4181198, at *6-7; *see* Ex. D at 6-7. Similarly, in *Forth v. Walgreen Co.*, the requested documents involved "a theory of alleged kickbacks that is entirely absent from this case and has no relevance to Plaintiffs' claims." 2019 WL 10255628, at *2 (N.D. Ill. July 10, 2019); Ex. F at 1. Here, the government investigations involve ADM and its employees, and, unlike in *Outpatient Medical Center* and *Forth*, there is no indication (and ADM has not shown) that the investigations are into a "separate" fraud or have "no relevance" to this litigation. *See supra* at 6-10.

### 2. Production of the investigation documents will make document discovery more efficient and advance the litigation.

The production Plaintiffs seek will also yield great efficiencies. Reproducing documents already collected, reviewed, and produced to the government in this case is far less expensive and faster than starting anew and will spare the Court unnecessary discovery disputes. *See* Fed. R. Civ.

P. 1 (stating the Federal Rules "should be construed, administered, and employed . . . to secure the just, speedy, and inexpensive determination of every action and proceeding"). Moreover, by reducing the informational asymmetry between ADM and Plaintiffs, production of these relevant documents will assist Lead Plaintiffs in becoming better informed to advance the litigation, narrow and target future discovery requests, and discuss further document search methodologies and search terms, as well as other forms of written discovery, all of which further supports Plaintiffs' Motion. *See, e.g.*, *Broiler Chicken*, 2017 WL 4417447, at *7 (finding production of documents defendants produced to the government "will further the interest of the court system and the parties"); *Costa v. Wright Med. Tech., Inc.*, 2019 WL 108884, at *1 (D. Mass. Jan. 4, 2019) (ordering reproduction from case involving claims stemming from the same product, explaining "cloned discovery . . . can reduce the burden and expense of obtaining relevant information and help the parties narrow the issues in dispute more rapidly than they otherwise could").

Indeed, there are two decisions from *In re Broiler Chicken Antitrust Litigation* in this jurisdiction that address so-called "cloned discovery" and elucidate the difference between this case and other cases where similar discovery requests were denied. The 2020 *Broiler Chicken* case cited by ADM is distinguishable. In that case, two and a half years after the parties had reached agreements regarding "the scope of relevance," after defendants had already produced more than eight million documents, and after "document discovery [wa]s largely complete[]," the plaintiffs sought production of all documents produced to the DOJ. *In re Broiler Chicken Antitrust Litig.*, 2020 WL 1046784, at *2 (N.D. Ill. Mar. 4, 2020). The court stated that "[t]he fact that some or even all of the documents produced to the DOJ are relevant to Plaintiffs' claims but are not responsive to the discovery requests as implemented by the protocol agreement [years earlier], is not a basis to usurp those agreements this far into the case." *Id.* at *3. That reasoning, which

13

recognizes the inefficiencies of seeking previously-produced documents after document discovery is nearly complete, does not apply here, where discovery has barely begun.

Instead, the reasoning applied in the 2017 *Broiler Chicken* case fits the circumstances of this case. There, the court compelled the production of documents that had been produced to the Florida Attorney General. *Broiler Chicken*, 2017 WL 4417447, at *7. The court ordered the production in part to remedy "an informational asymmetry between the parties [in early discovery] that hampers Plaintiffs' ability to discuss meaningfully key words and search methodologies, and to understand and discuss with Defendants the appropriate universe of document custodians and other discovery parameters." *Id.* at *6. ADM's production of documents responsive to the First RFPs would advance the same interests of judicial efficiency and economy.

