# EXHIBIT H

**REDACTED**

CONFIDENTIAL

**quinn emanuel** trial lawyers | new york

295 5th Avenue, New York, New York 10016-7103 | TEL (212) 849-7000 FAX (212) 849-7100

WRITER'S DIRECT DIAL NO.
**(212) 849-7036**

WRITER'S EMAIL ADDRESS
**jessebernstein@quinnemanuel.com**

June 9, 2025

<u>CONFIDENTIAL</u>
<u>VIA E-MAIL</u>
MOLIVER@MOTLEYRICE.COM

Meghan S. B. Oliver
Motley Rice LLC
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464

Re:     <u>*Chow v. Archer-Daniels-Midland Company, et al*</u>, Case No. 1:24-cv-00634 (N.D. Ill.)

Dear Meghan:

I write briefly in response to your May 23, 2025 letter.  In your letter, you state that ADM "refus[es] to re-produce the documents ADM previously produced to the SEC and DOJ in response to the government's investigations."  Oliver Ltr., at 1.  This misapprehends ADM's position.  As we have repeatedly stated, ADM will not mechanically reproduce the entirety of ADM's productions to the government because not all documents produced to the government are discoverable in this case.

The two Northern District of Illinois cases you cite squarely support ADM's position.  In *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 2023 WL 4181198, at *6 (N.D. Ill. June 26, 2023), the Court made clear that "Courts in this district disfavor 'cloned discovery' requests seeking all documents produced or received during other litigation or investigations." (citing *In re Broiler Chicken Antitrust Litig.*, 2020 WL 1046784, at *2 (N.D. Ill. Mar. 4, 2020) (Durkin, J.) ("[R]eflexive production of documents previously provided to governmental entities is not appropriate. Rather, documents are discoverable only if they are relevant to a claim or defense in the case.")).  The Court in *Outpatient* found that because it "cannot conclude that all documents [defendant] produced to the DOJ are relevant to a party's claim or defense in this lawsuit . . . Plaintiffs must make proper requests describing the information in which they are interested in the [defendant's] production to the DOJ." *Id.* at *7 (internal quotations and citations omitted).

Notably, like ADM, the defendant in *Outpatient* agreed to produce documents provided to the government that hit upon the parties' agreed search terms (and custodians). *Id.*  The Court found this was an appropriate method for review and production: "Plaintiffs do not address or explain why this is not sufficient to give them relevant information in proportion to the needs of

**quinn emanuel urquhart & sullivan, llp**

ABU DHABI | ATLANTA | AUSTIN | BEIJING | BERLIN | BOSTON | BRUSSELS | CHICAGO | DALLAS | DOHA | HAMBURG | HONG KONG | HOUSTON | LONDON | LOS ANGELES | MANNHEIM | MIAMI | MUNICH | NEUILLY-LA DEFENSE | NEW YORK | PARIS | PERTH | RIYADH | SALT LAKE CITY | SAN FRANCISCO | SEATTLE | SHANGHAI | SILICON VALLEY | SINGAPORE | STUTTGART | SYDNEY | TOKYO | WASHINGTON, DC | WILMINGTON | ZURICH

**CONFIDENTIAL**

the case. *See Cap. Ventures Intern. v. J.P. Morgan Mortg. Acquisition Corp.,* 2014 WL 1431124, at *2 (D. Mass. Apr. 14, 2014) ("Defendants have offered to run agreed-upon search terms over their productions to the SEC and New York Attorney General, which should be sufficient to capture materials relevant to the issues in this case. Beyond that arrangement, plaintiff's request for all documents produced in other actions and investigations is denied.")." The Court therefore ***denied*** plaintiffs' request for clone discovery. *Outpatient,* 2023 WL 4181198, at *6.

Similarly, in the second case you cite, *Luxottica Grp. S.p.A. v. Yiwu Cujia Trade Co.,* 2023 WL 6520213 (N.D. Ill. Oct. 5, 2023), the Court ***denied*** plaintiffs' motion to compel the defendant's production of documents produced in related litigation. *Id.* at 4 ("[P]laintiffs simply state, without elaboration, that the documents from other trademark litigation against defendants are 'directly relevant to Plaintiffs' claims and Defendants' defenses in the current lawsuit.' This is insufficient to satisfy the relevancy requirements of Rule 26.") (internal citation omitted).

