**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RAYMOND CHOW, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br> v.<br><br>ARCHER-DANIELS-MIDLAND COMPANY; JUAN LUCIANO; VIKRAM LUTHAR; RAY YOUNG; and VINCENT MACCIOCCHI,<br><br>   Defendants. | No. 24 C 634<br><br>Judge Thomas M. Durkin<br><br>Magistrate Judge Keri L. Holleb Hotaling |

## DEFENDANT ADM'S OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS PRODUCED TO SEC AND DOJ

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................1

FACTUAL BACKGROUND .........................................................................................2

I.     ADM'S NUTRITION SEGMENT AND INTERSEGMENT TRANSACTIONS ............2

II.    ADM CORRECTS CERTAIN ACCOUNTING DISCLOSURES AND
RESPONDS TO GOVERNMENT INQUIRIES.................................................................2

III.    PLAINTIFFS BRING THE PRESENT ACTION AND DEMAND CLONED
DISCOVERY ..........................................................................................................3

LEGAL STANDARD.....................................................................................................6

ARGUMENT .................................................................................................................7

I.    PLAINTIFFS' OVERBROAD REQUEST FOR ALL GOVERNMENT
PRODUCTIONS SEEKS IRRELEVANT DOCUMENTS ...........................................7

    A.    Plaintiffs Seek Improper And Disfavored "Cloned Discovery".............................7

    B.    The Government Productions Contain Documents Irrelevant To This
Action....................................................................................................................8

    C.    Purported "Efficiencies" Do Not Warrant Cloned Discovery ..............................12

    D.    The Court Need Not Consider Burden Because Plaintiffs Have Not
Established Relevance ..........................................................................................14

IV.    ADM HAS PROPOSED A REASONABLE ALTERNATIVE.......................................14

CONCLUSION................................................................................................................15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP,*
2022 WL 17339035 (E.D. Pa. Nov. 30, 2022) ...................................................................12

*Arsberry v. Wexford Health Sources, Inc.,*
2021 WL 5232733 (N.D. Ill. Nov. 10, 2021) .......................................................................6

*In re Atl. Fin. Fed. Sec. Litig.,*
1991 WL 153075 (E.D. Pa. Aug. 6, 1991) .........................................................................10

*BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.,*
2018 WL 946396 (N.D. Ill. Feb. 20, 2018) .....................................................................6, 7

*In re Broiler Chicken Antitrust Litig.,*
2017 WL 4417447 (N.D. Ill. Sept. 28, 2017) ...................................................................13

*In re Broiler Chicken Antitrust Litig.,*
2020 WL 1046784 (N.D. Ill. Mar. 4, 2020) .......................................................................7

*Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.,*
2014 WL 1431124 (D. Mass. Apr. 14, 2014) ...................................................................15

*Costa v. Wright Med. Tech., Inc.,*
2019 WL 108884 (D. Mass. Jan. 4, 2019) .......................................................................14

*DR Distribs LLC v. 21 Century Smoking, Inc.,*
513 F. Supp. 3d 839 (N.D. Ill. 2021) ...............................................................................16

*Epic Games Inc. v. Apple Inc.,*
2024 U.S. Dist. LEXIS 175943 (N.D. Cal. Sept. 27, 2024) ............................................16

*Feenix Payment Sys., LLC v. Steel Cap. Mgmt., LLC,*
2021 WL 3862008 (D. Del. Aug. 24, 2021) .....................................................................16

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.,*
2017 WL 10775410 (S.D. Fla. Mar. 14, 2017) ................................................................12

*Fiskars Finland Oy Ab v. Woodland Tools Inc.,*
2024 WL 2504717 (W.D. Wis. May 24, 2024) ..................................................................9

*FONA Int'l, Inc. v. Roddy,*
2021 WL 5352611 (N.D. Ill. Jan. 19, 2021) ......................................................................9

*Forth v. Walgreen Co.*,
 2019 WL 10255628 (N.D. Ill. July 10, 2019).................................................6, 7, 8, 13, 14, 15

*Heartland Recreational Vehicles, LLC v. Forest River, Inc.*,
 2010 WL 11579392 (N.D. Ind. Mar. 22, 2010).................................................................6

