# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RAYMOND CHOW, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ARCHER-DANIELS-MIDLAND COMPANY, et al., <br><br> Defendants. | Case No. 1:24-cv-00634 <br> Judge Thomas M. Durkin <br><br> <u>CLASS ACTION</u> <br><br><br> **JURY TRIAL DEMANDED** |

**LEAD PLAINTIFFS' THIRD SET OF**
**REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") and the Local Rules of the United States District Court for the Northern District of Illinois, and subject to the definitions set forth below, Lead Plaintiffs KBC Asset Management NV, Ethenea Independent Investors S.A., and the National Elevator Industry Pension Fund ("Plaintiffs") request that Defendants Archer-Daniels-Midland Company, Juan Luciano, Vikram Luthar, Ray Young, and Vincent Macciocchi produce for inspection and copying within thirty (30) days of the date of service, the following documents within your actual or constructive possession, custody, or control, to the offices of Robbins Geller Rudman & Dowd LLP, 55 South Main Street, Suite 390, Naperville, Illinois 60540, or at such other time and place as the parties mutually agree.

**I.      DEFINITIONS**

1.      "You" or "Your" means the person or entity responding to these Requests.

1

2. "2023 Form 10-K" refers to ADM's March 12, 2024 Form 10-K for the fiscal year ended December 31, 2023.

3. "2023 Form 10-K/A" refers to ADM's November 18, 2024 Amendment No. 1 to the 2023 Form 10-K.

4. "2024 Form 10-K" refers to ADM's February 20, 2025 Form 10-K for the fiscal year ended December 31, 2024.

5. "Action" refers to the above-referenced action, currently pending in the United States District Court for the Northern District of Illinois, Case No. 1:24-cv-00634.

6. "ADM" means defendant Archer-Daniels-Midland Company, together with each subsidiary, joint venture or associate, division, officer, director, employee, agent, attorney or representative, any person or entity that acted or purported to act on behalf of any of the foregoing, and all other entities, directly or indirectly, owned, operated, or controlled by ADM.

7. "Ag Services and Oilseeds" means ADM's reportable business segment referenced on page 6 of the 2024 Form 10-K. For the avoidance of doubt, a reference to Ag Services and Oilseeds also encompasses Agricultural Services and Oilseeds Processing which were separate operating segments until July 2019.

8. "Answer" refers to Archer-Daniels-Midland Company's and Juan Luciano's Answer and Defenses to Lead Plaintiffs' Amended Complaint and Supplement (ECF No. 117); Defendant Ray Young's Answer and Affirmative Defenses to Lead Plaintiffs' Complaint and Supplement to Complaint (ECF No. 118); Defendant Vikram Luthar's Answer and Defenses to Lead Plaintiffs' Amended Complaint and Supplement (ECF No. 119); and Defendant Vincent Macciocchi's Answer and Affirmative Defenses (ECF No. 120).

2

9. "Audit Committee" refers to the Audit Committee of the Board (defined below) and any member of that committee.

10. "Board" refers to ADM's Board of Directors.

11. "Carbohydrate Solutions" means ADM's reportable business segment referenced on page 7 of the 2024 Form 10-K. For the avoidance of doubt, a reference to Carbohydrate Solutions also encompasses the reporting segment formerly known as "Corn Processing."

12. "Communication(s)" refers to every manner or means of transmittal or exchange of information (in the form of facts, ideas, inquiries or otherwise), whether transmitted or exchanged orally, electronically, or by any other means, be they analog, electronic, or otherwise, including but not limited to by: document, in-person delivery, telephone, telecopier, speech, letter, mail, correspondence, memorandum, fax, or email; text message, social media message, instant message, or other electronic message (including, but not limited to via EMS, MMS, iMessage, WhatsApp, WeChat, Facebook, Instagram, Snapchat, Twitter, Slack, Teams, Skype, and G-chat); shared applications for cellular phones; phone, text, or chat logs; and recordings, photographic files of all types, or any other media of any kind. "Communication(s)" is included within the scope of the term Documents (defined below).

