**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| RAYMOND CHOW, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:24-cv-00634 Judge Thomas M. Durkin |
| Plaintiff, | Hon. Keri L. Holleb Hotaling |
| v. | CLASS ACTION |
| ARCHER-DANIELS-MIDLAND COMPANY, et al., | |
| Defendants. | |

**LEAD PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL THE
PRODUCTION OF DOCUMENTS PRODUCED TO SEC AND DOJ**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iii

I.      INTRODUCTION ...........................................................................................................1

II.     THE REQUESTED DOCUMENTS ARE RELEVANT AND SHOULD BE
        PRODUCED ...................................................................................................................2

        A.      The government investigations are about intersegment sales. ...............................2

        B.      The four requests proffered by ADM are relevant to Plaintiffs' allegations. ..........3

                1.      Communications ████████████████████████████████
                        ████ ....................................................................................................3

                2.      Calendar invites and call logs from ███████████████
                        ██████████████████████████████████
                        █████████████ ..............................................................................4

                3.      Accounting ████████████████████ .........................................6

                4.      ████████████████ .......................................................................7

        C.      ADM's cases fail to demonstrate that "cloned discovery" is inappropriate
                here. ..................................................................................................................8

        D.      Reproduction will promote efficiency and prevent unnecessary delay. ................10

III.    CONCLUSION..............................................................................................................13

## TABLE OF AUTHORITIES

### CASES

*Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*,
  2014 WL 1431124 (D. Mass. Apr. 14, 2014) ................................................................ 9

*FONA Int'l, Inc. v. Roddy*,
  2021 WL 5352611 (N.D. Ill. Jan. 19, 2021) ................................................................ 3

*Forth v. Walgreen Co.*,
  2019 WL 10255628 (N.D. Ill. Jul. 10, 2019) .............................................................. 9

*In re Broiler Chicken Antitrust Litig.*,
  2020 WL 1046784 (N.D. Ill. Mar. 4, 2020) ................................................................ 9

*In re Merck & Co. Sec. Litig.*,
  432 F.3d 261 (3d Cir. 2005) ........................................................................................ 5

*In re Outpatient Medical Center Emp. Antitrust Litig.*,
  2023 WL 4181198 (N.D. Ill. June 26, 2023) .............................................................. 1

*In re Toyota Motor Corp. Sec. Litig.*,
  2012 WL 3791716 (C.D. Cal. Mar. 12, 2012) ............................................................ 5

*In re Volkswagen, "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  2017 WL 4680242 (N.D. Cal. Oct. 18, 2017) ............................................................ 10

*Luxottica Grp. S.p.A. v. Yiwu Cujia Trade Co., Ltd.*,
  2010 WL 1489996 (N.D. Ill. Apr. 13, 2010) .............................................................. 9

*Norfolk Cnty. Ret. Sys. v. Ustian*,
  2010 WL 1489996 (N.D. Ill. Apr. 13, 2010) .............................................................. 9

*Ovard v. Summit Cnty.*,
  2012 WL 5903847 (D. Utah Nov. 26, 2012) ............................................................... 6

*Plexicoat Am. LLC v. PPG Architectural Finishes, Inc.*,
  2015 WL 171831 (E.D. Pa. Jan. 14, 2015) ................................................................. 5

*Schneider v. Chipotle Mexican Grill, Inc.*,
  2017 WL 1101799 (N.D. Cal. Mar. 24, 2017) ............................................................ 1

*Tyler v. City of San Diego*,
  2015 WL 1955049 (S.D. Cal. Apr. 29, 2015) ............................................................. 12

## I.     INTRODUCTION

Plaintiffs'[1] Motion should be granted. The Motion does not seek documents "reflexively," rather, Plaintiffs seek the same documents ADM produced to the SEC and DOJ because Plaintiffs are investigating the same accounting scheme. Because of the strong nexus between the stock price declines that harmed Plaintiffs and the circumstances of the government investigations, the reproduction of these relevant documents will simplify and expedite discovery while shedding light on Defendants' misrepresentations to investors – with minimal burden on ADM.

ADM has cited no decision endorsing the denial of a motion to compel so-called "cloned discovery" when there is "significant factual and legal overlap" between the cases. *In re Outpatient Medical Center Emp. Antitrust Litig.*, 2023 WL 4181198, at \*7 (N.D. Ill. June 26, 2023) (stating that courts in this district have acknowledged "the appropriateness of cloned discovery is a genuine dispute and depends on the circumstances of each case"). Cloned discovery is warranted when, as here, the "suit[s] involve the same legal claims based on the same facts." *Schneider v. Chipotle Mexican Grill, Inc.*, 2017 WL 1101799, at \*4 (N.D. Cal. Mar. 24, 2017) (granting motion to compel and finding "significant factual and legal overlap" between cases).