In fact, because of the lack of burden and benefits of production, courts in this District have applied similar reasoning in lifting the PSLRA's automatic stay of discovery to allow production of documents previously produced to government agencies to the civil plaintiffs. *See, e.g.*, *Singer v. Nicor*, *Inc.*, 2003 WL 22013905, at *1-2 (N.D. Ill. Apr. 23, 2003); *In re Spiegel, Inc. Sec. Litig.*, 382 F. Supp. 2d 989, 1039 (N.D. Ill. 2004). In *Singer*, the court concluded that prejudice to plaintiffs from an "inability to make informed decisions about [their] litigation strategy in a rapidly shifting landscape," as the "only major interested part[ies] . . . without access to documents that currently form the core of [the parallel] proceedings," justified lifting the PSLRA stay. 2003 WL 22013905, at *1-2. *Singer*'s reasoning likewise supports Plaintiffs here. In sum, compelling ADM to produce the Requested Documents will advance the litigation, facilitate discovery negotiations, create discovery efficiencies, and prevent prejudice to Plaintiffs.

### 3. ADM's production of just 1% of the Requested Documents by the substantial completion deadline further supports the requested relief.

Plaintiffs served the First RFPs on March 21, 2025, and the parties submitted a joint proposed scheduling order a week later. *See* ECF No. 113. This Court adopted the proposed order, requiring "[d]ocument production . . . in response to Lead Plaintiffs' First Set of Requests for Production of Documents [to] be substantially complete by May 23, 2025." ECF No. 115. Scheduling orders are "critical" and "should not be taken lightly." *DR Distribs., LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 939 (N.D. Ill. 2021) (granting motion to compel); *Feenix Payment Sys., LLC v. Steel Cap. Mgmt., LLC*, 2021 WL 3862008, at *2 (D. Del. Aug. 24, 2021) (granting motion where party was still "reviewing and producing documents" "weeks after the . . . substantial completion deadline"); *Epic Games, Inc. v. Apple Inc.*, 2024 U.S. Dist. LEXIS 175943, at *10 (N.D. Cal. Sept. 27, 2024) (ordering party to review and produce 1.3 million documents by the substantial completion deadline). Rather than comply with the substantial completion deadline, on May 23, 2025, ADM produced just 1% of the approximately 291,000 documents responsive to the First RFP. Two weeks *after* the deadline, ADM sent an "initial search term proposal" identifying tens of thousands of additional responsive documents. Ex. H at 3, 5. That ADM, two months after being served the First RFPs, produced only 3,005 out of 291,000 documents as relevant under its unwarranted and narrow review further confirms that its approach will result in needless disputes and cause undue delay.

## IV. CONCLUSION

For the reasons stated herein, Lead Plaintiffs request that the Court direct ADM to produce the Requested Documents within seven days of any order entered by the Court.

DATED: June 13, 2025          **MOTLEY RICE LLC**

*/s/ Andrew P. Arnold*
ANDREW P. ARNOLD

Meghan S. B. Oliver
Gregg S. Levin
Christopher F. Moriarty
Andrew P. Arnold
Charlotte E. Dougherty
Neli Traykova Hines
Cameran M. Gilliam
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843-216-9000
moliver@motleyrice.com
glevin@motleyrice.com
cmoriarty@motleyrice.com
aarnold@motleyrice.com
cdougherty@motleyrice.com
nhines@motleyrice.com
cgilliam@motleyrice.com

**MOTLEY RICE LLC**
William H. Narwold
20 Church Street, 17th Floor
Hartford, CT 06103
Telephone: 860-882-1676
bnarwold@motleyrice.com

**ROBBINS GELLER RUDMAN
& DOWD LLP**
James E. Barz (IL Bar #6255605)
Frank A. Richter (IL Bar #6310011)
Michael J. Stramaglia (IL Bar #6336821)
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 630-696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
mstramaglia@rgrdlaw.com

**ROBBINS GELLER RUDMAN
& DOWD LLP**
Christopher D. Stewart

16

Jennifer N. Caringal
Heather G. Geiger
Rachel C. Braby
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
cstewart@rgrdlaw.com
jcaringal@rgrdlaw.com
hgeiger@rgrdlaw.com
rbraby@rgrdlaw.com

*Lead Counsel for Lead Plaintiffs*

**O'DONOGHUE & O'DONOGHUE LLP**
John M. McIntire
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Telephone: 202-362-0041
jmcintire@odonoghuelaw.com

*Additional Counsel for Plaintiffs*

17