In short, our position – and our proposed path forward – is firmly rooted in the caselaw of the Northern District of Illinois.[1]

Perhaps recognizing this, you continue to assert that there is complete overlap between the government investigations and this action. This is incorrect and absurd. Indeed, we already have provided multiple examples of government production requests that sought information beyond the scope of, and irrelevant to, this action.

In your May 23 letter, you ask about "alterations" to the government production requests we provided. Specifically, you asked about bracketed text of the first example we provided. *See* May 16 Bernstein letter, at 2. Those alterations were made for ease of review. The verbatim request without "alterations" is:



---

[1] In the third case you cite, an out-of-district case, the Court ordered the defendant to produce documents previously produced to the government, but only after expressly finding the documents were "relevant to the claims and/or defenses in the Complaint." *In re New Century,* 2009 WL 9568860, at *5 (C.D. Cal. Jul. 8, 2009). Nothing in this case undermines ADM's position.

**CONFIDENTIAL**



You also request information regarding "whether ADM used or negotiated search terms or other culling methods in creating its responsive production of documents to the government, and/or objected to or otherwise narrowed the scope of these or any of the other requests." Oliver Ltr., at 3. Just as plaintiffs are not entitled to the entirety of ADM's productions to the government, plaintiffs are not entitled to the search terms ADM may have negotiated with the government or, more generally, the substance of ADM's negotiations with the government regarding document requests. Such information is plainly not discoverable. Nonetheless, we confirm that the above request for "all communications" between the identified individuals, for example, was not culled based on search terms or based on the content of those communications.

In addition to providing rolling production of documents in the categories we identified in our May 16 letter, we are prepared to begin discussing mutually agreeable search terms to identify documents within the productions to the government that are relevant to intersegment transactions. A hit report of our initial search term proposal is attached as Appendix A. We are amenable to testing additional search terms and providing corresponding hit reports so the parties can reach a mutually agreeable set of terms.

3

**CONFIDENTIAL**

Sincerely,


*/s/ Jesse Bernstein*
Jesse Bernstein

4

**CONFIDENTIAL**

**Appendix A**

| Date Range | Term | Documents with hits | Documents with hits + Family |
|---|---|---|---|
| 11/1/2020 - 7/31/2023 | ██████████ w/15 (Nutrition or "speciality ingredients" or "SI" or HN or "AS&O" or oilseeds) w/15 (transfer* or "TP" or intersegment or intercompany or revenue* OR profit* OR cost* OR price* OR IDT* OR IST* OR sale*) | 1,255 | 3,288 |
| 11/1/2020 - 2/28/2022 | ██████████ w/15 (contract or repric* or "risk shar*" or "risk management" or "risk mgmt" or "CBOT" or market or hedg*) | 1,145 | 3,544 |
| 10/1/2021 - 2/28/2023 | ██████████ w/10 (yield or quality or moisture or strip*) | 1,108 | 8,913 |
| 1/1/2018 - 2/28/2023 | █████████ ████████ w/15 (Nutrition or Carbs or CarbSol or CS) w/15 (transfer* or "TP" or intersegment or intercompany or revenue* OR profit* OR cost* OR price* OR IDT* OR IST* OR sale*) | 10,275 | 33,967 |
| 1/1/2018 - 2/28/2023 | ████████ w/15 (re-segment* or resegment* or re-align* or realign* or align* or "management structure*" or "cost structure*" or "cost sharing" or shift* or move* or "down time" or volume)) w/15 (Carb* or CarbSol or CS or Nutrition) | 2,496 | 8,025 |
| 1/1/2018 - 2/28/2023 | "Transfer price adjustment*" w/15 Nutrition | 124 | 290 |
| 1/1/2018 - 2/28/2023 | ("Price" OR amount*) w/5 ("approximat* market") | 774 | 1,923 |
| 1/1/2018 - 2/28/2023 | (IDT* OR IST* OR intersegment) w/5 ("approximat* market") | 20 | 46 |
| 1/1/2018 - 2/28/2023 | ("amount" OR "amounts") w/1 "approximat* market" | 695 | 1,844 |
| 1/1/2018 - 2/28/2023 | ("price" OR "prices") w/1 "approximat* market" | 103 | 197 |
| 9/1/2019 - 2/28/2020 | Nutrition w/25 (Performance w/5 (metrics or calculation or goals or target)) | 214 | 705 |
| 9/1/2019 - 2/28/2020 | Nutrition w/25 (incentive or compensation or PIP or RSU or PSU or bonus) | 453 | 1,682 |
| **Total** | | **14,084** | **42,935** |

5