*Luxottica Grp. S.p.A. v. Yiwu Cujia Trade Co., Ltd.*,
 2023 WL 6520213 (N.D. Ill. Oct. 5, 2023)................................................................7, 8

*Midwest Gas Servs., Inc. v. Indiana Gas Co.*,
 2000 WL 760700 (S.D. Ind. Mar. 7, 2000)................................................................8, 13

*Motorola Sols., Inc. v. Hytera Commc'ns Corp.*,
 365 F. Supp. 3d 916 (N.D. Ill. 2019) ........................................................................11

*In re New Century*,
 2009 WL 9568860 (C.D. Cal. Jul. 8, 2009).................................................................12

*Norfolk Cnty. Ret. Sys. v. Ustian*,
 2010 WL 1489996 (N.D. Ill. April 13, 2010)...............................................................8

*In re Outpatient Med. Ctr. Emp. Antitrust Litig.*,
 2023 WL 4181198 (N.D. Ill. June 26, 2023) .......................................................7, 8, 13, 14, 15

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
 220 F.R.D. 246 (D. Md. 2004)................................................................................14

*Singer v. Nicor, Inc.*,
 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003) ............................................................14

*In re Spiegel, Inc. Sec. Litig.*,
 382 F. Supp. 2d 989 (N.D. Ill. 2004) ......................................................................14

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
 2017 WL 4680242 (N.D. Cal. Oct. 18, 2017)............................................................12

*West v. Miller*,
 2006 WL 2349988 (N.D. Ill. Aug. 11, 2006) ............................................................14

*In re WorldCom, Inc. Sec. Litig.*,
 2003 WL 22953645 (S.D.N.Y. Dec. 16, 2003) ..........................................................13

## **Rules / Statutes**

Fed. R. Civ. P. 26.................................................................................................6

Securities Exchange Act of 1934...............................................................................3

Defendant Archer-Daniels-Midland Company ("ADM" or the "Company") respectfully submits this Opposition to Plaintiffs' Motion to Compel the Production of Documents Produced to the SEC and DOJ (ECF No. 155, "Motion" or "Mot.").

## PRELIMINARY STATEMENT

Plaintiffs' Motion to Compel reflexively seeks every document ADM produced in response to requests from the SEC and DOJ, regardless of whether those documents are relevant to this action. This is a prototypical fishing expedition, and such "cloned discovery" is strongly disfavored. Plaintiffs' requests are all the more improper because it is clear that swaths of materials produced to the government are wholly irrelevant to this case. Plaintiffs have not met their burden (nor could they) to demonstrate that all documents produced to the government are discoverable in this case, and therefore their Motion to Compel should be denied.

*First*, requests for cloned discovery are disfavored, and courts routinely require a requesting party to fashion its own substantive discovery requests to avoid hampering the request recipient with producing irrelevant documents. That approach should be followed here because ADM's productions to the government contain documents that are completely irrelevant to Plaintiffs' allegations, both in substance and in timeframe. ADM should not be compelled to produce significant quantities of irrelevant documents to Plaintiffs merely because they would rather piggyback on the government's requests than pursue their own.

*Second*, Plaintiffs' arguments regarding purported "efficiencies" and the lack of burden on ADM misapprehend the law. Before burden or efficiencies are considered, courts require the moving party to demonstrate relevance, which Plaintiffs fail to do.

*Third*, ADM has offered a reasonable and efficient alternative to cloned discovery: (i) for certain already-identified categories of relevant documents, ADM will produce—indeed, it already has begun producing—responsive documents from ADM's government productions without the

need to apply search terms; and (ii) for the remainder, ADM will work with Plaintiffs to develop search terms to identify responsive documents. This approach will ensure Plaintiffs receive the relevant documents to which they are entitled without mandating the production of entire categories of irrelevant material. Courts routinely find this approach sensible and certainly preferable to cloned discovery.

Plaintiffs' Motion to Compel should be denied, and Plaintiffs should, as ADM has offered, meet and confer with ADM on appropriate search parameters to identify responsive documents.