13. "Complaint" means Lead Plaintiffs' Complaint for Violations of the Federal Securities Laws (ECF No. 67).

14. "Concerning" means reflecting, regarding, relating to, referring to, describing, discussing, evidencing, or constituting.

15. "Defendants" refers to ADM and the Individual Defendants (defined below).

16. "Document(s)" is defined to be synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A),

3

and includes, without limitation, drafts or non-identical copies, ESI (defined below), and Communications.

17. "DOJ" means the United States Department of Justice.

18. "DOJ Investigation" refers to the DOJ investigation referenced on page 19 of the 2024 Form 10-K and in Paragraphs 8 and 12 of the Supplement (defined below), and includes, but is not limited to, the DOJ's January 2024 document requests to ADM referenced in Paragraph 301 of the Complaint.

19. "Electronically stored information" or "ESI" refers to any original and any non-identical copies (whether non-identical because of notes made on copies or attached comments, annotations, marks, transmission notations, or highlighting of any kind), mechanical, facsimile, electronic, magnetic, digital or other programs (whether private, commercial, or work-in-progress), programming notes or instructions, activity listings of electronic mail receipts or transmittals, output resulting from the use of any software program, including any word processing documents, spreadsheets, database files, charts, graphs and outlines, electronic mail or "email," operating systems, source code of all types, programming languages, linkers and compilers, peripheral drives, PDF files, PRF files, batch files, ASCII files, crosswalks, code keys, pull down tables, logs, file layouts or any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether said electronic data consists of an active file, backup file, deleted file, or file fragment. "ESI" also includes, without limitation, any items stored on computer memory or memories, hard drives, zip drives, CD-ROM discs or in any other vehicle for electronic or digital data storage or transmittal, files, folder tabs or containers and labels appended to or associated with any physical storage device associated with each original and each copy.

20.     "Ernst & Young" refers to Ernst & Young and any of its members (as defined by 0.400.12 and 0.400.18, formerly ET §92.07 and ET §92.11, respectively, of the American Institute of Certified Public Accountants Code of Professional Conduct, adopted January 12, 1988 and renumbered effective December 15, 2014) and any of Ernst & Young's predecessors, successors, parents, subsidiaries, divisions, partnerships, and branches; its international, foreign, national, regional and local offices; all present or former officers, directors, partners, employees, agents, attorneys, advisors, accountants, consultants, and all other persons acting or purporting to act on its behalf.

21.     "Government Investigations" refers to the DOJ Investigation and SEC Investigation (defined below).

22.     "HBS Case Study" means the Harvard Business School case study titled, "To Feed the Planet: Juan Luciano at ADM," referenced in the Complaint.

23.     "Individual Defendants" refers to Juan Luciano, Vikram Luthar, Ray Young, and Vincent Macciocchi, and their agents, attorneys, advisors, accountants, and all other persons acting or purporting to act on their behalf.

24.     "Internal Investigation" refers to any and all of the following:

(a)     the "ongoing investigation" referenced on page 1 of ADM's Report on Form 8-K dated January 22, 2024;

(b)     the "Audit Committee investigation" referenced on page 3 of ADM's Report on Form 8-K dated January 22, 2024; and

(c)     the "internal investigation regarding certain accounting practices and procedures with respect to its Nutrition reporting segment, including as related to certain intersegment sales (the Investigation)" referenced on page 8 of the 2023 Form 10-K.

25. "Investigations" refers to the Government Investigations and the Internal Investigation.

26. "Meeting" refers to the contemporaneous presence of any natural persons (including by telephone or video conference) for any purpose, whether or not such presence was by chance or prearranged, and whether or not the Meeting was formal or informal or occurred in connection with some other activity.

27. "Nutrition" means ADM's reportable business segment referenced on page 7 of the 2024 Form 10-K.