ADM attempts to rebut Plaintiffs' showing of relevance by proffering four government requests that it asserts led to the production of "documents that are completely irrelevant to Plaintiffs' allegations." ADM's Opposition to Plaintiff's Motion (ECF No. 162, "Opposition" or "Opp.") at 1. But the examples appear directly relevant to the claims in this case, and ADM has

---

[1]     Unless otherwise noted, capitalized terms have the meaning defined in the Amended Complaint and in Lead Plaintiffs' Motion to Compel the Production of Documents Produced to the SEC and DOJ (ECF No. 154, "Motion" or "Mot."), emphasis is added, and internal quotations and citations are omitted. In addition, references to "¶ __" are to the Amended Complaint (ECF No. 67) and references to "Supp. ¶ __" are to the Supplement to Lead Plaintiffs' Complaint for Violations of the Federal Securities Laws (ECF No. 105).

not provided Plaintiffs or the Court information about any aspect of the government investigations that is unrelated. ADM uses its first three examples to argue that the government requests were overbroad, yet Defendants did not make that objection to the government and reproducing the documents here involves minimal burden. As for the fourth example, rather than being irrelevant, documents showing that ▮▮▮ was involved in another scheme to use "▮▮▮▮▮▮" to "▮▮▮ ▮▮▮" appears directly relevant as it undermines Defendants' claims of an innocent mistake. Presumably, that is why the government is seeking such documents as part of its investigation of the intersegment sales scheme. Since the Requested Documents are relevant and reasonably calculated to lead to discoverable evidence and there is no burden in reproducing them, Plaintiffs' Motion should be granted.

## II. THE REQUESTED DOCUMENTS ARE RELEVANT AND SHOULD BE PRODUCED

### A. The government investigations are about intersegment sales.

ADM labeled the government investigations in its SEC filings under the heading, "Intersegment Sales Investigations," and in disclosing the investigations, described them as "relating to intersegment sales between the Company's Nutrition reporting segment and the Company's Ag Services and Oilseeds and Carbohydrate Solutions reporting segments." *See, e.g.*, Ex. L at 116; Ex. M at 39; *see also* Mot. at 3-4. Indeed, ADM has not disclosed any new or separate investigation as required by federal securities disclosure requirements. Yet, in this litigation, ADM makes claims contrary to its public statements and insists the government investigations "include broad categories not limited to intersegment transactions." Opp. at 3. Rather than provide the government requests to Plaintiffs or the Court to prove its point, ADM has disclosed only four requests. ADM's proffered examples, though, do not support its argument.

**B. The four requests proffered by ADM are relevant to Plaintiffs' allegations.**

**1. Communications ████ ███████████████ ████**

ADM argues that the government request for "███████████████████████ ████████████████████████████████████████████████████████ "obviously includes communications completely irrelevant . . . as it would sweep in *every single communication*." Opp. at 9 (emphasis in original). Yet, those documents were produced to the government without objection because it targets a short time period. This request is not like the requests in *FONA Int'l, Inc. v. Roddy*, cited by ADM. *Id.* There, the requests sought all communications between two entities, and the court noted that if the requests are "more finely tuned and focused either *by particular custodians* or subjects, they may be appropriate." *FONA Int'l*, 2021 WL 5352611, at *5 (N.D. Ill. Jan. 19, 2021). Here, such fine tuning has already taken place because the communications are limited to a brief period and to communications between individuals highly relevant to the alleged scheme.

The very limited document production to date already establishes that communications ████████████████████████████████████ *during the Class Period* are relevant. Defendants claim that the "accounting errors" were an innocent mistake (Opp. at 3), yet there was intense discussion of the scheme in this time period. For example, on December 3, 2020, Defendant Luciano asked Defendant Luthar if there was "███████████████████ ████████████████████████████████████████ " and Luthar confirmed, "██████████ ████████████████████████████████████████ ██████." Ex. N at -443. Similarly, about a week later, Allyson Fish (Nutrition Segment, President of Alternative Proteins) ████████████████████████ ████████████████████████████████████████