## FACTUAL BACKGROUND

### I. ADM'S NUTRITION SEGMENT AND INTERSEGMENT TRANSACTIONS

ADM is a global agricultural supply chain manager and a premier provider of nutrition products. Ex. 1 (2023 Form 10-K) at 5. ADM reports financial results in three business segments, which are based on the nature of products and services offered: (1) Ag Services and Oilseeds ("AS&O"), (2) Carbohydrate Solutions ("Carb Solutions"), and (3) Nutrition. ECF No. 67 ("Amended Complaint", "Complaint" or "Compl.") ¶ 47. ADM's Nutrition segment purchases certain raw materials from both the AS&O and Carb Solutions segments (through "intersegment sales"), which Nutrition then uses as base ingredients in its end-consumer products. *Id.* ¶ 48.

### II. ADM CORRECTS CERTAIN ACCOUNTING DISCLOSURES AND RESPONDS TO GOVERNMENT INQUIRIES

On June 30, 2023, ADM received voluntary requests from the SEC "relating to, *among other things*, intersegment sales between the Company's Nutrition reporting segment and the Company's Ag Services and Oilseeds Carbohydrate Solutions reporting segments." Ex. 2 (2024 Form 10-K) at 19 (emphasis added). On January 21, 2024, ADM disclosed that the Company had initiated an internal investigation into accounting practices, including certain intersegment transactions, with respect to the Company's Nutrition segment following the receipt of a voluntary

2

request for information from the SEC. Compl. ¶ 75. That same day, ADM also received requests for documents from the U.S. Department of Justice, U.S. Attorney's Office for the Southern District of New York ("DOJ").[1]

The Government Requests include broad categories not limited to intersegment transactions. For example, the Government Requests sought ████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████. *See* Mot. Ex. F at 2. ADM has produced documents in response to the Government Requests (the "Government Productions").

On March 12, 2024, ADM filed its 2023 Form 10-K, which corrected certain accounting errors in ADM's financial statements. Compl. ¶ 188. Specifically, the 10-K stated that ADM had "identified certain intersegment sales that occurred between the Company's Nutrition reporting segment and the Company's Ag Services and Oilseeds and Carbohydrate Solutions reporting segments that were not recorded at amounts approximating market." *Id.* ¶ 189.

## III. PLAINTIFFS BRING THE PRESENT ACTION AND DEMAND CLONED DISCOVERY

Immediately following a January 21, 2024 press release announcing the receipt of voluntary requests from the SEC and ADM's related internal investigation, and even before ADM filed its 2023 Form 10-K correcting the intersegment accounting errors, a shareholder filed this putative class action alleging securities fraud. ECF No. 1. On June 24, 2024, Plaintiffs filed the Amended Complaint, asserting claims under Sections 10(b), 20(a), and 20A of the Securities

---

[1] The requests received from the SEC and DOJ are referred to collectively as the "Government Requests."

3

Exchange Act of 1934 on behalf of investors who purchased ADM common stock during the Class Period of April 30, 2020 through January 21, 2024 (the "Class Period").[2] Compl. ¶ 1.

Plaintiffs allege ADM made various misstatements during the Class Period, and the claimed fraud related to those statements is premised entirely on the allegation that ADM recorded "below market rates for intercompany sales of raw materials from ADM's other segments to the Nutrition segment." Compl. ¶ 3. Every purported misstatement is alleged to be misleading because certain intersegment sales were allegedly recorded at below-market prices. *See, e.g., id.* ¶ 94(a) (alleging that statements about Nutrition's operating profit were misleading because ADM's accounting of intersegment sales "inflate[d] Nutrition operating profit"); *id.* ¶ 135(b) (alleging statements about operating profits were misleading because they omitted that Nutrition's profits were "boosted . . . by recording intersegment sales to Nutrition at amounts below market rates"); *id.* ¶ 163(a) (alleging statements about internal controls were misleading because "ADM lacked adequate controls around the measurement of intersegment sales"). ADM denies these allegations and is confident that discovery will show that although ADM made certain reporting errors—which the Company has acknowledged and rectified—ADM did not commit securities fraud.