28. "Operating Profit" means consolidated earnings before income taxes adjusted for Other Business, Corporate, and specified items, and has the same meaning as used by ADM on page 40 of the 2024 Form 10-K.

29. "Produce" or "Produced" is not limited to formal Document productions and includes, but is not limited to, any Documents that were provided, sent, made available for inspection, shared, turned over, or otherwise transmitted whether formally or informally and by any means (e.g., email, file share, handout, courier, screen-share, postal service).

30. "Refer" or "Relate" or "Referring" or "Relating" means all Documents which comprise, explicitly or implicitly refer to, were reviewed in conjunction with, or were created, generated, or maintained as a result of the subject matter of the Request, including, without limitation, all Documents which reflect, record, memorialize, embody, discuss, evaluate, consider, review, or report on the subject matter of the Request.

31. "Reporting Segments" means Nutrition, Ag Services and Oilseeds, and Carbohydrate Solutions.

32. "Restated Transactions" refers to the intersegment and intrasegment transactions that were restated in the First Restatement (defined below) and the Second Restatement (defined below).

33. "First Restatement" refers to the restatement or corrections of ADM's consolidated financial statements and related disclosures as set forth in the 2023 Form 10-K.

34. "Second Restatement" refers to the restatement or adjustment of ADM's consolidated financial statements and related disclosures as set forth in ADM's 2023 Form 10-K/A, first quarter of 2024 Form 10-Q/A, and second quarter of 2024 Form 10-Q/A, each filed November 18, 2024.

35. "SEC" means the United States Securities and Exchange Commission.

36. "SEC Investigation" refers to the SEC investigation referenced on page 19 of the 2024 Form 10-K, and includes, but is not limited to, the SEC's June 30, 2023 voluntary document request to ADM referenced in Paragraph 301 of the Complaint and the "additional document request from the SEC" referenced in Paragraph 302 of the Complaint and on Page 33 of ADM's April 30, 2024 Form 10-Q for the quarterly period ended March 31, 2024.

37. "Supplement" means the Supplement to Lead Plaintiffs' Complaint for Violations of the Federal Securities Laws (ECF No. 105).

## II. FORM OF PRODUCTION

Hard copy Documents and ESI should be produced in accordance with the ESI Order entered in this Action. ECF No. 153.

## III. RELEVANT TIME PERIOD

Unless otherwise specifically indicated, the Requests herein refer to the period from January 1, 2018 through February 28, 2025 ("the Relevant Time Period") and shall include Documents and information that relate to such period, even though prepared or published outside

7

of the Relevant Time Period. If a Document prepared before this period is necessary for a correct or complete understanding of any document covered by a Request, you must produce the earlier Document as well. If any Document is undated and the date of its preparation cannot be determined, the Document shall be produced if otherwise responsive to the Request.

## IV. DOCUMENT REQUESTS

**REQUEST FOR PRODUCTION NO. 4:**

All Documents Concerning ADM's policies, practices, and procedures regarding the accounting for or disclosures Relating to intersegment sales, and any changes thereto.

**REQUEST FOR PRODUCTION NO. 5:**

All Documents Concerning the potential or actual application of, and ADM's compliance or non-compliance with, rules or principles (such as GAAP) Relating to the accounting for, or disclosures regarding, intersegment sales, including ASC 280, *Segment Reporting*, ASC 606, *Revenue from Contracts with Customers*, and ASC 810, *Consolidation*.

**REQUEST FOR PRODUCTION NO. 6:**

All Documents Concerning Ernst & Young's review of, or professional services Relating to: (i) ADM's accounting practices, policies and procedures; (ii) ADM's intersegment transactions; (iii) ADM's intrasegment transactions; (iv) ADM's segment reporting; (v) the Restated Transactions; and (vi) ADM's internal controls or any deficiencies or material weaknesses in internal controls.