3

██████████████████████████████████████████████████████████. Ex. I at -445. Fish justified this "████████" by stating that a █████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████" so this would "██████ ████████████████████████████████████████████████." *Id.* The proposal was sent up the chain to Defendant Luthar, who responded on December 10, 2020 to Leticia Goncalves (Global Specialty Ingredients President) and Defendant Macciocchi, telling them that "████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████" *Id.* The next day, Defendant Macciocchi texted Defendant Luthar that "████████████████████████████████████████████ ████████████████████████████████████████████." Ex. O at -447. Defendant Luthar informed Defendant Young on March 2, 2021 (near the end of the ███████ ██████) that ███████████████████████████████████████████████ ████████████████████████████████████████. Ex. K at -477-78. All of these communications, ████████████████████████████████████████████, are directly relevant to Defendants' alleged scheme.

### 2. Calendar invites and call logs from ███████████████████ ███████████████████████

First, while conceding the relevance of the government investigation into intersegment sales, ADM takes an improperly narrow view of relevance in this case by suggesting the government request for calendar invites and call logs is irrelevant because it is not limited to meetings about "intersegment sales of raw materials to ADM's Nutrition segment." Opp. at 10. This argument unjustifiably limits relevance in this matter to calls and meetings solely related to

4

"intersegment sales of raw materials" (*see infra at* § II.B.4.), which would exclude, for example, relevant calls and meetings regarding the motive allegations such as incentive compensation and stock sales. ¶ 278. Moreover, it unjustifiably limits the documents to those involving "Nutrition" when meetings or calls related to other accounting schemes involving ████████ or intersegment sales that did not involve Nutrition, would also be relevant to proving scienter. Thus, the government request does not sweep more broadly than Plaintiffs' allegations and instead confirms the relevance of such documents.

Second, ADM argues the request is broader than Plaintiffs' allegations because it seeks documents that predate the Class Period, ignoring that the scheme is alleged to have begun in 2018. Opp. at 9-10. Although the Class Period begins in 2020, the Complaint describes an accounting fraud dating back to 2018 and relevant events leading up to that time frame. *See, e.g.*, ¶¶ 6-12. Even in the absence of such allegations, courts regularly find that pre-class period documents are relevant and should be produced. *See, e.g.*, *In re Toyota Motor Corp. Sec. Litig.*, 2012 WL 3791716, at * 4 (C.D. Cal. Mar. 12, 2012) (compelling production of documents in securities fraud class action from four years before first alleged false statement and noting "common sense dictates that facts relevant to scienter will ordinarily date from before any alleged misrepresentations because the circumstances preceding the statements . . . would be among those knowable at the time of the statements"); *see also In re Merck & Co. Sec. Litig.*, 432 F.3d 261, 272 (3d Cir. 2005) (noting "pre-class data [i]s relevant to show defendants' knowledge"). And documents that pre-date the fraud are likewise relevant to understanding the fraud and the motivations for the fraud. *See, e.g.*, *Plexicoat Am. LLC v. PPG Architectural Finishes, Inc.*, 2015 WL 171831, at *3, n.6 (E.D. Pa. Jan. 14, 2015) (finding that "sales figures for the . . . three years prior to the effective date" were relevant because they "may provide a baseline" for comparison); *Ovard v. Summit*

*Cnty.*, 2012 WL 5903847, at *3 (D. Utah Nov. 26, 2012) (holding records for several years prior to the alleged misconduct were "relevant to establish a baseline").

### 3. Accounting ███████████████████

Next, ADM represents that it "is willing to produce" ████████████████████████ "relating to intersegment sales," but argues, without explanation, that all other accounting documents are irrelevant to Plaintiffs' claims. Opp. at 10. Yet, just as the government sought such accounting ███████████████████ for its investigation, such documents are relevant here, too, because the accounting scheme involves ████████████████████████ ████████.

Plaintiffs have alleged that ADM "violated stated Company policy and generally accepted accounting principles ('GAAP') to falsely overstate profits of ADM's newest and most important business segment, Nutrition, every year from 2018 through 2023." ¶ 2. Inventory valuation is used to calculate the cost of goods sold, and the cost of goods sold is used to calculate profit, which is central to the scheme alleged by Plaintiffs. ████████████████████████ ████████ are irrelevant, but Plaintiffs have alleged that ADM violated ASC 606, which is the revenue recognition standard. *See* ¶¶ 50-51. Thus, the ████████████████████ ███████████████████████████████ sought by this government request are all relevant to Plaintiffs' claims because in violating ADM's policy on intersegment sales, Defendants likely violated other accounting policies as well, further undermining their claims of an innocent mistake. ADM's objections have nothing to do with relevance and much to do with shielding harmful evidence.