On March 21, 2025, Plaintiffs served their First Set of Requests for the Production of Documents, requesting only: "All Documents [ADM] Produced or will Produce to the SEC [and DOJ] in connection with the SEC [and DOJ] Investigation[s]." Mot. Ex. A at 4 ("RFPs"). From the outset, ADM objected to these requests on the grounds that they were patently overbroad and sought irrelevant documents, among other things. Mot. Ex. D at 6-7. ADM offered to meet and

---

[2]    Plaintiffs later supplemented their Complaint, extending the Class Period through November 4, 2024. ECF. 102, Ex. A at 1.

confer with Plaintiffs to determine an appropriate scope of a re-production of documents produced to the DOJ and SEC. *Id.*

In March 2025, the parties initially agreed upon a May 23, 2025 deadline for the substantial completion of the production of documents responsive to Plaintiffs' RFP Nos. 1 and 2, with substantial completion for the rest of ADM's document production being scheduled for December 3, 2025. ECF No. 113 at 2. However, the parties' meet-and-confer negotiations regarding the scope of ADM's production in response to RFP Nos. 1 and 2 has not gone as hoped. After several meet-and-confer discussions, on May 16, 2025, ADM offered to (i) produce five categories of documents produced in response to certain relevant Government Requests either in full without any additional review, or at minimum, on an expedited basis without the use of search terms;[3] and (ii) negotiate search terms to apply to the remainder of the Government Productions. Mot. Ex. F at 2-3. On May 23, 2025, Plaintiffs responded by demanding that ADM produce the entirety of the Government Productions. Ex. 3 (Letter from M. Oliver to J. Bernstein). That same day— which was also ADM's deadline to substantially complete its production of documents responsive to RFP Nos. 1 and 2—ADM produced 3,005 documents that were previously produced to the DOJ and SEC in accordance with ADM's May 16, 2025 offer.

On June 9, 2025, in an effort to "begin discussing mutually agreeable search terms to identify documents within the productions to the Government that are relevant to the intersegment transactions," ADM provided Plaintiffs with initial proposed search terms and a corresponding hit

---

[3]  Mot. Ex. F at 2-3.

report. Mot. Ex. H at 3, 5. ADM also stated it would continue its review of the identified categories of Government Production documents and make productions on a rolling basis. *Id.* at 3. Plaintiffs again rejected this proposal, would not engage in any discussion regarding a search term protocol, and repeated their demand for a full re-production of the Government Productions.

Plaintiffs filed the present Motion to Compel on June, 13, 2025. ECF No. 155. Shortly thereafter, on June 19, 2025, Plaintiffs served a Third Set of Requests for Production of Documents,[4] which include ***forty-eight additional requests***. *See* Ex. 5 (Plaintiffs' Third Set of RFPs). These requests were not framed in the alternative—Plaintiffs are now seeking both the entire Government Productions and presumably to engage in the typical negotiation of a search protocol to identify documents responsive to forty-eight additional requests for production.

## LEGAL STANDARD

Fed. R. Civ. P. 26(b)(1) permits discovery "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see Arsberry v. Wexford Health Sources, Inc.*, 2021 WL 5232733, at *8 (N.D. Ill. Nov. 10, 2021) ("Relevance and proportionality must [] be established at the outset before a court will even entertain any production of documents."). "The core requirement of any discovery request is that the information must be relevant." *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 2018 WL 946396, at *3-4 (N.D. Ill. Feb. 20, 2018). "Since Plaintiffs are the moving party, they bear the initial burden of establishing the relevance of the documents that they seek to compel." *Forth v. Walgreen Co.*, 2019 WL 10255628, at *4 (N.D. Ill. July 10, 2019). "[D]iscovery under Rule 26 is not an invitation to the proverbial fishing expedition." *Heartland Recreational Vehicles, LLC v. Forest River, Inc.*, 2010 WL 11579392, at *1 (N.D. Ind. Mar. 22, 2010). "Unless the requestor can demonstrate that

---

[4] Plaintiffs' Second Set of Requests for Production to ADM sought organizational charts. Ex. 4 (Plaintiffs' Second Set of RFPs).

6

the materials sought are relevant, judges should not hesitate to exercise appropriate control over the discovery process. Phrased differently, fishing expeditions in discovery are prohibited because the information being sought is ultimately not relevant." *BankDirect Cap. Fin., LLC*, 2018 WL 946396, at *4 (internal quotation omitted).

## ARGUMENT

### I. PLAINTIFFS' OVERBROAD REQUEST FOR ALL GOVERNMENT PRODUCTIONS SEEKS IRRELEVANT DOCUMENTS

Plaintiffs' mechanical request that ADM produce the entirety of the Government Productions is improper because the Government Productions include significant categories of documents that are irrelevant to Plaintiffs' claims in this action.