**REQUEST FOR PRODUCTION NO. 7:**

All Documents Concerning ADM's intersegment transactions Relating to:

> (a)  draft and final term sheets for the "production and commercialization" of products;

(b)     responsibility for production costs;

(c)     responsibility for marketing activities;

(d)     responsibility for logistics activities;

(e)     hedging of currency or other impacts;

(f)     pricing or transfer pricing methodologies;

(g)     transfer of risk activities, risk management, or risk sharing;

(h)     profit sharing or cost sharing;

(i)     discounts, rebates, pricing relief, or credits;

(j)     costs of goods sold;

(k)     inventory write downs or write offs;

(l)     movement of inventory;

(m)     quality adjustments;

(n)     using a "toller" or "tolling fee" method; and

(o)     transferring Operating Profit.

**REQUEST FOR PRODUCTION NO. 8:**

For products or materials sold to Nutrition during the Relevant Period, all Documents Concerning the prices applied to sales made by ASO or Carb Solutions (whether sold to Nutrition, each other, or external customers), including Documents Relating to:

(a)     how and by whom prices for such sales were determined, changed, or adjusted;

(b)     the application of market or other pricing for such sales, and any changes or adjustments thereto;

9

(c)      the role or application of any public benchmarks, trading, futures, or options prices in determining the price for such sales, including as reflected on the CME, CBOT, NYMEX, or COMEX;

(d)      the negotiation of prices for such sales, including the arm's length nature of any negotiations or transactions;

(e)      any discounts, rebates, risk-sharing, pricing relief, or credits applied to such sales; and

(f)      any differences between the prices, discounts, rebates, or risk-sharing applied to sales to Nutrition, as compared to sales to external customers or sales to each other.

**REQUEST FOR PRODUCTION NO. 9:**

All Documents constituting or Concerning the Master Data Governance Board's Communications Relating to intersegment sales.

**REQUEST FOR PRODUCTION NO. 10:**

All Documents Concerning ADM's expansion into Nutrition and efforts to grow Nutrition, including Documents Relating to who was involved in the decision to expand into Nutrition, the reasons for expanding into and growing Nutrition, any potential or actual acquisitions by ADM through which it intended to grow Nutrition, decisions or efforts Relating to the allocation of capital or resources to grow Nutrition, and expected benefits from the expansion and growth.

**REQUEST FOR PRODUCTION NO. 11:**

All Documents Concerning Nutrition's performance or Operating Profit, including Documents Relating to:

10

(a)  the role and significance of Nutrition's performance or Operating Profit to ADM's business strategy, valuation, earnings, profitability, and cash flows, including Documents Relating to the predictability, stability, and importance of Nutrition Operating Profit and earnings;

(b)  the potential, expected, or actual impact of Nutrition's performance or Operating Profit on employee compensation;

(c)  the potential, expected, or actual impact of Nutrition's performance or Operating Profit on ADM's stock price or valuation;

(d)  the potential, expected, or actual reaction or reporting of ADM's investors, media, investment banks, or analysts following ADM regarding Nutrition Operating Profit or performance;

(e)  ADM's objective to get Nutrition to be about 25% of ADM's Operating Profit or to replace the Operating Profits of other Reporting Segments, including as referenced in ¶¶65-67, 262 of the Complaint;

(f)  budgets, financial planning activities, forecasts, growth targets, projections, or executive Meetings Concerning Nutrition's performance or Operating Profit;

(g)  internal or public concerns or negative commentary about Nutrition's performance or Operating Profit, including any gaps or shortfalls in budgets, projections, or expectations;

(h)  pressures or incentives placed on ADM employees to improve Nutrition's performance or Operating Profit or to meet Nutrition profit forecasts or growth targets;

(i)  proposed or actual efforts to improve Nutrition's performance or Operating Profit or to meet profit forecasts or growth targets, including through intersegment sales,

11

cost breaks, donations to Nutrition, pulling levers, re-segmenting businesses or modifying segments, providing subsidies or discounts, or otherwise taking steps to transfer, move, or allot Operating Profit from other Reporting Segments to Nutrition; and

(j)     the potential, expected, or actual impact intersegment sales had on Nutrition's performance or Operating Profit.