**4.** ███████████████████

ADM's last example is a request for "████████████████████████████████

████████████████████████████."[2] Opp. at 10.  But such documents appear

to be fully within the scope of the intersegment accounting scheme investigation.  Notably, ADM

has only ever disclosed in its SEC filings the "Intersegment Sales Investigations," suggesting any

inquiry into ADM's ███████ is directly relevant to those investigations.  Moreover, ADM

concedes such documents also relate to the investigation of ███████████. *Id.*  That ADM

was potentially involved in multiple schemes makes Defendants' claims of innocent mistake less

likely, showing the documents are relevant.

In addition, the few documents ADM has produced thus far establish the relevance of

███████████████████ to Plaintiffs' allegations.  Specifically, internal documents show that

"████████████████████████," Defendants and ADM employees came up with various

types of intersegment transactions and "████████████████████████████████."

*See, e.g.*, Ex. I (Defendant Luthar stating if "████████████████████

████████████████████████████████████

██████████████████████").  Relatedly, internal documents suggest that Defendants

may have used the "████████████████████" as yet another way to artificially inflate

Nutrition's operating profits.  For example, ADM recorded the ████ "████████████

███" (Ex. Q) and used the shifting of manufacturing cost between business segments to lower

prices for raw materials sold to Nutrition.  *See, e.g.*, Ex. R (Carb Solutions Controller stating that

Carb Solutions uses a "████████████████████████████

---

[2]     White flake, a product heavily implicated in the scheme (*see, e.g.*, ¶ 129(a), 137(c)), was
manufactured at the Europoort plant (Ex. P).

███████████████████████████████████████████████" for dextrose sold to Nutrition). Indeed, ASO transferred a "██████████████████████████████" in the fourth quarter of 2021. Ex. S at -603. Therefore, it seems clear that the reason the government sought such documents, and they should be produced here, is that ████████████ is relevant to the government's "Intersegment Sales Investigations," and Plaintiffs' allegations.

Tellingly, despite ADM's improperly narrow reading of relevance in the Opposition, ADM has already identified as relevant and produced several documents on this topic to Plaintiffs, further reinforcing the relevance of ███████████ and undermining ADM's argument. *See* Ex. Q; Ex. S; Ex. T (email thread discussing "███████████████████████"). Given that ADM's four (presumably best) examples only confirm, rather than refute, relevance, the Motion should be granted.[3]

### C. ADM's cases fail to demonstrate that "cloned discovery" is inappropriate here.

ADM's argument that "'cloned discovery'" requests "are often 'facially overbroad'" (Opp. at 7) misses the mark. ***Often*** does not mean ***always***, and the reasoning for denying "cloned discovery" in ADM's cited cases was because the requests involved different facts or claims or that document discovery was almost complete, neither of which is the case here.

For example, *In re Outpatient Med. Ctr. Emp. Antitrust Litig.* concerned a request for reproduction of over 500,000 documents produced to the DOJ related to a ***different*** conspiracy

---

[3] ADM's attempt to address the Reuters article cited by Plaintiffs likewise fails to move the needle. ADM argues that "Plaintiffs' Complaint makes no mention" of "'activity that didn't involve Nutrition" or "impaired inventories," (Opp. at 11-12) but, as explained herein, that does not mean that "the government investigations are broader" than this case or that those topics are irrelevant. *See* § II.B.3-4. ADM uses this as yet another opportunity to assert a broader scope without explaining, for example, what the "activity" that doesn't involve Nutrition is or why "impaired inventories" has nothing to do with Plaintiffs' allegations that ADM violated Company policy and GAAP to falsely overstate Nutrition's profits. ¶ 2.

involving **irrelevant conduct and parties**. 2023 WL 4181198, at *5 (N.D. Ill. June 26, 2023); *see also*, Mot. at 12. Similarly, *In re Broiler Chicken Antitrust Litigation* involved a request at the end of fact discovery specifically seeking documents produced to the grand jury, when defendants had already produced over eight million documents and the parties "reached detailed agreements" regarding the scope of discovery. 2020 WL 1046784, at *1-2 (N.D. Ill. Mar. 4, 2020); *see also*, Mot. at 13-14.