#### A. Plaintiffs Seek Improper And Disfavored "Cloned Discovery"

Plaintiffs' demand that ADM produce all documents produced to the government constitutes "cloned discovery," and "[c]ourts in this district disfavor 'cloned discovery' requests seeking all documents produced or received during other litigation or investigations." *In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 2023 WL 4181198, at *6 (N.D. Ill. June 26, 2023) (citing *In re Broiler Chicken Antitrust Litig.*, 2020 WL 1046784, at *2 (N.D. Ill. Mar. 4, 2020) (Durkin, J.)). Such requests are often "facially overbroad." *Broiler Chicken*, 2020 WL 1046784, at *2 ("[R]eflexive production of documents previously provided to governmental entities is not appropriate. Rather, documents are discoverable only if they are relevant to a claim or defense in the case."); *Luxottica Grp. S.p.A. v. Yiwu Cujia Trade Co., Ltd.*, 2023 WL 6520213, at *4 (N.D. Ill. Oct. 5, 2023) (denying motion to compel cloned discovery); *Forth v. Walgreen Co.*, 2019 WL 10255628, at *6 (N.D. Ill. July 10, 2019) (same).

"[T]here could be a number of reasons why documents appropriately requested and provided in another case—even if the subject of those cases seem to overlap—would be irrelevant

7

or burdensome to produce in another case." *Outpatient*, 2023 WL 4181198, at *7 (quotation omitted). "Thus, a party seeking documents produced in another matter ordinarily must 'do their own work and request the information they seek directly' and 'must make proper requests describing the information in which they are interested.'" *Id.* (quoting *Midwest Gas Servs., Inc. v. Indiana Gas Co.*, 2000 WL 760700, at *1 (S.D. Ind. Mar. 7, 2000)).

In short, cloned discovery is not an acceptable shortcut to thoughtful discovery requests and good faith efforts to work with the other side to reach discovery agreements that result in the timely production of relevant materials.

**B.**      **The Government Productions Contain Documents Irrelevant To This Action**

ADM does not contest that there is some subject-matter overlap between the DOJ and SEC investigations and this case. And it has offered to produce documents falling within those overlapping categories. But that overlap is not coextensive, nor close to it. That reality, which Plaintiffs do not want to acknowledge, is crippling to their cloned discovery demand. Indeed, courts routinely deny motions to compel cloned discovery even if "it is likely that a large portion of documents . . . are relevant, [if] Plaintiffs have not established the relevance of *all* documents." *Outpatient*, 2023 WL 4181198, at *7 (emphasis added); *see also Forth*, 2019 WL 10255628, at *4 ("[W]hile there may be *some* overlap with Plaintiffs' lawsuit, . . . many of the allegations are different.") (emphasis added); *Luxottica*, 2023 WL 6520213, at *4 (similar); *Norfolk Cnty. Ret. Sys. v. Ustian*, 2010 WL 1489996, at *3 (N.D. Ill. April 13, 2010) (similar).

Plaintiffs' assertion that ADM "has yet to identify any subject covered by the government investigations that is irrelevant to this case" (Mot. 7) is wrong. ADM already has identified multiple categories of documents within the Government Productions that are not relevant to the claims in this action. *See* Mot. Ex. F at 2-3 Below are several examples:

***All Communications Between Certain Individuals:*** One Government Request was for

8

██████████████████████████████████████████████████████

████████████████████████████████████████, regardless of substance, ████████████████

████████████████████████████ Mot. Ex. H at 2-3. This category obviously includes communications completely irrelevant to any claims or defenses in this action, as it would sweep in *every single communication*, including, for example, one person asking another's coffee preference. There are other similar categories of documents within the Government Productions, including all communications between long lists of individuals for periods pre-dating the Class Period in this action. Mot. Ex. H at 2-3. Plaintiffs argue that these communications are relevant because all the individuals are "███████████████████████████████████████