**REQUEST FOR PRODUCTION NO. 12:**

All Documents Concerning the Internal Investigation, including Documents Relating to the scope of the Internal Investigation (and any changes thereto), all Documents obtained or reviewed as part of the Internal Investigation, all interviews given in connection with the Internal Investigation, all memoranda created in connection with the Internal Investigation, and all Documents forming the bases for all findings or conclusions of the Internal Investigation.

**REQUEST FOR PRODUCTION NO. 13:**

All Documents Concerning the First Restatement, including all Documents Relating to the decision to restate or correct ADM's financials, any materiality assessments, and the bases for and facts supporting the First Restatement.

**REQUEST FOR PRODUCTION NO. 14:**

All Documents Concerning the Second Restatement, including all Documents Relating to the decision to restate ADM's financials, any materiality assessments, and the bases for and facts supporting the Second Restatement.

**REQUEST FOR PRODUCTION NO. 15:**

All Documents constituting the underlying documentation for the Restated Transactions, including product pricing lists, purchase orders, invoices, contracts, term sheets, and agreements.

**REQUEST FOR PRODUCTION NO. 16:**

All Documents Concerning the Restated Transactions, including requests, proposals, negotiations, projections, budgets, estimates, prices, discounts, rebates, credits, and absorption of fixed costs.

**REQUEST FOR PRODUCTION NO. 17:**

All Documents Concerning, or forming the basis of, ADM's statements that:

- "the Company identified certain intersegment sales that occurred between the Company's Nutrition reporting segment and the Company's Ag Services and Oilseeds and Carbohydrate Solutions reporting segments that were not recorded at amounts approximating market," as stated on page 8 of ADM's 2023 Form 10-K;

- "The immaterial error corrections generally arise from the measurement of intersegment sales pricing or rebates relating to products sold to the Nutrition reporting segment by the Ag Services and Oilseeds and Carbohydrate Solutions reporting segments" as stated on page 35 of ADM's 2023 Form 10-K;

- "ADM identified additional misclassified intersegment transactions. These newly identified errors concern additional intersegment sales for each of its Ag Services and Oilseeds, Carbohydrate Solutions and Nutrition segments that included certain intrasegment sales and should have included exclusively intersegment sales," as stated in ADM's Press Release dated November 4, 2024; and

- "The Company also identified some intersegment transactions between Ag Services and Oilseeds and Carbohydrate Solutions that were not accounted for consistently in accordance with revenue recognition and segment reporting standards and should not have been reported as intersegment sales," as stated in ADM's Press Release dated November 4, 2024.

**REQUEST FOR PRODUCTION NO. 18:**

All Documents Concerning any deficiencies or weaknesses in ADM's internal controls, including the material weakness referenced on pages 4-5, 19, 22, 35, 71, 107, 118, 121-124 of the 2023 Form 10-K/A.

**REQUEST FOR PRODUCTION NO. 19:**

13

All Documents Concerning any remedial measures defined, identified, or referenced in ADM's Forms 10-K, Forms 10-Q, press releases, and public statements, including those referenced on pages 4, 22, 71, 107, 123-124 of the 2023 Form 10-K/A.

**REQUEST FOR PRODUCTION NO. 20:**

Documents sufficient to identify ADM's internal control policies, procedures, and practices, as well as all Documents Concerning any actual or potential investigations of any actual or potential violations of such policies, procedures, and practices, and all Documents relied upon in certifying the effectiveness of ADM's internal control policies, procedures, and practices in its SEC filings.

**REQUEST FOR PRODUCTION NO. 21:**

All Documents Concerning any actual or potential improper or inappropriate conduct by any ADM employee Relating to the subject matter(s) of the Investigations.

**REQUEST FOR PRODUCTION NO. 22:**

All Documents Concerning Vincent Macciocchi's "retirement" from ADM effective at the end of 2023, as referenced in ¶304 of the Complaint. This Request includes Documents Relating to the reasons Vincent Macciocchi left ADM, and Vincent Macciocchi's "discussions" with another company "for a different opportunity," as referenced on page 9 of Memorandum of Law in Support of Defendant Vincent Macciocchi's Motion to Dismiss (ECF No. 88).