Further, *Forth v. Walgreen Co.* concerned a request for documents defendant produced to the government in a case involving "different parties, timing, statutes, and (in some respects) subject matter" when written discovery was "nearly complete" and "thus too late . . . to render discovery more expeditious" and plaintiffs had "not shown or even argued that the fact that the documents were produced by Walgreens to the government" was relevant. 2019 WL 10255628, at *4, *6 (N.D. Ill. Jul. 10, 2019); *see also*, Mot. at 6, 12. Likewise, *Luxottica Grp. S.p.A. v. Yiwu Cujia Trade Co., Ltd.* concerned a request for "all documents, including discovery responses, deposition transcripts, settlement correspondence and communications, related to **any lawsuit** filed against defendants for trademark infringement" and documents produced in a case involving a **different plaintiff and different product lines**. 2023 WL 6520213, at *3-4 (N.D. Ill. Oct. 5, 2023). Finally, in *Norfolk Cnty. Ret. Sys. v. Ustian*, the court declined "at this time" (during discovery related solely to class certification) to order a reproduction of documents defendants produced to and received from the SEC in connection with defendant's restatement because the documents were not relevant to class certification. 2010 WL 1489996, at *3 (N.D. Ill. Apr. 13, 2010).[4] Here,

---

[4] In support of its "reasonable compromise" argument (Opp. at 14-15), ADM also cites to *Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.* which is distinguishable as it involved a request from a party (represented by ADM's counsel) for documents produced in all other lawsuits and prior investigations, regardless of whether those other lawsuits and prior

discovery is just beginning, not nearly complete, and the documents produced to the government are relevant to the claims in this case.

### D. Reproduction will promote efficiency and prevent unnecessary delay.

ADM does not dispute that reproduction is efficient and primarily bases its opposition on a relevance objection. That objection is without merit and so too is its half-hearted burden objection wherein it seeks to justify its withholding of roughly 99% of the documents produced to the government by the substantial completion deadline. Opp. at 12-14. ADM's reliance on out-of-Circuit *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation* is ineffective. The *Volkswagen* plaintiffs sought a "substantial" production of more than 20 million pages from an emissions fraud multidistrict litigation and failed to explain how documents such as "lease or loan applications for Volkswagen diesel vehicles" and "sales or lease contracts with identified Volkswagen consumers" were relevant to a securities class action. *In re Volkswagen, "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.,* 2017 WL 4680242, at *1 (N.D. Cal. Oct. 18, 2017). Here, the government production is less than 1% the size of the documents sought in *Volkswagen*, and Plaintiffs have shown that even the four requests that ADM disclosed to try to prove irrelevance are relevant to Plaintiffs' allegations. *See supra* at § II.B.

Given the substantial delays in production thus far, Plaintiffs served additional document requests. ADM now contends that Plaintiffs' new document requests eliminate any efficiencies that would be gained by a reproduction of the documents subject to the Motion. Opp. at 13. That argument is without merit. On the contrary, production of the Requested Documents will expedite and narrow any future productions. The reproduction of 291,000 documents already reviewed by

---

investigations concerned different claims and defenses. 2014 WL 1431124, at *1-2 (D. Mass. Apr. 14, 2014).

ADM is far more efficient than engaging in protracted negotiations regarding search terms, identifying custodians, applying proper terminology, and conferring on the scope of document requests in a litigation of this magnitude.[5] Tellingly, ADM has not disputed that a reproduction of the Requested Documents could be accomplished in a week. Moreover, Plaintiffs have zero interest in spending time and resources to review irrelevant documents and will be in a much more informed position to negotiate and narrow any further productions through appropriate search term and custodian identification after reviewing the Requested Documents. Such production also reduces the risk that Defendants use their informational advantage to negotiate overly narrow terms that conceal relevant evidence.

Next, prompt production of the Requested Documents will expedite negotiation of additional productions and get discovery back on track. ADM's failure to meet the substantial production deadline for the First RFPs has already significantly delayed discovery in this case. Recognizing this and attempting to shift the blame, ADM claims that "[a]ny delay in production has been directly caused by Plaintiffs' refusal to engage in any meaningful meet-and-confer discussions regarding agreeable search terms or any other method for identifying responsive documents within the Government Productions." Opp. at 15. On the contrary, Plaintiffs have been attempting to engage in "meaningful" meet and confers with ADM regarding its First RFPs for

---

[5] There is a significant informational disadvantage in negotiating search terms as defendants often use vague or coded terms when engaging in fraud schemes. For example, ADM employees were encouraged to conceal the accounting scheme by referring to it as "███████" or a "█████ ████████" which are terms Plaintiffs were unlikely to propose as search terms, yet would be excluded under Defendants' overly narrow proposal to search for documents specifically referring to "intersegment sales." *See, e.g.*, Ex. U (Former CFO of Carb Solutions telling a colleague that she could explain ██████ ████████████████████████); Ex. V (VP of Financial Services asking ASO Controller to ███████████████████████████████████████████████████████████████████).