████████████████████████████████████████████, all of whom are likely to have information relevant to Plaintiffs' claims." Mot. 9-10. But courts do not permit the discovery of *all* communications involving certain custodians merely because those individuals may have relevant information in *some* of their communications. Search parameters are required to identify relevant communications for production. *See, e.g., FONA Int'l, Inc. v. Roddy*, 2021 WL 5352611, at *5 (N.D. Ill. Jan. 19, 2021) (denying motion to compel all communications "regardless of subject matter"); *Fiskars Finland Oy Ab v. Woodland Tools Inc.*, 2024 WL 2504717, at *5 (W.D. Wis. May 24, 2024) (denying motion to compel plaintiff's request for "communications with third parties regardless of the subject matter of the communication").[5]

*Calendar Invites and Call Logs:* Another Government Request seeks: ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

---

[5] Producing all communications is categorically different from the discovery ordered in Plaintiffs' authority (Mot. 8, n.6), which included the production of board minutes containing relevant information. *In re Atl. Fin. Fed. Sec. Litig.*, 1991 WL 153075, at *3 (E.D. Pa. Aug. 6, 1991).

███████████████████████████ Mot. Ex. H at 2-3. ADM is willing to produce relevant documents within this category, but not **all** such meetings (related to any business segment) are relevant to Plaintiffs' allegations regarding intersegment sales of raw materials to ADM's Nutrition segment. AC ¶ 3. Plaintiffs' only argument—that for these meetings and calls, the "time period is relevant to this lawsuit" (Mot. 8)—is inadequate. For starters, the category includes documents that pre-date the Class Period, but it also is simply untethered to the subject matter of this case.

*Accounting Memoranda:* By way of another example, a Government Request sought

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████ Mot. Ex. H at 2-3. Plaintiffs argue these documents "relate to the question of how the raw materials involved in the intersegment sales were priced and recorded" (Mot. 9), but the obvious flaw with this argument is that the requested documents are not limited to the materials involved in the Nutrition segment or intersegment sales. ADM is willing to produce relevant documents within this category relating to intersegment sales, but not ██████████████████████████████

████████ among other things, are relevant.

████████████████████      ████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████

These are just a handful of examples demonstrating the sweeping breadth of the Government Productions compared to the narrower scope of documents relevant to Plaintiffs' claims. Faced with this disconnect, Plaintiffs attempt to expand their allegations, but the Complaint does not support such revisionism. Plaintiffs' allegations are premised on purported "accounting fraud involv[ing] charging below market rates for intercompany sales of raw materials from ADM's other segments to the Nutrition segment." Compl. ¶ 3; *see also id.* ¶¶ 11-14. Plaintiffs now assert their allegations related to "broader internal control weaknesses, [and] false and misleading statements in ADM's financial statements and conference calls." Mot. 7. This expansive and malleable description could include practically *any* misstatement in *any* financial statement, or *any* control deficiency, and just about *any* related company document or communication. That is not what is alleged in the Complaint. Although Plaintiffs now label certain statements as being about "internal controls" and "financial results and accounting," each of these statements was alleged to have been misleading *due to allegedly misstated financials for Nutrition related to intersegment transactions*. Compl. ¶¶ 94, 106, 115, 122, 135, 144, 152, 157, 167. When viewed in light of Plaintiffs' *actual* allegations, it is clear that the Government Productions extend well beyond what is discoverable in this case. *Cf. Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 365 F. Supp. 3d 916, 924 (N.D. Ill. 2019) (plaintiffs not entitled to discovery on the "general subject matter" of the complaint).

Next, Plaintiffs attempt to stretch their allegations to meet the contours of the government investigations by claiming that "journalists reporting on the government investigations have confirmed that the investigations relate directly to the issues in this case." Mot. 4, 6-7. In fact, the article cited by Plaintiffs only confirms that the government investigations are broader than the Complaint here by expressly referencing "impaired inventories" and other "activity that didn't

involve Nutrition." Mot. Ex. B.[6] Plaintiffs' Complaint makes no mention of any such "activity." In any event, Plaintiffs' suggestion that this Court make a relevance determination and compel discovery based on a news article is not compelling.

In sum, the multiple categories and sub-categories of documents in the Government Productions that are plainly irrelevant to Plaintiffs' claims should end the dispute. The parties should work together on a reasonable search protocol, and ADM will promptly review and produce responsive documents pursuant to that protocol.[7]

### C. Purported "Efficiencies" Do Not Warrant Cloned Discovery

Plaintiffs' argument that cloned discovery here will "yield great efficiencies" (Mot. 12-14) is both inaccurate and ignores that discovery standards focus on relevance and proportionality—not expedience. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017) ("[I]t would almost always be more efficient for a defendant to open up [its] document repositories for the opposing side to rifle through[.] But such a practice would expand the scope of discovery beyond that allowed by the Federal Rules.") (internal quotations and citations omitted).