**REQUEST FOR PRODUCTION NO. 23:**

All Documents Concerning the reduction in bonus for Juan Luciano and other executives "who were in relevant leadership positions" as referenced in ADM's March 25, 2025 Schedule 14A, including the bases for and facts supporting such reduction(s).

**REQUEST FOR PRODUCTION NO. 24:**

14

All Documents Concerning ADM's policy beginning in 2024 to clawback long-term incentive awards when an individual engages in "prohibited conduct, even if his or her employment is not terminated," as referenced in ADM's March 25, 2025 Schedule 14A.

**REQUEST FOR PRODUCTION NO. 25:**

All Documents Concerning Vikram Luthar's departure from ADM, including all Documents Relating to Vikram Luthar being placed on "administrative leave" and his subsequent agreement with ADM to "resign" from ADM effective September 30, 2024, as referenced in ¶¶305-306 of the Complaint.

**REQUEST FOR PRODUCTION NO. 26:**

All Documents Concerning Ray Young's decision (i) to resign from the Board of Directors of Hormel Foods Corporation, and (ii) not to stand for re-election for the Boards of Directors of Marsh & McLennan and International Paper, as referenced in ¶¶186-187 of the Complaint.

**REQUEST FOR PRODUCTION NO. 27:**

All Documents constituting or Concerning any personnel files, employment agreements, termination agreements, non-disclosure agreements, and performance reviews of the Individual Defendants.

**REQUEST FOR PRODUCTION NO. 28:**

All Documents Concerning any training, adverse compensation action, additional supervision, negative discretion, or adverse employment decision received by any individual Relating to the Investigations, First Restatement, or Second Restatement, including all Documents Relating to the reasons therefor.

**REQUEST FOR PRODUCTION NO. 29:**

All Documents Concerning any ADM "short-term and long-term incentive compensation plans" that "emphasize[d] [ADM's] focus on the Nutrition segment of [ADM's] business," including Documents Relating to: (i) ADM's replacement of the adjusted EBITDA performance metric for executive compensation with the "new metric" of "operating profit growth in the Nutrition segment" as referenced in ADM's Schedule 14A dated March 25, 2020; and (ii) the events and communications described in ADM's response to Lead Plaintiffs' Interrogatory No. 6.

**REQUEST FOR PRODUCTION NO. 30:**

All Documents sufficient to identify the components of the Individual Defendants' compensation, including non-monetary compensation (whether vested or unvested) including the granting of stock options, restricted stock units, or similar types of remuneration.

**REQUEST FOR PRODUCTION NO. 31:**

All Documents Concerning the Individual Defendants' holdings and transactions in ADM securities, including all Documents Relating to:

(a)     purchases, sales, notices of proposed sales (i.e., SEC Forms 144), donations or use of ADM securities as collateral by the Individual Defendants, any member of their immediate families, and/or any entity in which they have or had any direct, indirect, or beneficial ownership interest, including family trusts;

(b)     any loans of ADM stock or options, including any prepaid variable forward contract or sale lending agreement;

(c)     Rule 10b5-1 trading plans, or any other plans or blackouts restricting or governing the Individual Defendants' or officers' ability to buy or sell ADM stock or

16

options, including all Documents reflecting the execution, modification, implementation, and/or cancellation of such plans; and

(d)     any policies, procedures, or guidelines Concerning insider trading in place at ADM, and all Communications Concerning any violations of those policies, procedures, or guidelines.

**REQUEST FOR PRODUCTION NO. 32:**

All Documents Concerning the HBS Case Study, including but not limited to: (i) Communications with the case study's authors, editors or researchers about ADM, Juan Luciano, Nutrition, or the subject matters of the case study; (ii) drafts of, and edits or comments to, the case study or portions thereof; and/or (iii) transcripts, recordings, or summaries of any discussions with Individual Defendants or ADM employees in connection with the case study.