11

months, but ADM has prolonged the dispute including by refusing to provide the government requests to Plaintiffs despite multiple requests for them. *See, e.g.*, Ex. E (Plaintiffs' Counsel stating "it would likely facilitate discussions if you would provide the SEC's document requests to us in advance of the meet-and-confer"). Plaintiffs were forced to file the Motion rather than accept unsupported claims of irrelevance.

In addition, ADM's offer to apply search terms to the Requested Documents occurred nearly three weeks *after* the substantial completion deadline had passed. Ex. H at 3, 5. Although Plaintiffs continued to request all documents in response to the First RFPs and filed the Motion, that did not relieve ADM of its obligation to follow a court-ordered deadline of substantial completion, and its production of roughly 1% of the Requested Documents was not good faith compliance. *See Tyler v. City of San* Diego, 2015 WL 1955049, at *2 (S.D. Cal. Apr. 29, 2015) (finding responding party should have "use[d] search terms and protocols it deemed reasonable to produce responsive [ESI]" by "the production date" and noting failure to align on search terms "does not relieve [a responding party] of its obligation to respond to discovery requests").[6] Given that ADM only has four examples of purportedly objectionable requests, ADM should have produced the rest of the responsive documents by the deadline.

In ADM's view, if it is compelled to produce the Requested Documents, the only consequences will be to produce what should have already been produced six weeks ago, yet, any narrowing could enable it to withhold relevant evidence that undermines its good faith defense. This gamesmanship should not be rewarded as it has created significant delay in the discovery of

---

[6] To be sure, Plaintiffs made clear that their Motion does not prevent ADM from "producing the documents [it] identified as discoverable and said [i]t would produce." Ex. W. One week later, and a convenient three days prior to the filing of ADM's Opposition, ADM produced 1,577 documents previously produced to the government. Opp. at 15, n10 (ADM incorrectly stated 1,578 documents were produced).

this case and forced the parties to brief motions, which this Court must address. This is not a case of improperly seeking cloned discovery where the government is investigating unrelated matters. The documents are clearly relevant, ADM's objections are without merit, and production will streamline the rest of document discovery.

## III.    CONCLUSION

For the reasons stated above, Plaintiffs' Motion should be granted.

DATED: July 7, 2025                              **MOTLEY RICE LLC**

                                                 */s/ Meghan S. B. Oliver*
                                                 MEGHAN S. B. OLIVER

                                                 Meghan S. B. Oliver
                                                 Gregg S. Levin
                                                 Christopher F. Moriarty
                                                 Andrew P. Arnold
                                                 Charlotte E. Dougherty
                                                 Cameran M. Gilliam
                                                 Neli Traykova Hines
                                                 28 Bridgeside Blvd.
                                                 Mount Pleasant, SC 29464
                                                 Telephone: 843-216-9000
                                                 moliver@motleyrice.com
                                                 glevin@motleyrice.com
                                                 cmoriarty@motleyrice.com
                                                 aarnold@motleyrice.com
                                                 cdougherty@motleyrice.com
                                                 cgilliam@motleyrice.com
                                                 nhines@motleyrice.com

                                                 **MOTLEY RICE LLC**
                                                 William H. Narwold
                                                 20 Church Street, 17th Floor
                                                 Hartford, CT 06103
                                                 Telephone: 860-882-1676
                                                 bnarwold@motleyrice.com

13

**ROBBINS GELLER RUDMAN
& DOWD LLP**
James E. Barz (IL Bar #6255605)
Frank A. Richter (IL Bar #6310011)
Michael J. Stramaglia (IL Bar #6336821)
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 630-696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com
mstramaglia@rgrdlaw.com

**ROBBINS GELLER RUDMAN
& DOWD LLP**
Christopher D. Stewart
Jennifer N. Caringal
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619-231-1058
cstewart@rgrdlaw.com
jcaringal@rgrdlaw.com

*Lead Counsel for Lead Plaintiffs*

**O'DONOGHUE & O'DONOGHUE LLP**
John M. McIntire
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC 20015
Telephone: 202-362-0041
jmcintire@odonoghuelaw.com

*Additional Counsel for Plaintiffs*

14