Plaintiffs argue cloned discovery "will assist Lead Plaintiffs in becoming better informed to advance the litigation" (Mot. 13), but "a party seeking documents produced in another matter ordinarily must 'do their own work and request the information they seek directly' and 'must make

---

[6] This is consistent with ADM's 2023 Form 10-K, which disclosed that the investigations related to, "*among other things*, intersegment sales." Ex. 2 (2024 Form 10-K) at 19 (emphasis added).

[7] Plaintiffs' out-of-Circuit authorities (Mot. 11-12) do not alter the analysis. In *Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, the court largely denied a motion to compel in, ordering the defendant to produce only a subset of documents relevant to the claims at issue. 2022 WL 17339035, at *3-7 (E.D. Pa. Nov. 30, 2022). In *In re New Century*, the government investigation concerned "the same restatement and accounting errors" at issue in the case, yet the court limited defendant's production to documents within the relevant time period. 2009 WL 9568860, at *5 (C.D. Cal. Jul. 8, 2009); *see also Fernandez v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2017 WL 10775410, at *1 (S.D. Fla. Mar. 14, 2017) (compelling production of communications with FINRA when communications related to claims).

proper requests describing the information in which they are interested,'" *Outpatient*, 2023 WL 4181198, at *7 (quoting *Midwest Gas Servs.*, 2000 WL 760700, at *1); *Forth*, 2019 WL 10255628, at *4 ("[Plaintiffs] are interested in the content of documents and for that they must make proper requests describing the information in which they are interested.") (quotations omitted); *In re WorldCom, Inc. Sec. Litig.*, 2003 WL 22953645, at *7 (S.D.N.Y. Dec. 16, 2003) (a party who is "well-represented [] can fashion their own discovery requests").

Further, Plaintiffs' contention that requiring ADM to re-produce the Government Productions in their entirety would "narrow and target future discovery requests" (Mot. 13) is not credible given their recent requests. Since Plaintiffs filed their Motion, while still refusing to engage in any substantive discussion on agreeable search terms, they have served *forty-eight additional document* requests on ADM. Ex. 5. Presumably, these additional requests seek "the information in which [Plaintiffs] are interested," as they are required to do. *Outpatient*, 2023 WL 4181198, at *7 (quoting *Midwest Gas Servs.*, 2000 WL 760700, at *1).

Plaintiffs' authority offers them no support. Notably, in *In re Broiler Chicken Antitrust Litigation*, the court held that it "will not [] order production of all the documents CID Defendants have produced to [the government]," instead ordering only the production of documents produced to the government in response to certain requests to which "Defendants do not raise a relevance objection[.]" 2017 WL 4417447, at *7 (N.D. Ill. Sept. 28, 2017). *Supra* Section III. Similarly, in *Costa v. Wright Med. Tech., Inc.*, the court denied in part a motion for cloned discovery as it related to a product "distinct from the product at issue here," as such discovery "would likely result in production of information with little or no relevance to this case." 2019 WL 108884, at *2 (D.

13

Mass. Jan. 4, 2019). Here, ADM already has agreed to produce documents produced to the government in response to specific requests seeking relevant documents.[8]

### D. The Court Need Not Consider Burden Because Plaintiffs Have Not Established Relevance

Plaintiffs similarly miss the mark in invoking the "minimal burden" (Mot. 10) of ADM reproducing the Government Productions. Plaintiffs are not entitled to irrelevant discovery merely because the burden is not significant. *See, e.g.*, *Outpatient*, 2023 WL 4181198, at *7 ("While it is likely that a large portion of documents SCA provided to the DOJ are relevant, Plaintiffs have not established the relevance of all documents and thus, the Court need not reach SCA's burden argument."); *Forth*, 2019 WL 10255628, at *6 ("Without the predicate showing of relevancy, there is no need for this Court to undertake a balancing of benefit and burden, including an assessment of proportionality."); *West v. Miller*, 2006 WL 2349988, at *2 (N.D. Ill. Aug. 11, 2006) (plaintiffs must show relevance before the burden shifts to defendants to demonstrate undue burden). Notably, relevance was not disputed in the case Plaintiffs cite (Mot. 10). *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004).