**REQUEST FOR PRODUCTION NO. 33:**

All Documents Concerning any whistleblower or employee complaints or allegations, whether public or non-public, whether made formally or informally, and whether or not such complaints or allegations were ever verified or disproven, Concerning: (i) ADM's accounting practices and procedures with respect to Nutrition; (ii) Nutrition's performance or Operating Profit; or (iii) proposed or actual efforts to improve Nutrition's performance or Operating Profit or to meet profit forecasts or growth targets, including through intersegment sales, cost breaks, donations to Nutrition, pulling levers, re-segmenting businesses or modifying segments, providing subsidies or discounts, or otherwise taking steps to transfer, move, or allot Operating Profit from other Reporting Segments to Nutrition.

**REQUEST FOR PRODUCTION NO. 34:**

All Documents Concerning ADM's policies and procedures for addressing whistleblower or employee complaints or allegations.

17

**REQUEST FOR PRODUCTION NO. 35:**

All Documents You Produced to the SEC, United States Government, or any federal, state, or regulatory agency in connection with any investigation, formal or informal review, or request for information Concerning ADM's intersegment sales, the First Restatement, the Second Restatement, ADM's internal controls, Your public disclosures, or the Investigations.

**REQUEST FOR PRODUCTION NO. 36:**

All Documents Concerning the Government Investigations, including Documents Relating to responses and reactions to the "voluntary document request from the SEC," the "additional document request from the SEC," and the DOJ document requests referenced in ¶¶74, 179, 301-302 of the Complaint.

**REQUEST FOR PRODUCTION NO. 37:**

All Documents Concerning any Meeting of ADM's Board, or any committee or subcommittee thereof (whether formal or informal), including minutes, board packages, exhibits, presentation materials, agendas, or notes of such Meetings, and all Communications Relating to the same.

**REQUEST FOR PRODUCTION NO. 38:**

All Documents Concerning any Meeting of ADM's Capital Committee, Executive Committee, or Executive Council, including minutes, packages, exhibits, presentation materials, agendas, or notes of such Meetings, and all Communications Relating to the same.

**REQUEST FOR PRODUCTION NO. 39:**

All Documents Concerning the preparation, content, review, approval, ratification, submission (including drafts, markups, redlines, notes, comments, or versions), or distribution of each statement alleged to be false and misleading in the Complaint, at ¶¶82-93, 95-105, 107-114,

18

116-121, 124-134, 136-143, 145-151, 153-156, 159-162, 164-166, including Documents that support, formed the basis of, or refute each of those statements.

**REQUEST FOR PRODUCTION NO. 40:**

All Documents Concerning the preparation, content, review, editing, approval, modification, and distribution of the Company's press releases, SEC filings, and materials prepared in connection with any call or Meeting with investors, news reporters, journalists, or other media, including any scripts, opening statements, talking points, presentations, questions and answers, backup materials, or other remarks.

**REQUEST FOR PRODUCTION NO. 41:**

All Documents Concerning ADM's retention, engagement, and/or consultation with any third-party, including, but not limited to, public relations consultants, disclosure consultants, forensic accountants, and/or legal advisors, Relating to ADM's public disclosures.

**REQUEST FOR PRODUCTION NO. 42:**

All Documents Concerning Defendants' assessment and certification of ADM's financial statements or other information pursuant to the Sarbanes-Oxley Act of 2002, including policies, procedures, controls, and/or due diligence performed for compliance with the Sarbanes-Oxley Act and ADM's disclosure controls and procedures.

**REQUEST FOR PRODUCTION NO. 43:**

All Documents Concerning any coverage, reporting, or financial modeling of ADM by securities analysts or the news media.