## IV. ADM HAS PROPOSED A REASONABLE ALTERNATIVE

As noted above, ADM has offered a reasonable two-part compromise to identify and produce relevant documents: (i) for certain categories of relevant documents, ADM will continue producing responsive documents from the Government Productions without applying search terms; and (ii) for the remainder, ADM will work with Plaintiffs to develop search terms to identify

---

[8] Plaintiffs' reliance on cases lifting discovery stays (Mot. 14) doesn't help them either. In *In re Spiegel, Inc. Securities Litigation*, the plaintiff sought only documents produced to the government "concerning the securities fraud alleged in the Complaint." 382 F. Supp. 2d 989, 1039 (N.D. Ill. 2004). Similarly, in *Singer v. Nicor, Inc.*, the court lifted the stay of discovery to compel the production of documents produced to the government regarding "the same conduct that is at issue" in the securities action, and the relevance of the documents was not at issue. 2003 WL 22013905, at *1-2 (N.D. Ill. Apr. 23, 2003).

responsive documents. Mot. Ex. F at 3; Mot. Ex. H at 3. Courts routinely endorse this approach. *See, e.g.*, *Outpatient*, 2023 WL 4181198, at *7 (denying motion to compel cloned discovery where defendant agreed to run search terms over documents produced to the government); *Forth*, 2019 WL 10255628, at *6 (same); *Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*, 2014 WL 1431124, at *2 (D. Mass. Apr. 14, 2014) ("Defendants have offered to run agreed-upon search terms over their productions to the SEC and New York Attorney General, which should be sufficient to capture materials relevant to the issues in this case. Beyond that arrangement, plaintiff's request for all documents produced in other actions and investigations is denied.").

Plaintiffs have offered no reason why ADM's proposal would be insufficient, nor have they even tried to engage with ADM in negotiating potential search terms. Plaintiffs contend that ADM's productions to date somehow support ADM being compelled to reproduce the entire Government Productions. Mot. 15. Not so. Any delay in production has been directly caused by Plaintiffs' refusal to engage in any meaningful meet-and-confer discussions regarding agreeable search terms or any other method for identifying responsive documents within the Government Productions.[9] As of the date of this filing, ADM continues to produce documents on a rolling basis and is reviewing documents consistent with the search terms it proposed and stands ready to negotiate with Plaintiffs on a reasonable and efficient search protocol.[10]

## CONCLUSION

For the reasons stated above, Plaintiffs' Motion to Compel should be denied.

---

[9] In Plaintiffs' inapt authority (Mot. 15), the courts granted motions to compel where documents were introduced for the first time in summary judgment briefing, *DR Distribs LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 939-40 (N.D. Ill. 2021), a party refused to disclose its search parameters, *Feenix Payment Sys., LLC v. Steel Cap. Mgmt., LLC*, 2021 WL 3862008, at *2 (D. Del. Aug. 24, 2021), or a party misrepresented its hits counts to the court, *Epic Games Inc. v. Apple Inc.*, 2024 U.S. Dist. LEXIS 175943, at *10 (N.D. Cal. Sept. 27, 2024).

[10] On June 27, 2025, ADM produced 1,578 documents that had been previously produced to the government.

15

Date: June 30, 2025

/s/ Tyler C. Murray

Tyler C. Murray
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel: (312) 705-7418
tylermurray@quinnemanuel.com

Michael B. Carlinsky (*pro hac vice* forthcoming)
Jesse Bernstein (admitted *pro hac vice*)
Heather Christenson (admitted *pro hac vice*)
Alex Rossmiller (admitted *pro hac vice*)
Leigha Empson (*pro hac vice* forthcoming)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
295 Fifth Avenue
New York, NY 10016
Tel: (212) 849-7000

Paul T. Dacier (admitted *pro hac vice*)
**QUINN EMANUEL URQUHART & SULLIVAN LLP**
111 Huntington Avenue, Suite 520
Boston, MA 02199
Tel : (617) 712-7100
pauldacier@quinnemanuel.com

*Counsel for Defendant Archer-Daniels-Midland Company*

16