**REQUEST FOR PRODUCTION NO. 44:**

All Documents Concerning any Communications, conference calls, presentations, or Meetings, including any agendas, talking points, scripts, drafts, notes, or anticipated questions and

19

answers with any ADM shareholders, securities analysts, institutional investors, financial publications, news reporters, journalists, or investment bankers regarding ADM.

**REQUEST FOR PRODUCTION NO. 45:**

All Documents Concerning ADM's common stock share price and market capitalization, and any actual or potential changes thereto, including any predictions, valuations, analyses, or references Concerning the cause(s) of or factors contributing to any such actual or potential changes.

**REQUEST FOR PRODUCTION NO. 46:**

All Documents supporting or Concerning any of Your affirmative or other defenses set forth in Your Answer to the Complaint and Supplement.

**REQUEST FOR PRODUCTION NO. 47:**

All Documents identified in Your Fed. R. Civ. P. 26(a)(1) disclosures, including any supplemental disclosures.

**REQUEST FOR PRODUCTION NO. 48:**

All Documents Concerning any indemnification agreements between ADM and any of the Individual Defendants, any insurer for Defendants, or any other entities that may be financially affected by the claims in this action, including any agreements to assume liability, or agreements to assume the defense.

**REQUEST FOR PRODUCTION NO. 49:**

All calendars, date books, appointment books, and telephone logs reflecting ADM-related activities maintained by or for each of the Individual Defendants.

**REQUEST FOR PRODUCTION NO. 50:**

20

Documents sufficient to identify all personal and business phone numbers, email addresses, social media aliases/screen names/handles, and personal or executive assistants for each of the Individual Defendants.

**REQUEST FOR PRODUCTION NO. 51:**

Documents sufficient to show ADM's document retention and preservation policies, guidelines, or procedures, and all Documents Concerning any actual or potential violations thereof.

**REQUEST FOR PRODUCTION NO. 52:**

To the extent not captured by the above Requests, all Documents You know to be relevant to the Action. This Request is made without regard to the Relevant Period.

DATED: June 19, 2025        **MOTLEY RICE LLC**

*/s/ Meghan S.B. Oliver*
MEGHAN S. B. OLIVER

Meghan S. B. Oliver
Gregg S. Levin
Christopher F. Moriarty
Andrew P. Arnold
Charlotte E. Dougherty
Neli Traykova Hines
Cameran M. Gilliam
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Telephone: 843-216-9000
moliver@motleyrice.com
glevin@motleyrice.com
cmoriarty@motleyrice.com
aarnold@motleyrice.com
cdougherty@motleyrice.com
nhines@motleyrice.com
cgilliam@motleyrice.com

**MOTLEY RICE LLC**
William H. Narwold
20 Church Street, 17th Floor
Hartford, CT 06103

21

Telephone: 860-882-1676
bnarwold@motleyrice.com

**ROBBINS GELLER RUDMAN
& DOWD LLP**
James E. Barz (IL Bar #6255605)
Frank A. Richter (IL Bar #6310011)
Michael J. Stramaglia (IL Bar #6336821)
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 630-696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
mstramaglia@rgrdlaw.com

**ROBBINS GELLER RUDMAN
& DOWD LLP**
Christopher D. Stewart
Jennifer N. Caringal
Heather G. Geiger
Rachel C. Braby
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
cstewart@rgrdlaw.com
jcaringal@rgrdlaw.com
hgeiger@rgrdlaw.com
rbraby@rgrdlaw.com

*Lead Counsel for Lead Plaintiffs*

**O'DONOGHUE & O'DONOGHUE LLP**
John M. McIntire
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Telephone: 202-362-0041
jmcintire@odonoghuelaw.com

*Additional Counsel for Plaintiffs*

22

**CERTIFICATE OF SERVICE**

I hereby certify that on June 19, 2025 a true and correct copy of the foregoing document was served via electronic mail on counsel of record for Defendants Archer-Daniels-Midland Company, Juan Luciano, Vikram Luthar, Ray Young, and Vincent Macciocchi.


*/s/ Cameran M. Gilliam*
CAMERAN M. GILLIAM